Debra I. Grassgreen (CA Bar No. 169978)
Jeremy V. Richards (CA Bar No. 102300)
John W. Lucas (CA Bar No. 271038)
**PACHULSKI STANG ZIEHL & JONES LLP**
150 California Street, 15th Fl.
San Francisco, CA 94111
Telephone: 415.263.7000
Facsimile:  415.263.7010
Email:    dgrassgreen@pszjlaw.com
          jrichards@pszjlaw.com
          jlucas@pszjlaw.com

HAMISH P. M. HUME
*hhume@bsfllp.com (pro hac vice forthcoming)*
JESSICA E. PHILLIPS
*jphillips@bsfllp.com (pro hac vice forthcoming)*
**BOIES SCHILLER FLEXNER LLP**
1401 New York Avenue, N.W., Suite 1100
Washington, DC 20005
Telephone: (202) 274-1122
Facsimile: (202) 237-2727

*Attorneys for Creditor* UBER TECHNOLOGIES, INC.

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| In re:<br><br>ANTHONY SCOTT LEVANDOWSKI,<br><br>*Debtor*. | Case No. 20-30242 (HLB)<br><br>Chapter 11<br><br>**UBER TECHNOLOGY INC.'S RESPONSE TO ANTHONY LEVANDOWSKI'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:  April 30, 2020<br>Time:  10:00 a.m.<br>Crtrm:  19<br>Judge:  Hon. Hannah L. Blumenstiel |

# TABLE OF CONTENTS

I. INTRODUCTION ............................................................................................................. 1

II. FACTUAL STATEMENT ................................................................................................. 1

    A. To Induce Uber To Acquire His Company And Enter Into The Indemnification Agreement, Levandowski Repeatedly Told Uber He Was Not Bringing Any Google Confidential Information With Him. ..................................... 1

    B. When Google Separately Sued Both Levandowski And Uber, Uber Initially Trusted Levandowski's Explanations Of What Happened. ....................................... 3

    C. On April 2, 2018, Before The Arbitration Hearing, Uber Notified Levandowski That It Would Not Be Required To Indemnify Levandowski For Any Final Award, And Would Instead Have A Right To Recover Fees From Him. ............................................................................................................................. 4

    D. Levandowski Was Then Indicted By Federal Prosecutors For Trade Secret Theft, Providing Strong Evidence That He Had Been Lying All Along, And Had Fraudulently Induced Uber To Enter Into The Indemnification Agreement. ................................................................................................................. 5

    E. Within Three Days of Learning About the Indictment, Uber Notified Levandowski That The Indemnification Agreement Was Rescinded Based On His Fraud And Was Null And Void Based On His Misconduct ............................... 5

    F. Levandowski's Recent Agreement To Plead Guilty To Trade Secret Theft Proves That Uber's Rescission Was Proper And That The Indemnification Agreement Is Unenforceable. ................................................................................... 6

    G. Furthermore, Even If The Indemnification Agreement Were Enforceable, A Substantial Portion Of The Google Judgment Is Allocable To An Excluded Claim And Hence Not Subject To Indemnification. .................................................. 7

III. RESPONSE TO RELIEF REQUESTED ............................................................................ 8

IV. CONCLUSION .................................................................................................................. 9

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Buckley Check Cashing v. Cardegna*,
   546 U.S. 440 .................................................................................................................. 8

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*,
   388 U.S. 395 .................................................................................................................. 8

## I. INTRODUCTION

Uber agrees to arbitrate its indemnification dispute with Levandowski, and therefore does not oppose the ultimate relief sought in the Motion to Compel Arbitration (Dkt #18) (the "Motion[1]"); however, it is important that Uber responds to the Motion for two reasons. First, there are many factual inaccuracies asserted by Levandowski in the Motion. In response, Uber has set forth the facts regarding the disputes so that the Court and parties in interest are not misled by the assertions made in the Motion and the Court has a full picture of the nature of the disputes between the parties.

Second, Uber rescinded the Indemnification Agreement several months prior to the inception of Levandowski's bankruptcy case because it was procured by his fraud. Accordingly, any determination about Uber's rescission of the Indemnification Agreement should be fully preserved and determined in the arbitration. Because Uber agrees to arbitrate the dispute over its rescission of the Indemnification Agreement as well as all other issues relating to the indemnification disputes, the Court should enter an order denying Levandowsi's motion as moot.

