**KELLER BENVENUTTI KIM LLP**
TOBIAS S. KELLER (Cal. Bar No. 151445)
(tkeller@kbkllp.com)
DARA L. SILVEIRA (Cal. Bar No. 274923)
(dsilveira@kbkllp.com)
650 California Street, Suite 1900
San Francisco, California 94108
Telephone: (415) 364-6793
Facsimile: (650) 636-9251

*Attorneys for Anthony S. Levandowski,
Debtor and Debtor in Possession*

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

In re:

ANTHONY SCOTT LEVANDOWSKI,

Debtor.

Bankruptcy Case
No. 20-30242 (HLB)

Chapter 11

**DEBTOR'S OMNIBUS REPLY IN SUPPORT OF MOTION TO APPROVE ISSUANCE OF PROMISSORY NOTES AS PAYMENT OF FEES AND EXPENSES OF GOODWIN PROCTER LLP**

Date: February 11, 2021
Time: 10:00 a.m. (Pacific Time)
Place: United States Bankruptcy Court
Courtroom 17, 16th Floor
San Francisco, CA 94102

Anthony Scott Levandowski, as debtor and debtor in possession (the "Debtor") in the above-captioned chapter 11 case (the "Chapter 11 Case"), hereby files this reply brief in support of the Motion to Approve Issuance of Promissory Notes as Payment of Fees and Expenses of Goodwin Procter LLP (the "Motion") [Docket No. 385] and in response to the oppositions filed by the Google LLC ("Google") [Docket No. 403], the United States Trustee [Docket No. 404], and Uber Technologies, Inc. ("Uber") [Docket No. 406] (each, an "Objection") as follows:

## Contents

ARGUMENT ............................................................................................................................. 4

    I.     Summary of Argument. ................................................................................................. 4

    II.    Financing the Lawsuit Against Uber. ........................................................................... 5

          A.     Background: Why the Debtor Did Not Anticipate Needing Funding. .................................................................................................... 5

          A.     The Debtor Sufficiently Considered Available Alternatives. ...................... 6

          B.     The Terms of the Note Are Favorable and In the Estate's Interest. ........... 8

          C.     Debtor's Conduct and Need for Financing. ................................................. 9

    III.   Goodwin's Retention. ................................................................................................. 11

          A.     Goodwin's Fees Are, and Will Remain, Subject to Review. ..................... 11

          B.     Nothing in the Bankruptcy Code Prohibits Goodwin from Accepting the Notes. ....................................................................................................... 12

          C.     The Motion Is Fair to Goodwin and the Estate. ......................................... 15

          CONCLUSION ............................................................................................................ 17

# TABLE OF AUTHORITIES

**CASES**

*Fann Contr., Inc. v. Garman Turner Gordon LLP*, 593 B.R. 625, 628 (D. Nev. 2018) ............. 13

*In re Am. Resources Mgt. Corp.*, 51 B.R. 713, 719 (Bankr. D. Utah 1985) ................................ 13

*In re Ames Dept. Stores, Inc.*, 115 B.R. 34, 40 (Bankr. S.D.N.Y. 1990) ...................................... 6

*In re Cedar Funding, Inc.*, Case No. Case No. 08-52709 (Bankr. N.D. Cal.) ............................ 13

*In re Knudsen Corp.*, 84 B.R. 668 (BAP 9th Cir. 1988) ................................................................ 11

*In re Molycorp, Inc.,* 562 B.R. 67, 75 n.35 (Bankr. D. Del. 2017) ............................................... 13

*In re Mosello*, 195 B.R. 277, 289 (Bankr. S.D.N.Y. 1996) ........................................................... 6

*In re NewZoom,* Case No. 15-31141 (HB) ................................................................................... 8

*In re PG&E Corporation*, Case No. 19-30088 (DM) ................................................................... 8

*In re Roamer Linen Supply, Inc.*, 30 B.R. 932, 935 (Bankr. S.D.N.Y. 1983) ............................ 13

*In re Sky Valley, Inc.*, 100 B.R. 107, 113 (Bankr. N.D. Ga. 1988) ............................................... 6

*In re Snowshoe Co.*, 789 F.2d 1085, 1088 (4th Cir. 1986) ............................................................ 6

