Debra I. Grassgreen (CA Bar No. 169978)
Miriam Manning (CA Bar No. 178584)
PACHULSKI STANG ZIEHL & JONES LLP
150 California Street, 15th Floor
San Francisco, CA 94111
Telephone: (415) 263-7000
Facsimile: (415) 263-7010
E-mail: dgrassgreen@pszjlaw.com
mmanning@pszjlaw.com

David J. Bradford (admitted *pro hac vice*)
Catherine Steege (admitted *pro hac vice*)
Terri L. Mascherin (admitted *pro hac vice*)
Katharine R. McLaughlin (admitted *pro hac vice*)
JENNER & BLOCK LLP
353 N. Clark St.
Chicago, IL 60654
Telephone: (312) 222-9350
E-mail: dbradford@jenner.com
csteege@jenner.com
tmscherin@jenner.com
kmclaughlin@jenner.com

*Counsel for Uber Technologies, Inc.*

**UNITED STATES BANKRUPTCY COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| In re:<br><br>ANTHONY SCOTT LEVANDOWSKI,<br><br>　　　　　　　　Debtor. | Case No. 20-30242 (HLB)<br><br>Chapter 11<br><br>**UBER TECHNOLOGIES, INC.'S LIMITED OBJECTION TO DEBTOR'S MOTION TO OBTAIN SECURED SUPERPRIORITY FINANCING AND USE ROTH IRA ASSETS TO PAY ESTATE OBLIGATIONS**<br><br>Date: September 9, 2021<br>Time: 10:00 a.m. (Pacific Time)<br>Place: (Tele/Video Appearance Only)<br>　　　　United States Bankruptcy Court<br>　　　　Courtroom 17, 16th Floor<br>　　　　San Francisco, CA 94102 |

Uber Technologies, Inc. ("Uber") respectfully submits this limited objection ("Limited Objection") to the motion of the debtor, Anthony Scott Levandowski (the "Debtor"), seeking Court

approval to (A) Obtain Secured Superpriority Financing And Related Relief; and (B) Use Roth IRA Assets and Proceeds to Pay Estate Obligations [Docket No. 639] (the "Motion"). In support of this Limited Objection, Uber represents as follows:

# I.

# **OBJECTION**

Through the Motion, Mr. Levandowski seeks to borrow $2 million and liquidate a portion of his claimed IRA account to fund the professional fees of the estate. Uber does not oppose Mr. Levandowski's efforts to obtain liquidity to pay his professionals. However, as is set forth below, there are a handful of issues that Uber respectfully believes should be addressed prior to entry of any order on the Motion[1].

    A.    Deviations from local Guidelines for Cash Collateral & Financing Motions & Stipulations ("Guidelines").

The Guidelines identify various provisions that are not ordinarily approved in cash collateral or financing motions in this District, including "[w]aivers of, or grants of lien on, rights under Bankruptcy Code section 506(c), unless the waiver or grant is effective only during the period in which the debtor is authorized to use cash collateral or borrow funds." (Guidelines, Section E.4). Here, the Debtor agreed to waive his right to surcharge the secured collateral under 506(c) with no limitations on the duration of time the surcharge is to be waived. (See, [proposed] Order para 9). There is no justification for deviating from the Guidelines as it does not appear that the proposed lender was a prepetition creditor of the Debtor. Accordingly, this provision should be deleted from the proposed order.

    B.    The Definition of "Excluded Claims" Should be Modified.

As this Court has recognized, the Debtor has transferred substantial assets to third parties on the eve of the commencement of the bankruptcy case. In addition, as is set forth in detail in the *Objection to Debtor's Claim of Exemption in Pensco Roth IRA* [Docket No. 421] (the "Exemption Objection"), between 2016 and 2017, the Debtor received approximately $127 million for his work on autonomous vehicle technology at Google LLC ("Google") and immediately put in motion an

---

[1] Uber intends to reach out to counsel for Mr. Levandowski to raise these issues and see if they can be resolved consensually in advance of the hearing on the Motion.

elaborate scheme to shield his assets from creditors. Through a complex circular web of entities controlled by friends and family members, the Debtor invested in a family residence, personal side projects, and exotic tax shelters—such as founding and funding his own church and overfunding his Roth IRA with investments in a fund that invested in a company he founded and where he is currently employed.

The proposed financing excludes a lien on avoidance actions that arise under the Bankruptcy Code. However, given the substantial prepetition transfers described in the Exemption Objection, certain transfers may also be recoverable under state fraudulent conveyance laws.

The Security Agreement, attached to the Keller Declaration as Exhibit B, defines "Excluded Claims" as –

"Grantor's claims and causes of action arising under sections 544, 545, 547, 548, 549, 553(b), 723(a), or 724(a) of title 11 of the United States Code and proceeds of such claims and causes of action."

To avoid a situation where a given transfer is recoverable both as a state law fraudulent conveyance statutes as well as the Bankruptcy Code and therefore it is not clear whether the claim is and Excluded Claim or not, the term "Excluded Claims" should be redefined as:

> "Grantor or the estate's rights, claims and causes of action arising under sections 544, 545, 547, 548, 549, 553, 723(a), or 724(a) of title 11 of the United States Code <u>or applicable state fraudulent conveyance laws</u>, or the proceeds of any such rights, claims and causes of action."