## II. FACTUAL STATEMENT

**A. To Induce Uber to Acquire His Company and Enter Into the Indemnification Agreement, Levandowski Repeatedly Told Uber He Was Not Bringing any Google Confidential Information With Him.**

In the fall of 2015, Uber and Levandowski began discussions regarding a potential commercial deal between Uber and the new company that Levandowski was planning to form, which eventually became Ottomotto LLC ("Otto"). By February 22, 2016, Uber and Levandowski had entered into a non-binding term sheet for Uber's acquisition of Otto. Prior to agreeing to the transaction, Uber and Otto, through their outside lawyers, hired a third-party forensic investigator, Stroz Friedberg, to gather facts and documents to confirm and ensure that Levandowski (and others) did not bring any proprietary or confidential Google material to Otto, and would not bring any such information to Uber.

As part of this Stroz process, Levandowski (and the other diligenced employees at Otto) expressly promised that "to my best knowledge I returned to Former Employer and have not retained

---

[1] To the extent not otherwise defined herein, all defined terms shall have the meaning ascribed to them in the Motion.

Former Employer confidential or proprietary documents or information or property (including but not limited to hardware and software) after my employment with Former Employer." *See* Ex. 1 at ¶ 4.[2] Levandowski further attested that he "provided good faith, complete and truthful responses in all material respects to Stroz's questions" and "that all of the information I have provided to Stroz is true and correct in all material respects." *Id.* at ¶ 6.

Once Uber decided to move forward with the acquisition, it required Levandowski to sign a written employment agreement, which provided that "you shall not use or disclose any trade secrets or other proprietary information or intellectual property in which you or any other person has any right title or interest" and that "You represent and warrant to the Company that you have returned or destroyed all property and confidential information belonging to any prior employer." Levandowski also signed a Confidential Information and Invention Assignment Agreement pursuant to which he promised "I will not disclose to the Company or use any inventions, confidential or non-public proprietary information or material belonging to any previous client, employer or other party. I will not induce the Company to use any inventions, confidential or non-public proprietary information, or material belonging to any previous client, employer or any other party."

The provisions in these agreements reflected and confirmed Uber's clear understanding that Levandowski and everyone else from Otto had no intention of bringing any confidential Google information to Uber, would never do any such thing, and had taken no steps to do any such thing.

Uber relied on these assurances from Levandowski when it entered into the April 11, 2016, Indemnification Agreement.[3] If Uber had known that Levandowski had deliberately downloaded Google confidential trade secrets to use those secrets while at Uber, then Uber would not have completed the Otto acquisition, and would not have entered into the Indemnification Agreement.

---

[2] All exhibits are attached to the Declaration of Hamish Hume.

[3] The agreement was executed by an Uber subsidiary named Apparate International, which has since been dissolved.

**B.  When Google Separately Sued Both Levandowski and Uber, Uber Initially Trusted Levandowski's Explanations of What Happened.**

On October 28, 2016, Google filed and served two arbitration demands against Levandowski alleging breach of fiduciary duty, breach of the duty of loyalty, breach of his employment agreements relating to misuse of confidential information[4], breach of non-solicitation provisions and breach of noncompetition provisions.  Google alleged that Levandowski violated his duties to Google beginning in 2012 by forming an entity eventually named Tyto LiDAR ("Tyto").  Google also alleged that Levandowski violated his duties to Google beginning in late 2015 when he began planning to establish Otto, solicited Google employees to join the company, and used confidential Google compensation information to recruit those employees.  The arbitrations were consolidated (hereinafter "the Google arbitration").

On November 3, 2016, Levandowski informed Uber of the arbitration.  Since Uber did not yet know the truth about what Levandowski had done (and certainly did not know that he had stolen trade secrets, which was not even alleged in the arbitration), Uber agreed to advance the costs of Levandowski's defense under the Indemnification Agreement.

On February 23, 2017, Waymo LLC, a wholly-owned subsidiary of Alphabet Inc. and sister company to Google Inc.,[5] filed a lawsuit in the Northern District of California against Uber alleging violations of the Defense of Trade Secret Act, violations of the California Uniform Trade Secret Act, and patent infringement claims.  In its complaint, Waymo alleged that approximately a month before his departure, Levandowski had downloaded roughly 14,000 files from a Google server containing confidential information.