*In re W&W Protection Agency, Inc.*, 200 B.R. 615, 619-20 (Bankr. S.D. Ohio 1996) ............... 12

*Savings Bank FSB v. Sky Valley, Inc.*, 99 B.R. 117, 120 n.4 (N.D. Ga. 1989) ............................. 6

**STATUTES**

11 U.S.C. §327(e) ........................................................................................................................ 13

11 U.S.C. §328(a) ........................................................................................................................ 13

11 U.S.C. §503(b)(1) ................................................................................................................... 14

## ARGUMENT

### I. Summary of Argument.

In some ways, this is a simple case. The Debtor has identified only approximately a dozen unsecured creditors and, but for his counsel and Google, his liquidated unsecured debt is less than $70,000. The Debtor could not afford to bond an appeal of a judgment for which he believes he is indemnified and sought this Court's protection in order to settle out what was a three-party dispute between himself, his judgment creditor, and his indemnitor. Yet, when the amount at issue is rapidly approaching $200 million, and the other parties are Google and Uber, the case isn't so simple.

The Debtor's original plan was to immediately commence an arbitration that, the Debtor hoped, would expediently and completely confirm his right to advancement from Uber. With the advancement, the cost of prospective litigation would have been fully funded. Yet that plan changed as parties started to negotiate and, between a mediation and agreements to consolidate all issues into a single adversary proceeding before this Court, the Debtor realized that he would need additional liquidity to see him through trial and case resolution. Accordingly, by September the Debtor began working to determine his options to find such liquidity. He considered the liquidation of existing assets, new borrowing, and contingency/litigation funding solutions. Indeed, he identified various options and discussed them with his professionals (who were already accruing receivables) and Google, his primary creditor. One option stood out as offering the most flexibility to the estate and the lowest cost: The deal with Goodwin memorialized in the Term Sheet.[1]

The Debtor believes the Google Objection is resolved, as discussed below. The remaining Objections flag a host of issues. Neither of them seriously challenges the crux of the Motion – that the Debtor wishes to issue the Notes on the terms set forth therein under the authority of section 364(c)(1) of the Bankruptcy Code. Rather, they both question the propriety

///

---

[1] Terms used but not defined herein shall have the meanings ascribed to them in the Motion.

of the Debtor issuing the Notes *to Goodwin*. As this reply establishes, there is nothing in statute prohibiting Goodwin from accepting the Notes; and while courts have identified policy reasons that warrant scrutiny of the proposal, none of those policies is offended here. More important, an overarching policy of the Bankruptcy Code – permitting the rehabilitation of a debtor – is being served better and more efficiently than any of the other available alternatives.

II. **Financing the Lawsuit Against Uber**.

    A. **Background: Why the Debtor Did Not Anticipate Needing Funding.**

At the inception of the Chapter 11 Case, at the beginning of March 2020, the Debtor did not contemplate that it would take more than a year to confirm his right to an advancement from Uber. On the contrary, as explained in detail in his *Motion to Compel Arbitration* filed on March 30, 2020 [Docket No. 18], the Debtor sought and intended to resolve this issue in an accelerated arbitration process. Had that process been completed, Uber's obligation to fund the Google judgment would have been established and no further proceedings with Uber would have been permitted until the judgment became final and Uber advanced the full amount of the judgment. *Id*. Only after those amounts were advanced was Uber then permitted to raise its argument that it did not have the obligation to indemnity the Debtor. *Id.* Thus, the Debtor had every reason to believe he would have sufficient resources to fund the Chapter 11 Case to completion.

Instead, after engaging and consulting with Google and Uber, in April the Debtor agreed to mediate his disputes with Google and Uber and make substantial financial disclosures to them in anticipation of the mediation[2] (*see Stipulation by and among the Debtor, Google LLC, and Uber Technologies, Inc. for Mediation of Disputes and Related Relief* [Docket No. 70]). The mediation failed, and further discussions with Google and Uber led to the Debtor's agreement to allow all matters to be tried and resolved in Adversary Proceeding No. 20-03050 (the "AVP")

---

[2] As required by the mediation stipulation, in the summer of 2020, the Debtor's financial advisor established and populated a data room containing substantially all of the Debtor's information on his assets and liabilities and, with the other parties, the Debtor obtained additional information from third parties voluntarily or pursuant to orders issued by this Court pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure. Google and Uber have had access to the data room since its creation, along with their financial advisors, FTI Consulting, Inc. (for Google) and Alvarez & Marsal (for Uber).

now pending before this Court; Google thereafter sought and obtained authority to intervene in the AVP; and complex litigation commenced on an expedited basis. The AVP is scheduled to be tried at the end of April. The plan, timing and budget have thus changed materially.