C. <u>The Debtor Should Be Required to Fully Disclose All Relationships with Lender</u>.

Mr. Levandowski should fully disclose all connections with the proposed lender, and entities he controls including Acorn Pacific Opportunities Fund LP. The Debtor identified the lender, Mr. Chau as "an investment manager and personal acquaintance" and the firm with which he is associated, Acorn Pacific Opportunities Fund LP ("<u>Acorn</u>"), "holds certain of the assets in the Debtor's Roth IRA". (Motion, pg. 5). The Debtor should disclose all relationships with Mr. Chau, Acorn, or any other entities that he owns or controls, including disclosing any investments those entities have made in businesses currently or formerly owned and controlled by the Debtor. For example, the Debtor testified at his deposition that ▇▇▇ is an investor of in one of the Debtors'

businesses – Pronto [2] – and it is unclear whether ▇▇▇ invested independently or whether ▇▇▇ investment in Pronto is simply a "round robin" where Mr. Levandowski provided IRA funds to ▇▇▇ and then ▇▇▇ turned around and invested Mr. Levandowski's IRA funds in Pronto. In order to obtain a finding that the loan is made in good faith, the Lender should fully disclose the nature of all of his connections to and relationships with the Debtor, including direct and indirect investments, loans or business arrangements.

D. Security Interest in Undisclosed Intellectual Property.

Paragraph 4(b) of the proposed Security Agreement provides authority to the lender to file documents with the Patent and Trademark Office and the Copyright Office documents to perfect its security interest in intellectual property. However, the Debtor did not disclose any intellectual property assets in connection with his schedules of assets and liabilities other than "Various internet domain names" valued at $1. If other intellectual property assets exist but which were not disclosed on the schedules, the Debtor should disclose these assets or the grant of a security interest should be deleted or limited to the specific internet domain names.

E. The Validity of the Roth IRA as an Exempt Asset is Disputed
and any Tax Losses Arising From the Debtor's Use are Self-Inflicted.

The Debtor has put the validity of his claim of exemption in the Roth IRA directly at issue by expressly reserving all rights to assert claims against Uber for tax losses that he may incur by withdrawing assets from his Roth IRA to pay chapter 11 expenses. (Motion, pg 10 fn 9). Although the Debtor does not seek a determination of liability at this time (but rather to assert the losses as damages in the pending adversary proceeding), a ruling on the Exemption Objection will be determinative of the Debtor's tax liability arising from the disposition of that asset.

Uber has long challenged the validity of the Debtor's claim of exemption in the Roth IRA. As set forth in the Exemption Objection, Uber contended that the Debtor was ineligible to establish the Roth IRA in 2016 because his adjusted gross income at the time – which exceeded $70M -- far

---

[2] The Debtor co-founded Pronto and then sold all his shares back to Pronto for $50 (Dkt 17 p. 28). The Debtor also represented in his Statement of Financial Affairs filed on May 4, 2020, that he "is currently employed by Pronto, an automotive safety technology firm that the Debtor co-founded and in which the Debtor is currently an investor through a Simple Agreement for Future Equity ("SAFE") convertible note" [Dkt 73, pg 25] and that his SAFE investments in 2019 and 2020 totaled over $3.6M. [Id at 14].

exceeded the $132,000 cap set forth in the Internal Revenue Code.  (Exemption Objection, pg 15). Yet, the Debtor contributed more than $17 million to his Roth IRA over a two-year span even though the maximum contribution allowed under the Internal Revenue Code was $5,500 per year and his income level at the time prohibited him from contributing anything at all.  This massive overfunding coincidentally took place at a time when the Debtor was fending off a multitude of claims brought by his former employer, Google, which claims ultimately resulted in a $180M judgment against the Debtor in December 2016.  These facts as well as other allegations set forth in the Exemption Objection, demonstrate that the Debtor was engaging in a pattern of conduct, including the funding of the Roth IRA, designed to improperly shelter assets from creditors.

At the present time, the Exemption Objection has been stayed.  If the Court permits the Debtor to withdraw funds from the IRA, the 2021 tax consequences to the estate may very well depend on the validity of the exemption.   Accordingly, if the Court permits the Debtor to withdraw funds from the IRA, Uber respectfully requests that the stay of the Exemption Objection be lifted and the matter scheduled for hearing.

WHEREFORE Uber requests that the Court sustain this Limited Objection, set the Exemption Objection for hearing and grant such other relief as the Court deems appropriate.

Dated:  September 2, 2021

Respectfully submitted,

PACHULSKI STANG ZIEHL & JONES LLP

By: */s/ Debra I. Grassgreen*

    Debra I. Grassgreen
    Miriam Manning

-and-

David J. Bradford (admitted *pro hac vice*)
Catherine Steege (admitted *pro hac vice*)
Terri L. Mascherin (admitted *pro hac vice*)
Katharine R. McLaughlin (admitted *pro hac vice*)
JENNER & BLOCK LLP

*Counsel for Uber Technologies, Inc.*