In response to Waymo's allegations, Levandowski assured everyone at Uber that he had not taken any trade secrets to use at Uber.  In an "all hands" meeting held at Uber soon after the *Waymo* case was filed, Levandowski explained that he would download information while at Google in order to work from home, providing an innocent explanation for the alleged "downloading."  Ex. 2

---

[4] These allegations had nothing to do with any allegation of trade secret misappropriation.

[5] Waymo is the wholly-owned Alphabet subsidiary that conducts its self-driving car technology business.  It previously had been operated as a division within Google called "Chauffeur."

at 14:23-17:16. Later, Levandowski also told Uber that he had downloaded some files while at Google "because he was worried that Google was not going to pay him his bonus and he wanted to be able to demonstrate the work he had done in order to earn that bonus." Ex. 3 at ¶ 6. At the time Levandowski left Google, Google owed him tens of millions of dollars in promised bonus payments that were not due to be paid until six months after his departure; so Levandowski was explaining that he took the information to show the substantial work he had done, in case Google failed to make the bonus payment. Levandowski also said he no longer had the files he had downloaded because he had deleted them. In addition, Uber did not believe it had any Google trade secret information in its possession, as it had taken ample precautions to ensure that never happened. Uber further undertook a series of employee interviews and forensic reviews to confirm that this never happened. This process lasted many months as part of the *Waymo* litigation, both before and after the court entered a preliminary injunction requiring a very detailed forensic review process.

**C. On April 2, 2018, Before the Arbitration Hearing, Uber Notified Levandowski That It Would Not be Required to Indemnify Levandowski For Any Final Award, and Would Instead Have a Right to Recover Fees From Him.**

Levandowski's motion asserts that Uber embraced the Indemnification Agreement, repeatedly affirmed its obligations to indemnify Levandowski until after the final award, and somehow benefited from this. That is false. Uber received no benefits. Further, Uber told Levandowski before the arbitration hearing even began that he was not entitled to indemnification.

The Indemnification Agreement required Levandowski to testify in the arbitration dispute with Google. During the week of January 8, 2018, Uber learned that even though the Google arbitration did not involve any allegations of criminal wrongdoing or of trade secret theft, Levandowski nonetheless planned to broadly invoke his Fifth Amendment rights during his deposition taken in discovery in the arbitration. Ex. 4.[6] On January 15, 2018, Uber emailed Levandowski's counsel noting that "It is Uber's view that it would be better for the defense of the claims in the [Google] arbitration if Mr. Levandowski would testify to the issues raised in the arbitration, rather than invoke the 5th Amendment." (*Id.*) Nevertheless, Levandowski refused. At

---

[6] Levandowski had previously invoked the Fifth Amendment in the Waymo litigation. Because of his failure to cooperate fully in the investigation of the claims in that litigation, Uber terminated his employment on May 26, 2017.

4
UBER'S RESPONSE TO MOTION TO COMPEL ARBITRATION

Case: 20-30242   Doc# 43   Filed: 04/13/20   Entered: 04/13/20 18:58:21   Page 7 of 12

his deposition, he invoked his Fifth Amendment rights to every substantive question posed to him. He thereby breached his obligations under the Indemnification Agreement. This also illustrates that Uber never exercised "control" over Levandowski's litigation. Uber received no benefits from paying Levandowski's defense costs.

On April 2, 2018, four weeks prior to the arbitration hearing between Levandowski and Google, Uber wrote a letter to Levandowski's counsel to provide Levandowski notice of Uber's intent to "exercise all of its rights to disclaim or avoid liability under the Indemnification Agreement and to recover the attorney fees and costs Uber has been paying for Mr. Levandowski's defense." Ex. 5. Uber explained that "Uber would not be required to indemnify Mr. Levandowski for any final judgment in the [Google] Arbitration, and instead is going to be entitled to recover from Mr. Levandowski the fees and costs it has paid on his behalf." (*Id.*) Uber stated that Levandowski was in material breach of the Indemnification Agreement by his unjustifiable assertion of the Fifth Amendment at his deposition. (*Id.*) Uber also explained that Google's claims relating to Levandowski's involvement with Tyto were Excluded Claims under the Indemnification Agreement. (*Id.*) Uber received no responsive letter.

While Levandowski later tried to change his position to testify in the arbitration hearing, the panel did not allow it given his refusal to testify in his deposition. The Google arbitration hearing began on April 30, 2018, and concluded on May 11, 2018. Levandowski did not testify. On March 28, 2019, the Google arbitration panel issued an Interim Award against him.