By September 2020, when the Debtor realized that he did not have the liquidity to finance the litigation through trial, he began to explore his options. Through counsel, he consulted with Google, the creditor holding over 95% of the liquidated claims in the Chapter 11 Case, about his options. For the reasons described in the Motion, he concluded that the estate's interests would best be served by issuing Notes to Goodwin in lieu of borrowing from third-party lenders, obtaining litigation funding, or attempting to sell assets on a distressed basis. Setting aside issues unique to Goodwin, which issues are discussed in the section III below, the Objections raise few novel or problematic issues with respect to the financing itself.

**B. The Debtor Sufficiently Considered Available Alternatives.**

Both the United States Trustee and the Uber Objections assert that the Debtor has not met his burden of establishing that he should be permitted to issue the Notes under section 364(c). *See* United States Trustee Objection, ¶13; Uber Objection at 9-13. Yet the declaration submitted in support of the Motion addresses the Debtor's assets and liquidity, the search for debt financing, and the terms upon which debt financing might otherwise become available. *Declaration of Allen Soong* [Docket No. 387] (the "Soong Declaration") at ¶¶4-7. The United States Trustee's Objection argues that the Soong Declaration did not provide a sufficiently "specific factual demonstration" (at 3:1-2); while the Uber Objection questions the Debtor's judgment in seeking financing in lieu of liquidating assets (discussed below) and, more pointedly, demands proof that Goodwin would attempt to withdraw if the Motion is not granted.

The suggestion that the Motion is inadequate from an evidentiary standpoint is neither warranted by the law or under the facts on this Motion. Courts considering the question do not require an exhaustive search for financing before seeking authority to borrow; rather, a debtor need only demonstrate "by a good faith effort that credit was not available" without the protections afforded to potential lenders by sections 364(c) or 364(d). *See In re Mosello*, 195 B.R. 277, 289 (Bankr. S.D.N.Y. 1996) (*citing In re Snowshoe Co.*, 789 F.2d 1085, 1088 (4th Cir.

1986)). Thus, "[t]he statute imposes no duty to seek credit from every possible lender before concluding that such credit is unavailable." *In re Ames Dept. Stores, Inc.*, 115 B.R. 34, 40 (Bankr. S.D.N.Y. 1990) (holding that debtor made reasonable effort to secure financing when it selected the least onerous financing option from the remaining two lenders). Moreover, where few lenders likely can or will extend the necessary credit to a debtor, "it would be unrealistic and unnecessary to require [the debtor] to conduct an exhaustive search for financing." *In re Sky Valley, Inc.*, 100 B.R. 107, 113 (Bankr. N.D. Ga. 1988), *aff'd sub nom., Anchor Savings Bank FSB v. Sky Valley, Inc.*, 99 B.R. 117, 120 n.4 (N.D. Ga. 1989).

The Debtor will have Mr. Soong at the hearing should further testimony be requested or required. However, as stated in the Soong Declaration, the circumstances are straightforward: The Debtor's income will not support a "cash flow" loan, but as the Uber Objection points up, the Debtor does have assets that he was prepared to pledge.[3] This notwithstanding, the indications of interest Mr. Soong received were demonstrably inferior to the terms of the Notes: They would have required the Debtor to pledge substantially all of his assets as collateral (the Notes would not be secured), and they would have required rates of return "of 30% per annum or more." Soong Declaration, ¶7. (It is also material to the Debtor that such prospective lenders would likely be less flexible surrounding further negotiation or accommodations than Goodwin.) Should he be required to testify, Mr. Soong can provide more specific information to support his conclusion that "is in the estate's interest to issue the Notes (as defined in the Motion) in lieu of further pursuing third party financing " *Id.*, ¶8.[4]

///

///

---

[3] Included among the assets Mr. Soong presented to lenders were assets in his Roth IRA, notwithstanding his claim of exemption on such assets. Uber notes that the Debtor "may" be able to liquidate those assets without penalty, but the Debtor has received advice that a penalty may be payable *even if the assets were merely pledged.* With recent changes to tax laws under the CARES Act, the Debtor will continue to explore the underlying tax issues.