**D.  Levandowski Was Then Indicted by Federal Prosecutors for Trade Secret Theft, Providing Strong Evidence That He Had Been Lying All Along, and Had Fraudulently Induced Uber to Enter Into the Indemnification Agreement.**

On August 15, 2019, Levandowski was indicted on 33 counts of theft and attempted theft of trade secrets. The indictment was not publicly announced until August 27, 2019.

**E.  Within Three Days of Learning About the Indictment, Uber Notified Levandowski That the Indemnification Agreement Was Rescinded Based on His Fraud and Was Null and Void Based on His Misconduct.**

On August 30, 2019, three days after the indictment was made public, Uber notified Levandowski's counsel in writing that the Indemnification Agreement was rescinded because it had been procured by Levandowski's fraud, including his fraudulent concealment of the facts alleged in

5

the indictment. Ex. 6. Uber had never received any benefits from Levandowski under the Indemnification Agreement, and had nothing to return to him as a result of the rescission.

Uber's August 30, 2019, letter also explained that even if the Indemnification Agreement were not rescinded, Levandowski would have no rights to enforce it because (a) he had committed a "Post-Singing Specified Act," which was defined to include "retaining, not returning … or possessing" confidential information from a former employer, and which rendered any indemnification obligation to Levandowski null and void, and (b) Levandowski had materially breached the Indemnification Agreement by refusing to testify and failing to cooperate. Further, Uber explained that Google's claims related to Levandowski's Tyto conduct were Excluded Claims under the Indemnification Agreement.

On September 27, 2019, Uber advised Levandowski that "[i]n the spirit of compromise and good will," Uber would pay Levandowski's counsels' bills through September 25, 2019, the date on which the Panel declared the hearing closed. Ex. 7. Uber would also pay fees for any "additional work related to the arbitration [that] becomes necessary between September 25, 2019, and the date on which the Panel issues any Final Award." (*Id.*) But Uber reiterated its position that it would not pay any other fees, or indemnify Levandowski for the Final Award itself. (*Id.*)

On December 6, 2019, the Google arbitration panel issued a final award against Levandowski.[7] The total amount of the award against Levandowski only was approximately $180 million (not including other amounts for which he was held jointly and severally liable with his former colleague Lior Ron).

### F. Levandowski's Recent Agreement to Plead Guilty to Trade Secret Theft Proves That Uber's Rescission Was Proper and That the Indemnification Agreement is Unenforceable.

On March 19, 2020, the United States attorney for the Northern District of California filed a Plea Agreement with Levandowski in which Levandowski agreed to plead guilty to a count of theft and attempted theft of trade secrets in violation of 18 U.S.C. § 1832(a)(1), (2), (3) & (4). Ex. 8 at ¶ 1. In the plea agreement, Levandowski admits that he downloaded a Google trade secret "with the

---

[7] On December 24, 2019, the arbitration panel issued a Corrected Final Award, dated December 6, 2019, *nunc pro tunc*.

intent to use it for the benefit of someone other than Google. In particular, I intended to use the Chauffeur Tracking Document to benefit myself and Uber." *Id.* at ¶ 3. Levandowski's change of plea and sentencing hearing is currently scheduled for August 4, 2020. The sentencing guidelines range for the count to which Levandowski has agreed to plead guilty is 18 to 24 months.

The facts set forth in the plea agreement were fraudulently concealed from Uber at the time that it entered into the Indemnification Agreement, and contradicted express promises made by Levandowski. Had Uber known those facts, it would not have entered into that Agreement. Thus, the plea agreement proves that Uber's rescission of the Agreement was proper.

### G. Furthermore, Even if the Indemnification Agreement Were Enforceable, a Substantial Portion of the Google Judgment is Allocable to an Excluded Claim and Hence Not Subject to Indemnification.

Under the Indemnification Agreement, if it is enforced despite Levandowski's fraudulent concealment of his misdeeds, Uber is not obligated to provide indemnification for any "Excluded Claim." That term is defined as any claim that arises or results from actions that "either (A) were not truthfully disclosed by the Diligenced Employees [to Stroz] in response to relevant inquiries in connection with the due diligence performed by [Stroz], or (B) were not contained or reflected in the due diligence materials provided by the Diligenced Employees to [Stroz]."[8]

Levandowski did not "truthfully disclose" his involvement with Tyto in response to "relevant inquiries" made during his March 22-23, 2016, diligence interview with Stroz. Nor was the relevant information about Levandowski's involvement with Tyto "contained or reflected in the due diligence materials provided by" Levandowski to Stroz. Accordingly, Uber is not obligated to indemnify Levandowski for the portion of the Google arbitration award allocable to the Tyto claims. Uber believes that at least 75% of the final award against Levandowski is allocable to the Tyto claims, and hence to Excluded Claims. Thus, even if all of Uber's other defenses were somehow overcome, Uber still could not be liable for more than 25% of the final award.