[4] Uber argues that part of the Debtor's required showing is that Goodwin will cease to serve as counsel – *i.e.*, will not voluntarily finance the case with its services – as part of its showing. That argument is addressed in Section III below.

**C. The Terms of the Note Are Favorable and In the Estate's Interest.**

The terms of the Notes are set forth in the Term Sheet attached to the Motion, with one revision. Although the Debtor consulted extensively with Google prior to filing the Motion (*Motion* at 5:4-6), not all issues Google raised were fully resolved at the time. *See* Google Objection. After further discussion, the Debtor agreed to modify the terms of the Note to provide for an interest rate of eight percent (8.0%) per annum rather than the twelve percent (12.0%) set forth in the Term Sheet. (Goodwin has agreed to the change.)

The remaining terms must be considered in the overall context of the case. The AVP involves complex, expensive litigation over the Debtor's claims under the Indemnity Agreement; if the Debtor prevails, his recovery will dwarf the value of all of his other assets, and render the Debtor and his estate solvent (or nearly so). As the Motion attests, Goodwin is willing to take fee risk by deferring its fees *and* is prepared to allow the Debtor to use available cash to pay his living expenses (as approved by the Court) and a substantial portion of the Other Professionals' fees according to its negotiation with those professionals. *See generally* Term Sheet ("Permitted Payments").[5] In exchange for those concessions, the Term Sheet provides two additional protections to Goodwin – the estate will not encumber its assets unless the proceeds are earmarked to pay Goodwin fees, and Goodwin will have priority for its deferred fees. It is those accommodations that draw the most vehement objections from the United States Trustee and Uber.

There are issues unique to the fact that Goodwin, rather than a third-party financier, will receive the Notes. Those issues are discussed in Section III below. Setting aside those issues, the protections afforded by the Term Sheet are wholly unremarkable. As the Soong Declaration and common experience attest, *any* third-party financing would not only restrict the Debtor's ability to use cash proceeds of its assets but would take those assets as collateral. *Any* third-party financing would require a debtor to live within an approved budget. *Any* third-party financing

---

[5] The Term Sheet also provides that any priority enjoyed by the holder of the Note would be subordinate to United States Trustee Fees and $50,000 for a chapter 7 trustee's fees and expenses.

would include the priority rights expressly permitted by Congress in enacting section 364(c)(1) of the Bankruptcy Code. The Notes can be distinguished from what is available in the market only by their more favorable terms, *i.e.*, unsecured rather than secured credit, and interest rates below the market Mr. Soong found (assuming that debt could be obtained at all).

While the Debtor submits, and the evidence confirms, that the terms of the proposed Notes (including their superpriority status) are at or better than available in the market, the United States Trustee Objection argues that limiting chapter 7 trustee to a $50,000 "carve-out" is inappropriate. Superpriority, with a carve-out for a chapter 7 trustee, is common in chapter 11 practice, including before this Court. *E.g.*, *In re PG&E Corporation*, Case No. 19-30088 (DM) [Docket No. 1091] (superpriority claim with $100,000 carve-out); *In re NewZoom,* Case No. 15-31141 (HB) [Docket No. 91] (on second interim order, superpriority claim with $25,000 carve-out). In the Chapter 11 Case, $50,000 should be sufficient for a chapter 7 trustee to evaluate the status of the case, the aggregate amount of the Notes, and the value of the assets; if the trustee were to conclude that the value of the assets exceeds the amount of the Notes, the trustee would administer the case. If value of the assets were not sufficient to pay down the Notes, the trustee would (and should) abandon those assets to Goodwin absent a (likely) agreement with Goodwin to provide a further carve-out to the trustee.