---

[8] *See* Declaration of Neel Chatterjee, Ex. 1 at Ex. A ("Indemnification Agreement") at § 2.1(b)(iii).

7
UBER'S RESPONSE TO MOTION TO COMPEL ARBITRATION
Case: 20-30242    Doc# 43    Filed: 04/13/20    Entered: 04/13/20 18:58:21    Page 10 of 12

## III. RESPONSE TO RELIEF REQUESTED

The case law cited in Levandowski's motion makes clear that it is for the arbitrators, not the courts, to decide whether an agreement that contains an arbitration clause has been fraudulently procured and is, therefore, validly rescinded.[9] Based on that case law and on its independent willingness to arbitrate all of these matters, Uber agrees that the dispute over the rescission issue (and all other indemnification disputes) can and should be resolved in arbitration.

Uber filed its answer to Levandowski's arbitration demand on April 13, 2020. In that answer, Uber stated that it was voluntarily agreeing to arbitrate all disputes relating to Levandowski's indemnification claim, and that its agreement to do so should not, and could not, be construed as accepting the enforceability of the Indemnification Agreement. Uber advanced all of its defenses to Levandowski's arbitration demand, including (a) that the Indemnification Agreement has been rescinded because Levandowski fraudulently concealed from Uber material facts that, had they been disclosed, would have caused Uber not to enter into that Agreement; (b) that the Indemnification Agreement is null and void because Levandowski committed a "Post-Signing Specified Bad Act" as defined in the Indemnification Agreement; (c) that Levandowski materially breached the Indemnification Agreement by not testifying or cooperating in the case, and thereby lost his ability to claim benefits under the Agreement; and (d) that, even if the Indemnification Agreement were somehow held to be enforceable, Uber would not be obligated to indemnify Levandowski for any Excluded Claim, as defined in the Indemnification Agreement (which thereby excludes any possible indemnification for at least 75% of the award, which is allocable to the Tyto misconduct).[10]

---

[9] *See e.g. Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 403-04 (1967) (where party claimed it had been fraudulently induced into a contract that contained an arbitration provision, but the fraud did not relate to the arbitration provision specifically, Court held the Federal Arbitration Act "does not permit the federal court to consider claims of fraud in the inducement of the contract generally"); *Buckley Check Cashing v. Cardegna*, 546 U.S. 440, 445-46 (2006) (since "an arbitration provision is severable from the remainder of the contract," the FAA requires all challenges to the validity of a contract containing an arbitration clause, including claims of fraudulent inducement, rescission, and illegality, to be decided by the arbitrator in the first instance, "unless the challenge is to the arbitration clause itself").

[10] In the unlikely event that the arbitrators conclude that any of Uber's defenses need to be plead as counterclaims, Uber will promptly file a motion with this Court seeking relief from the automatic stay to bring such counterclaims.

In light of Uber's agreement to arbitrate, Uber will not burden the Court with a refutation of Levandowski's arguments against rescission. Suffice it to say that Levandowski completely ignores the principal basis for Uber's rescission, which is his fraudulent concealment of the fact that he secretly committed a crime by stealing trade secrets with the intent to use them at Uber. If Uber had known that, it never would have entered into any agreements with Levandowski.

## IV. CONCLUSION

For the foregoing reasons, Uber requests that the Court issue an order denying Levandowski's motion as moot.

Dated: April 13, 2020

PACHULSKI STANG ZIEHL & JONES LLP

*/s/ John w. Lucas*
Debra I. Grassgreen
Jeremy V. Richards
John W. Lucas

and

HAMISH P. M. HUME
*hhume@bsfllp.com (pro hac vice forthcoming)*
JESSICA E. PHILLIPS
*jphillips@bsfllp.com (pro hac vice forthcoming)*
**BOIES SCHILLER FLEXNER LLP**
1401 New York Avenue, N.W., Suite 1100
Washington, DC 20005
Telephone: (202) 274-1122
Facsimile: (202) 237-2727

*Attorneys for Creditor* Uber Technologies, Inc.