### D. Debtor's Conduct and Need for Financing.

Unlike the Google and United States Trustee Objections, the Uber Objection contains a number of assertions and significant amount of innuendo about the Debtor's pre-petition conduct. Had he the benefit of hindsight (particularly the abandonment of an accelerated arbitration agreement to litigate all matters in the AVP), the Debtor might have done more to maximize liquidity pre-petition. Yet the fact remains that he did not anticipate the course the case has taken, and the estate now is short of liquidity and will be, through the relief requested in the Motion or otherwise, financed by the professionals. The Term Sheet represents a rational allocation of risk among the professionals, willingly agreed among the professionals. The need for financing remains, regardless of the Debtor's conduct.

///

Still, the Uber Objection cannot go unanswered. The Debtor indeed has other assets, which Uber knows well, having had months in the Debtor's virtual data room. As indicated in the Soong Declaration, the investments are not liquid, and their forced liquidation would likely result in "deeply discounted" recoveries. *Soong Declaration*, ¶6. While Uber makes unsupported and untrue allegations about the Debtor's intentions in making various investments (Uber Objection at 5:22-6:2), *i.e.*, that the Debtor made them to frustrate creditors rather than in the anticipation of returns on those investments, the facts are far less salacious: The investments are identified, known, and in many cases, promising. For instance, Uber is unhappy that the Debtor invested in Pronto.ai, his current employer, but neglects to mention that Uber considers Pronto.ai a sufficiently promising competitor that it felt compelled to specifically call Pronto.ai out in its offering memorandum as a start-up "whose offerings may prove more effective than our autonomous vehicle technologies." *See* Form S-1 filed April 19, 2019 (https://www.sec.gov/Archives/edgar/data/1543151/000119312519103850/d647752ds1.htm) at 25. Similarly, it decries the Debtor's alleged investment in a dissolved California LLC (Home Studio) owned by his fiancée, presumably unaware that the investment was made in the reincorporated Delaware entity, Home Studio Inc. *See* Delaware Secretary of State File No. 7838926 (https://icis.corp.delaware.gov/ecorp/entitysearch/NameSearch.aspx) (showing incorporation of the Delaware corporation on February 6, 2020). That Uber disapproves of the Debtor's investments should not have any bearing on the Motion.

As to its argument regarding other assets, there are indeed a number of other assets that the estate might pursue, including certain assets identified in the Uber Objection at page 4. The Debtor has explored collection of certain of those assets, though he understands his judgment would be questioned if he were to propose a compromise in recovering many of those assets. They are litigation claims, however, and they are generally premised on proving a question that

///
///
///
///

Page 11

turns on the outcome of the AVP: Was the Debtor insolvent? None of those litigations is likely to be resolved unless and until the AVP is resolved.[6] Whether or not there are issues surrounding transfers made prepetition, the estate is not in a position to recover those assets in the near future.

Though not specifically so argued, the greater theme of the Uber Objection is that the Court should not defer to the Debtor's judgment. The Debtor and his advisors are mindful of the concern the Court has shown over the Debtor's management of the estate and, for that reason, have actively and often conferred with Google in considering the Debtor's options and settling on the proposal set forth in the Term Sheet. (For reasons that should be self-evident, the Debtor did not consult with Uber about how best to assure that Goodwin would see the AVP through trial.) In the absence of a creditors' committee, the Debtor submits that Google's implicit support for the Motion is powerful evidence that his judgment in bringing the Motion is in the best interest of the estate in this Chapter 11 Case.

### III. Goodwin's Retention.

The United States Trustee and Uber both argue that, whether the Debtor might otherwise incur debt, issuing the Notes *to Goodwin* is inappropriate because it would represent a reordering of chapter 11 priorities in violation of the Bankruptcy Code. The Debtor disagrees, for the reasons set forth below.

**A. Goodwin's Fees Are, and Will Remain, Subject to Review.**

The Motion is a financing motion, not a retention motion, but the nature of the proposed transaction is atypical. Accordingly, the Motion specifically addresses Goodwin's role and its agreement to section 330 review of its fees and expenses. *See* Motion at 5-6. The cases cited in the Motion, *B.U.M Intern.* and *Fann Contr.*, involved cases in which special circumstances created confusion surrounding the Court's authority to review fees (*i.e.*, which standard controlled – section 328(a) or section 330). The Objection filed by the United States Trustee seeks confirmation that Goodwin's fees and expenses would be reviewed under the standards

---

[6] This is not the case with the Debtor's Roth IRA. However, as discussed above at note 3, assets held by the Roth IRA were included among the assets shown to prospective lenders by Mr. Soong.

fixed under section 330 of the Bankruptcy Code.  *See* United States Trustee Objection, ¶16.  The Debtor hereby confirms that this is indeed the parties' intent.  The Debtor's counsel has invited the United States Trustee to propose modifications to the proposed order (Motion, Exhibit B) to the extent that further clarity is required.

### B. Nothing in the Bankruptcy Code Prohibits Goodwin from Accepting the Notes.

The Notes are fair, even beneficial, to the estate.  If the Notes were issued to a third-party lender, rather than to Goodwin, it is hard to imagine a plausible objection to their issuance.  If the Notes were issued to a conventional lender, the proceeds would be used to pay Goodwin and the Other Professionals in cash.  The only distinctions between what would otherwise be a very typical and favorable transaction and the one contemplated by the Motion are (1) Goodwin will hold the Notes, and (2) the Other Professionals will not be paid in full.  The fact that Goodwin will be the holder of the Notes, argue both the United States Trustee and Uber, should make issuance of the Notes impermissible.  That is not the law.

The starting point in the Ninth Circuit must necessarily be *In re Knudsen Corp.*, 84 B.R. 668 (BAP 9th Cir. 1988).  In *Knudsen*, the Bankruptcy Appellate Panel approached the issue before it from a very practical standpoint and refused to reject what was then an atypical compensation arrangement based on rigid adherence to processes specifically included in the Bankruptcy Code:

> the Trustee ignores the problem, arising especially in large cases, that when counsel must wait an extended period for payment, counsel is essentially compelled to finance the reorganization. This result is improper and may discourage qualified practitioners from participating in bankruptcy cases; a result that is clearly contrary to Congressional intent.

*Knudsen* at 672 (footnote omitted).  Of course, in the *Knudsen* case, the Bankruptcy Appellate Panel affirmed an order providing for monthly payment of counsel fees notwithstanding the 120-day period specifically identified in section 331 of the Bankruptcy Court.  Though the panel was committed to the principle that "qualified practitioners [should be] participating in bankruptcy cases", it struggled not with counsel's priority (as is the case here) but with the fact of early payments; a fair reading of the case leaves no doubt that the issue was the court's insistence that

counsel's fees *would remain subject to review* and *were recoverable if and to the extent that fees were disallowed*. *Id*. at 673. That is not an issue here.

The Uber Objection maintains that issuance of the Notes to Goodwin remains impermissible. *See* Uber Objection at 5-9 ("The bottom line is that Goodwin is a bankruptcy professional whose compensation is governed by section 330. Goodwin is not a lender eligible for the protections of section 364.") Yet the cases cited by Uber do not support this assertion. First, the section 330 issue can and should be dismissed summarily. Goodwin's fees and expenses are subject to final review under section 330 of the Bankruptcy Code and will remain so if the Motion is granted. The proposed order is explicit on the point. Second, as the *Knudsen* panel observed, in some cases – like the Chapter 11 Case – "counsel is essentially compelled to finance the reorganization." Goodwin *is* a lender whether the Motion is granted or not; there is no statutory or policy reason that it cannot also be "eligible for the protections of section 364." The Uber Objection includes a lengthy string cite ostensibly demonstrating that courts forbid debtors to satisfy professional fees with notes rather than cash, but most of those cases do not meaningfully deal with circumstances even remotely similar to the facts presented in the Motion.[7]

There have been a small number of cases in which the debtor has attempted to pay attorneys' fees ahead of lienholders and other claimants with priority. Thus, in *In re W&W Protection Agency, Inc.*, 200 B.R. 615, 619-20 (Bankr. S.D. Ohio 1996), at the outset of the case general bankruptcy counsel sought a priming lien (ahead of a mortgage lender), post-petition retainer payments, and a super-priority claim; the court denied the relief, noting with respect to the superpriority request that "the elevation of Debtor's attorney's fees to a super-priority

---

[7] *Knudsen*, of course, affirmed monthly payment of fees; *In re 5900 Associates, Inc.*, 468 F.3d 326, 328 (6th Cir. 2006) involved the validity of fees when no fee application had been filed; *In re Intelogic Trace, Inc.*, 200 F.3d 382, 387 (5th Cir. 2000) addressed whether *res judicata* applies to alleged malpractice for approved fees; *In re Cal-Inland, Inc.*, 124 B.R. 551, 552 (Bankr. D. Minn. 1991) considered a request for post-petition retainers under the *Knudsen* standards; *In re USHC, LLC*, 456 B.R. 304, 308-09 (Bankr. W.D. Ky. 2011) also involved the issuance of post-petition retainers; *In re Fitzsimmons Trucking, Inc.*, 124 B.R. 556, 559 (Bankr. D. Minn. 1991) involved multiple issues around treatment of a prepetition retainer and payment of expenses without review. *Howard v. Zurich American Ins. Co.*, 547 U.S. 651, 655 (2006) includes *dictum* cited by Uber in a case without any clear application here.

administrative expense senior to all others is not warranted *under the circumstances of this case.*" *Id.*, emphasis supplied. *In re Am. Resources Mgt. Corp.*, 51 B.R. 713, 719 (Bankr. D. Utah 1985), involved an attempt to prime an existing secured creditor's lien with bankruptcy counsel fees, which the court denied because of the secured creditor's position. *Id.* (refusing to permit payment of counsel fees from assets already "subject to liens"); *see also In re Molycorp, Inc.,* 562 B.R. 67, 75 n.35 (Bankr. D. Del. 2017) (citing *American Resources* with approval). In *In re Roamer Linen Supply, Inc.*, 30 B.R. 932, 935 (Bankr. S.D.N.Y. 1983), the court similarly refused an attempt to prime IRS and Bank claims with bankruptcy counsel's fees. In each of these cases, the court considered the facts but – based on the prejudice to be suffered by identified, specific interests – refused to countenance the payment of counsel's fees *ahead* of structurally senior creditors, usually lienholders. Indeed, on their facts any other holding would be surprising.

The instant case is different in a number of ways. First, in each of the cases cited by Uber, and certainly those discussed in the preceding paragraph, counsel was or appears to have been general bankruptcy counsel under section 327(a). The cases do not appear to have involved special litigation counsel retained pursuant to section 327(e), for which adversity to the estate is only relevant "with respect to the matter on which" the attorney is employed. 11 U.S.C. §327(e). Particularly with respect to special litigation counsel, section 328(a) expressly anticipates varied terms; indeed, in cases involves prosecuting high-value claims on behalf of an estate, contingency and similar arrangements with special counsel are common. *See*, *e.g.*, *Fann Contr., Inc. v. Garman Turner Gordon LLP*, 593 B.R. 625, 628 (D. Nev. 2018) (contingency fees ranging from 35% to 45% approved by Bankruptcy Court); *In re Cedar Funding*, *Inc.*, Case No. Case No. 08-52709 (Bankr. N.D. Cal.) (Judge Novack order dated December 10, 2010, approves contingency counsel fees ranging from 33.3% to 40% of recovery); *see also* 11 U.S.C. §328(a) (expressly providing for "reasonable terms and conditions of employment, including … on a contingent fee basis"). Thus, at least with respect to special litigation counsel, providing post-petition interest, priority, and covenants regarding cash usage fit neatly within the concept of "reasonable terms and conditions."

Moreover, the instant facts are compelling. To the extent that its fees are ultimately approved by this Court, Goodwin will have a first-priority administrative claim regardless of whether it receives the Notes. 11 U.S.C. §503(b)(1). Except for the Other Professionals, all other administrative claims are being paid currently (*see Order Granting Debtor's Motion to Approve Chapter 11 Budget for the Use of Cash and Postpetition Income* [Docket No. 316]) or, in the case of United States Trustee fees, have been carved out. The Other Professionals do not oppose the Motion because it represents a compromise among them and Goodwin: To the extent cash is available, some of the Other Professionals' fees will be paid while Goodwin's receivable will increase significantly. For that, the Other Professionals are willing to subordinate the balance of their fees to Goodwin. There are no other creditors that will be prejudiced by the issuance of the Notes to Goodwin.[8]

### C. The Motion Is Fair to Goodwin and the Estate.

The Debtor has known for months that he needed to find liquidity to assure that the Goodwin and its team would fully and competently prosecute the AVP. Uber asks the Debtor to prove that "Goodwin intends to cease providing professional services to the Debtor if the terms of Goodwin's retention … are not modified." In fact, the Debtor found other potential way of paying Goodwin's fees as early as September and October 2020 – most notably, by accepting

---

[8] Uber also relies on *In re Peaches Records & Tapes, Inc.*, 102 B.R. 193, 196 (BAP 9th Cir. 1989) to argue that post-petition interest is not payable on administrative claims, apparently unaware that this case since has been abandoned by the Bankruptcy Appellate Panel:

> The validity of *Peaches Records* is questionable since it relied in part on the Panel's decision in *In re Mark Anthony Construction, Inc.*, 78 B.R. 260 (9th Cir. BAP 1987), which was subsequently reversed. 886 F.2d 1101, 1106 (9th Cir. 1989). *See also, In re Colortex Industries, Inc.*, 19 F.3d 1371, 1379 n.9 (11th Cir. 1994) (criticizing Peaches Records on this basis). Indeed, the Ninth Circuit Court of Appeals not only allowed interest on an administrative claim for taxes in *Mark Anthony*, it also allowed interest as part of an administrative claim where the debtor failed to turn over funds that were determined to be held in trust and not property of the estate. *In re Megafoods Stores, Inc.*, 163 F.3d 1063, 1071-72 (9th Cir. 1998).

*In re Cukierman*, 242 B.R. 486, 491 (BAP 9th Cir. 1999). In any event, for the reasons discussed above, the Debtor submits that the Notes may bear interest and the fact that Goodwin would be the holder should be immaterial.

litigation or other third-party financing (at prevailing market rates as described in the Soong Declaration) or by converting Goodwin's retention to a contingency or partial contingency-fee structure.[9] Goodwin was never placed in the position in which it needed to threaten the Debtor with its resignation because the Debtor proactively approached Goodwin to assure that he would have the benefit of its representation and counsel through the resolution of the AVP.[10]

The Debtor, after consulting with Goodwin and Google, concluded that the issuance of Notes bearing interest was far-and-away the best alternative for the estate in this Chapter 11 Case. He circulated draft of the Term Sheet in early November 2020, and a robust set of negotiations among the Debtor, Goodwin, and Google followed. Those discussions resulted in the final Term Sheet. It was not that alternatives did not exist; it was that that alternatives were so clearly inferior from the standpoint of all parties in interest in the Chapter 11 Case.

The Motion represents a turnkey solution to the question of how the Debtor will finance the Chapter 11 Case through judgment in the AVP. It balances the interests of the Debtor, administrative creditors, unsecured creditors, and trial counsel. It follows directly from tools specifically authorized by the Bankruptcy Code, and its application on these facts does no violence to any constituency. Quite the contrary: It clears the way for a robust trial that, if successful, will render the Debtor's estate solvent and final resolution of the Chapter 11 Case assured.

///
///
///
///
///

---

[9] An irony, of course, is that under the prevailing party provision of the Indemnification Agreement, Uber may be the biggest beneficiary of the estate's ability to avoid paying a litigation funder, third-party lender, or Goodwin on a contingency-fee basis.

[10] While the Debtor does not purport to speak for Goodwin, it has arranged to have Goodwin representatives at the hearing on the Motion that can address questions or concerns raised at the hearing.

## **CONCLUSION**

WHEREFORE, the Debtor respectfully requests entry of an order granting the relief requested in the Motion and such other and further relief as the Court may deem just and proper.

Dated:  February 9, 2021 **KELLER BENVENUTTI KIM LLP**

By: /s/ *Tobias S. Keller*
    Tobias S. Keller

*Attorneys for Anthony S. Levandowski,
Debtor and Debtor in Possession*