1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**<u>Exhibit A</u>**

## SETTLEMENT AGREEMENT

This Settlement Agreement ("**Settlement Agreement**") is entered into as of the date of the last signature set forth on the signature page below between Anthony Levandowski, individually ("**Debtor**") and on behalf of his Bankruptcy Estate (as hereinafter defined), Uber Technologies, Inc. ("**Uber**") and Google LLC ("**Google**"). Debtor, the Bankruptcy Estate, Uber, and Google are referred to in this Settlement Agreement collectively as the "**Parties**" and each is a "**Party**" to this Settlement Agreement. Alphabet, Inc. ("**Alphabet**"), and Waymo LLC ("**Waymo**") are Parties to this Agreement for purposes of the releases set forth in Section 3 of this Settlement Agreement.

## RECITALS

A.  **WHEREAS**, on April 11, 2016, the Debtor, Apparate International C.V. ("**Apparate**"), Uber, and certain other persons entered into an Agreement and Plan of Merger for Ottomotto LLC and an Agreement and Plan of Merger for Otto Trucking LLC (the "**Otto Transactions**").

B.  **WHEREAS**, also on April 11, 2016, the Debtor, Apparate, Uber, and certain other individuals and entities entered into an Indemnification Agreement (the "**Indemnification Agreement**").

C.  **WHEREAS**, on February 23, 2017, Waymo filed a civil action against Uber and others in the United States District Court for the Northern District of California docketed as *Waymo LLC v. Uber Technologies, Inc. et al*, 17-cv-00939 (the "**Waymo Litigation**") and the Waymo Litigation was settled pursuant to Settlement Agreement dated February 8, 2018 between Uber, Waymo, Alphabet, Google, and Ottomotto LLC (the "**Waymo Settlement Agreement**").

D.  **WHEREAS,** on October 28, 2016, Google filed an arbitration demand against Levandowski docketed as JAMS Arbitration Case Reference No. 1100086069 (the "**Google Arbitration**") and on December 23, 2019, the arbitration panel entered its Final Corrected Award ("**Award**").

E.  **WHEREAS**, on March 4, 2020, the Superior Court of the State of California in and for the County of San Francisco **(the "State Court")** confirmed the Award and entered a judgment in favor Google and against Debtor in the amount of $179,047,998.64 (the "**Judgment**").

F.  **WHEREAS**, on March 4, 2020, the Debtor filed a voluntary petition on chapter of 11 of title 11 of the United States Code in the United States Bankruptcy Court for the Northern District of California (the "**Bankruptcy Court**") docketed as *In re Levandowski*, Case No. 20-30242 (HLB) (the "**Bankruptcy Case**").

G.  **WHEREAS**, on May 1, 2020, the Debtor filed a notice of appeal in the First Appellate District (the "**Appellate Court**") from the Judgment which was docketed as Case No. A160491 (the "**Appeal**").

H.    **WHEREAS,** Debtor and the Bankruptcy Estate contend that Uber is obligated under the Indemnification Agreement to indemnify Debtor and the Bankruptcy Estate for the Judgment and have filed an adversary proceeding against Uber docketed as Adv. Pro. 20-03050 (HLB) ("**Adversary Proceeding**") seeking to enforce the Indemnification Agreement and alleging other claims related to the Otto Transactions.

I.    **WHEREAS,** Uber disputes all of the allegations contained in the Adversary Proceeding and has asserted counterclaims against Debtor and the Bankruptcy Estate for certain declaratory judgments, contribution, equitable indemnity, set-off, fraud, and non-dischargeability ("**Uber Counterclaims**") and filed a proof of claim against the Debtor docketed as Claim No. 8-1 ("**Uber Proof of Claim**").

J.    **WHEREAS,** Google has filed a proof of claim against the Debtor docketed as Claim No. 9-1 (**"Google Proof of Claim"**).

K.    **WHEREAS,** the Parties participated in a mediation settlement conference on January 11, 2022 with Robert A. Meyer acting as a mediator and reached an agreement in principle to resolve all disputes between them related to the Indemnification Agreement, the Judgment, the Appeal, the Adversary Proceeding, Uber's Proof of Claim, Google's Proof of Claim, and Uber's Counterclaims.

L.    **WHEREAS**, without admitting the validity of the other Party's position, the Parties desire to resolve all disputes between them without further expense and litigation in accordance with the terms and conditions set forth in this Settlement Agreement (the "**Settlement**").

**NOW, THEREFORE,** in consideration of the mutual covenants of the Parties to be faithfully performed, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Debtor, Uber, and Google, intending to be legally bound, agree as follows:

## 1.    DEFINITIONS

In addition to the terms defined above and elsewhere in this Settlement Agreement, as used in this Settlement Agreement:

1.1    **"Approval Order"** means an order substantially in the form of Exhibit 1 to this Settlement Agreement to be entered by the Bankruptcy Court in the Debtor's Bankruptcy Case approving the Settlement.

1.2    **"Bankruptcy Estate"** means the estate created pursuant to 11 U.S.C. §541 upon the filing of the Bankruptcy Case.

1.3    **"Effective Date"** means the third business day following the date on which the Approval Order becomes a Final Order.

1.4    **"Final Order"** means an order of the Bankruptcy Court, the district court, or any other court having jurisdiction that remains in effect and has not been reversed,

withdrawn, vacated, or stayed and as to which the time to appeal or seek review, rehearing, or writ of certiorari has expired or, if such appeal or review has been taken, it has been resolved and no longer remains pending.

1.5    "**Plan Term Sheet**" means the document attached hereto as <u>Exhibit 2</u>, to be approved in the Approval Order and representing an agreement between the Debtor and Google regarding the terms of a plan of reorganization for the Debtor.

1.6    "**Uber Settlement Payment**" means ▮▮▮▮▮▮▮▮ ▮▮▮▮ ▮▮▮▮ ▮▮▮▮▮▮▮▮▮ .

## 2.    PAYMENT AND OTHER TERMS.

2.1    **Settlement Payment.** On the Effective Date, at the direction of the Debtor, pursuant to this Settlement Agreement, Uber will make the Uber Settlement Payment as follows: (i) by wire transfer to Google in the amount of ▮▮▮▮▮ ▮▮▮▮ ▮▮▮▮▮▮▮▮ ▮ ▮▮▮▮ pursuant to wire transfer instructions to be provided by Google two business days in advance of the Effective Date; and (ii) by wire transfer to the Debtor in the amount of Two Million Dollars ($2,000,000.00) and No Cents, pursuant to wire transfer instructions to be provided by the Debtor. The Debtor shall deposit its portion of the Uber Settlement Payment in a blocked account to be accessed only to pay claims pursuant to a confirmed plan of reorganization.

2.2    **Dismissal With Prejudice Of Adversary Proceeding And Withdrawal Of Uber Proof Of Claim.** On the Effective Date following receipt of Uber Settlement Payment, the Debtor, the Bankruptcy Estate, and Uber will file a stipulation with the Bankruptcy Court in form of <u>Exhibit 3</u> to this Settlement Agreement dismissing the Adversary Proceeding with prejudice, each Party to bear its own costs and fees. On the Effective Date following receipt of Uber Settlement Payment, Uber will file a notice with the Bankruptcy Court in the form of <u>Exhibit 4</u> to this Settlement Agreement withdrawing the Uber Proof of Claim with prejudice.

## 3.    RELEASES

3.1    **Debtor Releasors General Release of Uber Releasees.** Effective as of the Effective Date, the Debtor and the Bankruptcy Estate on behalf of themselves, and each of their respective past, present, and future representatives, trustees including any trustee appointed in the Bankruptcy Case, employees, shareholders, officers, directors, subsidiaries, divisions, parent companies, attorneys, insurers, agents, partners, heirs, legatees, executors, administrators, successors-in-interest, assignees, legatees, devisees, spouses and marital communities, as well as the predecessors and successors to each of the foregoing, both individually and collectively ("**Debtor Releasors**"), hereby fully and forever RELEASE, ACQUIT, and DISCHARGE, Uber, and its respective past, present, and future representatives, employees, shareholders, officers, directors, subsidiaries,

divisions, parent companies, attorneys, insurers, agents, partners, heirs, legatees, executors, administrators, successors-in-interest, assignees, legatees, devisees, spouses and marital communities, as well as the predecessors and successors to each of the foregoing, both individually and collectively (the "**Uber Releasees**") from and for any and all rights, claims, controversies, damages, expenses, costs, obligations, causes of action, counterclaims, cross-claims, rights of set-off and recoupment, suits, debts, sums of money, accounts, torts, breaches of duty, covenants, contracts, agreements, promises, judgments, executions, demands and liabilities of any nature whatsoever, in law or otherwise, whether known or unknown, that have ever existed, that now exist, or that may exist in the future, from the beginning of the world until the end of time, including but not limited to those claims alleged in, or which could have been alleged in, the Adversary Proceeding, or in the Bankruptcy Case, or based upon any facts or circumstances or conduct alleged in or that occurred in connection with the Adversary Proceeding, the Waymo Litigation, the Google Arbitration, the Waymo Settlement Agreement, the Bankruptcy Case, the Uber Proof of Claim, the Google Proof of Claim, Uber's Counterclaims, or the Appeal, or based upon, in connection with, or pursuant to the Indemnification Agreement or the Otto Transactions, and any and all claims related or connected in any way to the Debtor, the Otto Transactions, or the Indemnification Agreement.

**3.2    Uber Releasees General Release of Debtor Releasors.** Effective as of the Effective Date, the Uber Releasees hereby fully and forever RELEASE, ACQUIT, and DISCHARGE the Debtor Releasors from and for any and all rights, claims, controversies, damages, expenses, costs, obligations, causes of action, counterclaims, cross-claims, rights of set-off and recoupment, suits, debts, sums of money, accounts, torts, breaches of duty, covenants, contracts, agreements, promises, judgments, executions, demands and liabilities of any nature whatsoever, in law or otherwise, whether known or unknown, that have ever existed, that now exist, or that may exist in the future, from the beginning of the world until the end of time, including but not limited to those claims alleged in, or which could have been alleged in, the Adversary Proceeding, or in the Bankruptcy Case, or based upon any facts or circumstances or conduct alleged in or that occurred in connection with the Adversary Proceeding, the Waymo Litigation, the Google Arbitration, the Waymo Settlement Agreement, the Bankruptcy Case, the Uber Proof of Claim, the Google Proof of Claim, Uber's Counterclaims, or the Appeal, or based upon, in connection with, or pursuant to the Indemnification Agreement or the Otto Transactions, and any and all claims related or connected in any way to the Debtor, the Otto Transactions, or the Indemnification Agreement.

**3.3    Google Releasees Limited General Release of Uber Releasees.** Effective as of the Effective Date, Google and Waymo, and each of their respective past, present, and future representatives, officers, directors, subsidiaries, divisions, attorneys, insurers, agents, partners, administrators, successors-in-interest, assignees, devisees, as well as the predecessors and successors to each of the foregoing, both individually and collectively, and Alphabet Inc. and each of its respective

past, present, and future representatives, officers, directors, attorneys, insurers, agents, partners, administrators, successors-in-interest, assignees, devisees, as well as the predecessors and successors to each of the foregoing, but all excluding CapitalG, or any entities that otherwise would be deemed a Google Releasee as a result of an investment by CapitalG or GV even where such investment may afford CapitalG or GV some level of control over the entity (the "**Google Releasees**") hereby fully and forever RELEASE, ACQUIT, and DISCHARGE the Uber Releasees from and for any and all rights, claims, controversies, damages, expenses, costs, obligations, causes of action, counterclaims, cross-claims, rights of set-off and recoupment, suits, debts, sums of money, accounts, torts, breaches of duty, covenants, contracts, agreements, promises, judgments, executions, demands and liabilities of any nature whatsoever, in law or otherwise, whether known or unknown, that have ever existed, that now exist, or that may exist in the future, to the extent not covered within the scope of the Waymo Settlement Agreement, that are related to the claims or defenses alleged in, or which could have been alleged in, the Adversary Proceeding, the Bankruptcy Case, the Google Arbitration, the Uber Proof of Claim, the Google Proof of Claim, or the Appeal, any and all claims that any conduct occurring during the Adversary Proceeding breached the Waymo Settlement Agreement, and any and all claims related or connected in any way to the Indemnification Agreement.

**3.4** **Uber Releasees Limited General Release of Google Releasees**. Effective as of the Effective Date, the Uber Releasees hereby fully and forever RELEASE, ACQUIT, and DISCHARGE the Google Releasees from and for any and all rights, claims, controversies, damages, expenses, costs, obligations, causes of action, counterclaims, cross-claims, rights of set-off and recoupment, suits, debts, sums of money, accounts, torts, breaches of duty, covenants, contracts, agreements, promises, judgments, executions, demands and liabilities of any nature whatsoever, in law or otherwise, whether known or unknown, that have ever existed, that now exist, or that may exist in the future, to the extent not covered within the scope of the Waymo Settlement Agreement, that are related to the claims or defenses alleged in, or which could have been alleged in, the Adversary Proceeding, the Bankruptcy Case, the Google Arbitration, the Uber Proof of Claim, the Google Proof of Claim, or the Appeal, any and all claims that any conduct occurring during the Adversary Proceeding breached the Waymo Settlement Agreement, and any and all claims related or connected in any way to the Indemnification Agreement.

**3.5** For the avoidance of any doubt, the Google Releasees and the Uber Releasees agree that the Waymo Settlement Agreement remains in effect and agree that the releases set forth in paragraphs 3.3, 3.4, and 3.7 and this Settlement Agreement do not affect, release, alter, modify, or amend any of the rights, obligations, or duties between the Google Releasees and the Uber Releasees under the Waymo Settlement Agreement and do not alter, modify, amend or affect the releases provided for in the Waymo Settlement Agreement.

Case: 20-30242   Doc# 831-1   Filed: 02/10/22   Entered: 02/10/22 22:47:36   Page 6 of 44

**3.6** For the avoidance of any doubt, the Google Releasees, the Debtor Releasees, and the Uber Releasees agree that this Agreement (including the releases contained herein) does not change, alter or nullify any obligations existing under any sealing, protective order or confidentiality orders issued in the Google Arbitration, related court proceedings including but not limited to the State Court, *Google LLC v. Anthony Levandowski and Lior Ron* (S.F. Sup. Ct. No. CPF-20-516982) and *Anthony Levandowski v. Google LLC* (S.F. Sup. Ct. No. CPF-20-516984)), the Bankruptcy Case, the Adversary Proceeding and the Waymo Litigation. The Google Releasees, the Debtor Releasees, and the Uber Releasees agree that each will continue to honor their respective obligations under any sealing, protective order or confidentiality orders issued in the Google Arbitration, related court proceedings including but not limited to the State Court, *Google LLC v. Anthony Levandowski and Lior Ron* (S.F. Sup. Ct. No. CPF-20-516982) and *Anthony Levandowski v. Google LLC* (S.F. Sup. Ct. No. CPF-20-516984)), the Bankruptcy Case, the Adversary Proceeding or the Waymo Litigation.

**3.7** **California Civil Code Section 1542**. It is understood and agreed by the parties that all rights under section 1542 of the California Civil Code, any similar law of any state or territory of the United States, ARE HEREBY EXPRESSLY WAIVED. Section 1542 states: "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR." Each Party hereby acknowledges that it has had the opportunity to consult with legal counsel before agreeing to the terms of this Release, and that it fully understands its meaning including the meaning and effect of the provisions relating to section 1542 of the California Civil Code.

## 4. REPRESENTATIONS, WARRANTIES AND COVENANTS.

**4.1** **Representations, Warranties and Covenants of the Parties.** Each of the Parties represent and warrant that they (i) hold and control and have not assigned or transferred to any other entity or person any of the rights and claims which are being released, altered or otherwise affected by this Settlement Agreement; and (ii) have all requisite power and authority to execute, deliver and perform this Settlement Agreement and the transactions contemplated herein and the execution, delivery and performance by them of this Settlement Agreement, subject only in the case of the Debtor and the Bankruptcy Estate to the approval of the Bankruptcy Court. The Parties further agree that the Settlement is a settlement of contested liabilities and was made in good faith.

**4.2** **Termination of Indemnification Agreement.** Debtor and the Bankruptcy Estate represent, warrant and agree that all of Uber's and Apparate's obligations under the Indemnification Agreement have been terminated and that Debtor and the Bankruptcy Estate do not have any further rights under the Indemnification Agreement or the agreements that comprise the Otto Transactions. Debtor and the

Bankruptcy Estate covenant that neither of them will make any claims or bring any actions based upon the Indemnification Agreement or the agreements that comprise the Otto Transactions.

**4.3** **Plan Support.** Google represents and warrants that it will support and vote in favor of a plan of reorganization containing the terms set forth in the Plan Term Sheet and will not take any actions or cause any other person to take any actions to prevent confirmation of a plan of reorganization consistent with the Plan Term Sheet. The Debtor represents and warrants that he will promptly file and prosecute a plan of reorganization consistent with the terms set forth in the Plan Term Sheet and will not take any actions or cause any other person to take any actions to prevent confirmation of a plan of reorganization consistent with the Plan Term Sheet. Google and the Debtor further agree not to appeal the entry of a confirmation order confirming a plan of reorganization consistent with the terms set forth in the Plan Term Sheet.

## 5. BANKRUPTCY COURT APPROVAL.

**5.1** **Approval.** This Settlement Agreement is subject to and conditioned upon the entry of the Approval Order by the Bankruptcy Court.

**5.2** **Best Efforts**. The Parties agree to support the entry of the Approval Order and to use their best efforts to cause the Bankruptcy Court to enter the Approval Order. The Parties further agree not to appeal the entry of the Approval Order or to take any steps that would delay the Approval Order becoming a Final Order or cause any other person or entity to object to or otherwise oppose the entry of the Approval Order or to appeal the Approval Order or to delay the Approval Order becoming a Final Order.

## 6. MISCELLANEOUS

**6.1** **Entire Agreement, Amendments, and Waivers**. This Settlement Agreement constitutes and contains the entire agreement between the Parties and supersedes any and all prior negotiations, conversations, correspondence, and understandings respecting the Settlement. This Settlement Agreement may be amended or modified or one or more provisions hereof waived only by a written instrument signed by the Parties. No delay or omission by any Party in exercising any right or power arising from any default by the other Party shall be construed as a waiver of such default, nor shall any single or partial exercise thereof preclude any further exercise thereof or the exercise of any other right or power arising from any default by a Party. No waiver of any breach of any covenant or other condition shall be construed to be a waiver of or consent to any previous or subsequent breach of the same or of any other covenant or condition.

**6.2** **Captions**. The captions to this Settlement Agreement are for convenience only and are to be of no force or effect in construing and interpreting the provisions of this Settlement Agreement.

**6.3**     **Jurisdiction, Governing Law**. This Settlement Agreement is made and entered into in the State of California and shall, in all respects, be interpreted, enforced and governed by the laws of the State of California, without regard to choice of law principles. The Parties further agree that any dispute arising out of this Settlement Agreement shall be adjudicated in the Bankruptcy Court.

**6.4**     **Notices**. Any notice required or permitted under this Settlement Agreement shall be given in writing and shall be sent to the following Parties via electronic mail with a copy sent by overnight mail or hand delivery:

To Debtor and Bankruptcy Estate:

Tobias S. Keller
Keller Benvenutti Kim LLP
650 California Street Suite 1900
San Francisco, CA 94108
Tkeller@kbkllp.com

with a copy to:

Brett Schuman
Goodwin Procter LLP
Three Embarcadero Center
San Francisco, CA 94111
bschuman@goodwinlaw.com

To Uber:

Catherine Steege
Jenner & Block
353 N. Clark Street
Chicago, IL 60654
csteege@jenner.com

with a copy to:

Elizabeth Coleman
Associate General Counsel
Uber Technologies, Inc.
433 W Van Buren St
Chicago, IL 60607
ec@uber.com
litigation-demands@uber.com


To Google:

Thomas Walper
Munger Tolles & Olson, LLP
350 South Grand Avenue, Fiftieth Floor
Los Angeles, CA 90071-3426
thomas.walper@mto.com

with a copy to:

Rachael E. Meny
Keker, Van Nest & Peters LLP
633 Battery Street
San Francisco, CA 94107-1809
rmeny@keker.com

**6.5** **No Party Deemed Drafter**. The Parties shall jointly be deemed to be the drafters of this Settlement Agreement; the rule that any ambiguity in a contract shall be construed against the drafter of the contract shall not apply to this Settlement Agreement.

**6.6** **Voluntary Settlement**. The Parties acknowledge and agree that each of them is entering into this Settlement Agreement freely and voluntarily and not acting under any misapprehension as to the effect hereof, and has acted and does hereby act freely and voluntarily and not under any coercion or duress.

**6.7** **No Mistake of Fact or Law**. In entering into this Settlement Agreement, each Party assumes the risk of any mistake, and if it should subsequently discover that any understanding of the facts or of the law was incorrect, each Party understands and expressly agrees that it shall not be entitled to set aside this Settlement Agreement by reason thereof, regardless of any mistake of fact or law.

**6.8** **Survival**. All covenants, agreements, representations, and warranties made in this Settlement Agreement will survive the execution and delivery hereof.

**6.9** **Counterparts.** This Settlement Agreement may be executed in multiple counterparts, each of shall be deemed an original and all of which constitute one and the same instrument. Any such counterpart, to the extent delivered by means of e-mail or a fax machine or by .pdf, .tif, .jpeg, or similar attachment to electronic mail ("**Electronic Delivery**") shall be treated in all manner and respects as an original executed counterpart and shall be considered to have the same binding legal effect as if it were the original signed version thereof delivered in person. No Party shall raise the use of Electronic Delivery as a defense to the formation of a contract, and each Party forever waives such defense, except to the extent that such defense relates to the lack of authenticity.

**6.10**     **Settlement of Disputed Claims.** The Parties acknowledge that the Uber Settlement Payment was agreed upon as a compromise and final settlement of any and all disputed claims and that payment of the Uber Settlement Payment is not, and may not be construed as, an admission of liability.

**6.11**     **Taxes.** The Parties hereby agree that the Settlement is a settlement of various claims and objections to claims that have been or could be asserted by the Parties in the bankruptcy case and this Adversary Proceeding, and was made in good faith.

**6.12**     **Limitations.** Notwithstanding the Releases referred to in Section 3 herein, nothing in this Settlement Agreement, including but not limited to the Releases, shall release any Party from its obligations under this Settlement Agreement or prevent any Party from taking action to enforce the terms of this Settlement Agreement.

**6.13**     **Confidentiality.** The Parties agree to keep confidential the amount of the Uber Settlement Payment except to the extent necessary (i) to obtain the Approval Order; (ii) to comply with any applicable law, judicial order or similar directive (including without limitation any disclosure requirement under state, federal, or foreign securities laws); or (iii) to enforce this Settlement Agreement subject to the Party seeking to disclose the amount of the Settlement Payment bearing the obligation to seek appropriate confidentiality protections, including by filing a motion to seal. Unless required as a matter of law, any public statements about the Settlement or the Settlement Agreement requires the written agreement of all Parties.

**6.14**     **Severability.** The invalidity or unenforceability of any provision of this Settlement Agreement shall not affect the validity or enforceability of any other provision. If any provision (or part of any provision) of this Agreement is found invalid, illegal or unenforceable, the rest of the Agreement shall remain in effect and shall be construed as if any such invalid, illegal, or unenforceable provision (or part of a provision) were excluded from the Agreement.

**6.15**     **Binding Effect.** This Agreement and the terms, obligations, and rights in it shall be binding upon and shall inure to the benefit of the Parties and their respective parent companies, subsidiaries, heirs, legatees, trustees, affiliates, successors, and assigns.

*Remainder of Page Left Intentionally Blank*

IN WITNESS WHEREOF the Parties have caused this Settlement Agreement to be executed on the respective dates hereinafter set forth.

**GOOGLE LLC**

By:_____

**ANTHONY LEVANDOWSKI,** individually
and on behalf of the Bankruptcy Estate

Its: _____

Date: _____

Date:_____

**UBER TECHNOLOGIES INC.**

By:_____
Its: _____

Date: _____

For purposes of the Releases set forth in Section 3 of this Agreement:

**ALPHABET INC.**

By:_____
Its: _____

Date: _____

**WAYMO LLC**

By:_____
Its: _____

Date: _____

IN WITNESS WHEREOF the Parties have caused this Settlement Agreement to be executed on the respective dates hereinafter set forth.

**GOOGLE LLC**

_____          By:_____
**ANTHONY LEVANDOWSKI,** individually          Its:_____
and on behalf of the Bankruptcy Estate

Date:_____          Date:_____

**UBER TECHNOLOGIES, INC.**

By: _Elizabeth Coleman_
Its: Associate General Counsel

Date: February 10, 2022

For purposes of the Releases set forth in Section 3 of this Agreement:

**ALPHABET INC.**

By:_____
Its:_____

Date: _____

**WAYMO LLC**

By:_____
Its:_____

Date: _____

IN WITNESS WHEREOF the Parties have caused this Settlement Agreement to be executed on the respective dates hereinafter set forth.

**GOOGLE LLC**

_____
**ANTHONY LEVANDOWSKI,** individually
and on behalf of the Bankruptcy Estate

By:_____
Its: _____

Date:_____

Date:_____

**UBER TECHNOLOGIES, INC.**

By:_____
Its: _____

Date: _____

For purposes of the Releases set forth in Section 3 of this Agreement:

**ALPHABET INC.**

By:_____
Its: _____

Date: _____

**WAYMO LLC**

By: _____
Its: _Chief Legal Officer_____

Date: _2/10/2022_____

IN WITNESS WHEREOF the Parties have caused this Settlement Agreement to be executed on the respective dates hereinafter set forth.

**GOOGLE LLC**

By: _Kent Walker_

Its: _PRESIDENT, GLOBAL AFFAIRS_

Date: _2/10/22_

_____

**ANTHONY LEVANDOWSKI,** individually and on behalf of the Bankruptcy Estate

Date:_____

**UBER TECHNOLOGIES, INC.**

By:_____
Its: _____

Date: _____

For purposes of the Releases set forth in Section 3 of this Agreement:

**ALPHABET INC.**

By: _Kent Walker_
Its: _PRESIDENT, GLOBAL AFFAIRS_

Date: _2/10/22_

**WAYMO LLC**

By:_____
Its: _____

Date: _____

**Execution Version**

## Schedule of Exhibits

Exhibit 1    Approval Order

Exhibit 2    Plan Term Sheet

Exhibit 3    Adversary Proceeding Dismissal Stipulation

Exhibit 4    Withdrawal of Uber Proof of Claim

# EXHIBIT 1

APPROVAL ORDER

1  TOBIAS S. KELLER (SBN 151445)
   *TKeller@kbkllp.com*
2  DARA L. SILVEIRA (SBN 274923)
   *DSilveira@kbkllp.com*
   **KELLER BENVENUTTI KIM LLP**
3  650 California Street, Suite 1900
   San Francisco, California 94108
4  Tel: (414) 364-6793

5  BRETT M. SCHUMAN (SBN 189247)
   *BSchuman@goodwinlaw.com*
6  JENNIFER BRIGGS FISHER (SBN 241321)
   *JFisher@goodwinlaw.com*
7  **GOODWIN PROCTER LLP**
   Three Embarcadero
8  San Francisco, California, 94111
   Tel: (415) 733-6000
9  Fax: (415) 677-9041

10 ANDREW S. ONG (SBN 267889)
   *AOng@goodwinlaw.com*
11 **GOODWIN PROCTER LLP**
   601 Marshall Street
12 Red Wood City, California, 90017
   Tel: (650) 752-3100
13 Fax: (650) 853-1038

14 *Counsel for Anthony Levandowski*

15

   **UNITED STATES BANKRUPTCY COURT**
16 **NORTHERN DISTRICT OF CALIFORNIA**
   **SAN FRANCISCO DIVISION**

17

18 In re:                                  Case No. 20-30242 (HLB)

19 ANTHONY SCOTT LEVANDOWSKI,              Chapter 11

20              Debtor.                    ORDER GRANTING MOTION TO
                                           APPROVE SETTLEMENT AGREEMENT
21                                         AND RELATED AGREEMENTS

22

23        The Court having considered the *Motion Pursuant To 11 U.S.C. §§ 105(A) And 363(B) And*

24 *Fed. R. Bankr. P. 9019 For Entry Of Orders Approving (I) The Settlement Between The Debtor, Uber*

25 *Technologies, Inc., And Google Llc; (Ii) The CLAT Settlement; (Iii) The Plan Support Agreement*

26 *Between The Debtor And Google; And (Iv) Granting Related Relief* [Dkt. __] (the "Motion"); and good

27 cause appearing;

28        **IT IS HEREBY FOUND THAT:**

1      1.     On April 11, 2016, the Debtor, Apparate International C.V. ("**Apparate**"), Uber, and
2 certain other persons entered into an Agreement and Plan of Merger for Ottomotto LLC and an
3 Agreement and Plan of Merger for Otto Trucking LLC (the "**Otto Transactions**").

4      2.     Also on April 11, 2016, the Debtor, Apparate, Uber, and certain other individuals and
5 entities entered into an Indemnification Agreement (the "**Indemnification Agreement**").

6      3.     On February 23, 2017, Waymo filed a civil action against Uber and others in the United
7 States District Court for the Northern District of California docketed as *Waymo LLC v. Uber*
8 *Technologies, Inc. et al*, 17-cv-00939 (the "**Waymo Litigation**") and the Waymo Litigation was settled
9 pursuant to Settlement Agreement dated February 8, 2018, between Uber, Waymo, Alphabet, Google,
10 and Ottomotto LLC (the "**Waymo Settlement Agreement**").

11      4.     On October 28, 2016, Google filed an arbitration demand against Levandowski
12 docketed as JAMS Arbitration Case Reference No. 1100086069 (the "**Google Arbitration**") and on
13 December 23, 2019, the arbitration panel entered its Final Corrected Award ("**Award**").

14      5.     On March 4, 2020, the Superior Court of the State of California in and for the County
15 of San Francisco **(the "State Court")** confirmed the Award and entered a judgment in favor Google
16 and against Debtor in the amount of $179,047,998.64 (the "**Judgment**").

17      6.     On March 4, 2020, the Debtor filed a voluntary petition on chapter of 11 of title 11 of
18 the United States Code in the United States Bankruptcy Court for the Northern District of California
19 (the "**Bankruptcy Court**") docketed as *In re Levandowski*, Case No. 20-30242 (HLB) (the
20 "**Bankruptcy Case**").

21      7.     On May 1, 2020, the Debtor filed a notice of appeal in the First Appellate District (the
22 "**Appellate Court**") from the Judgment which was docketed as Case No. A160491 (the "**Appeal**").

23      8.     Debtor and the Bankruptcy Estate contend that Uber is obligated under the
24 Indemnification Agreement to indemnify Debtor and the Bankruptcy Estate for the Judgment and have
25 filed an adversary proceeding against Uber docketed as Adv. Pro. 20-03050 (HLB) ("**Adversary**
26 **Proceeding**") seeking to enforce the Indemnification Agreement and alleging other claims related to
27 the Otto Transactions.

28

9. Uber disputes all of the allegations contained in the Adversary Proceeding and has asserted counterclaims against Debtor and the Bankruptcy Estate for certain declaratory judgments, contribution, equitable indemnity, set-off, fraud, and non-dischargeability ("**Uber Counterclaims**") and filed a proof of claim against the Debtor docketed as Claim No. 8-1 ("**Uber Proof of Claim**").

10. Google has filed a proof of claim against the Debtor docketed as Claim No. 9-1 ("**Google Proof of Claim**").

11. The Parties participated in a mediation settlement conference on January 11, 2022 with Robert A. Meyer acting as a mediator and reached an agreement in principle to resolve all disputes between them related to the Indemnification Agreement, the Judgment, the Appeal, the Adversary Proceeding, Uber's Proof of Claim, Google's Proof of Claim, and Uber's Counterclaims.

12. On February ^, the Debtor, Uber and Google entered into the Settlement Agreement, attached as Exhibit A to the Motion (the "**Adversary Settlement Agreement**").

13. The Debtor provided notice of the hearing on the Motion to all creditors and other parties in interest pursuant to Rule 2002 of the Federal Rules of Bankruptcy Procedure and the Court finds that notice was adequate.

14. Approval of the Settlement is in the best interests of the bankruptcy estate because it reflects a fair settlement of contested litigation that will allow for the resolution of this chapter 11 case in a timely manner. *See, e.g., Martin v. Kane (In re A&C Props.)*, 784 F.2d 1377, 1380 (9th Cir. 1986).

**IT IS THEREFORE ORDERED THAT:**

A. The Motion is granted and the Adversary Settlement Agreement is approved.

B. The Debtor is hereby authorized to enter into the Adversary Settlement Agreement and to take all actions and execute all documents necessary to implement the Adversary Settlement Agreement.

C. The Court retains jurisdiction to enforce the terms of this Order.

*** END OF ORDER ***

**EXHIBIT 2**

PLAN TERM SHEET

## In re Anthony Scott Levandowski

## Plan Term Sheet

This Term Sheet summarizes certain of the principal terms and conditions of a settlement and chapter 11 plan (the "Plan") for Anthony Scott Levandowski (the "Debtor") to be proposed in the Debtor's chapter 11 case pending in the United States Bankruptcy Court for the Northern District of California (the "Bankruptcy Case") that arise out of a mediation among the Debtor, Google LLC ("Google") and Uber Technologies, Inc. ("Uber"). The Debtor, Google and Uber are each individually a "Party" and are collectively the "Parties."

Contemporaneously with the execution of this Plan Term Sheet, Debtor, Google and Uber have entered into a Settlement Agreement (the "Settlement Agreement"). This Plan Term Sheet is affixed as an Exhibit to the Settlement Agreement and as part of the process to approve the Settlement Agreement, Debtor will request that the Court approve this Plan Term Sheet as a plan support agreement between Debtor and Google. Debtor, Google, and Uber will support, and will commit to not oppose, the approval of the Settlement Agreement and the Plan Term Sheet in advance of the Plan and by no later than March 3, 2022. To the extent of any inconsistency between this Plan Term Sheet and the Settlement Agreement as relates to the agreements with Uber, the terms of the Settlement Agreement control.

Google and Uber will support, and will commit to not oppose, a 9019 Motion (as hereafter defined) and a Plan for the Debtor that includes the terms and conditions set forth in this Term Sheet (subject to, among other things, (a) resolution of any terms or items set forth herein that are bracketed or indicated as "tbd" or "to be determined;" and (b) acceptable definitive documentation of all matters contemplated herein, including the Plan and any agreements specifically contemplated in this Term Sheet). No vote in favor of any plan is being solicited by or agreed to by this Term Sheet.

***Notwithstanding anything to the contrary set forth herein, this Term Sheet is not binding on any party and is being provided as part of settlement discussions and, therefore, shall be treated as such pursuant to Federal Rule of Evidence 408 and all bankruptcy and state law equivalents until such time as it is final and fully executed.***

## I.  Defined Terms

| | |
|---|---|
| Levandowski | Means Anthony Levandowski, individually and personally and not the bankruptcy estate. |
| Bankruptcy Estate | Means the estate created in the Bankruptcy Case pursuant to 11 U.S.C. §541 upon the filing of the Bankruptcy Case. |
| Class Terms | "Allowed", "DIP Facility Claims", "Administrative Expense Claims", "Fee Claims", "Priority Class Claims", "Other Priority Claims", "General Unsecured Claims", and "Convenience Class Claims" and "Claims" shall all have their conventional plan meanings. |

Case: 20-30242   Doc# 831-1   Filed: 02/10/22   Entered: 02/10/22 22:47:36   Page 22 of 44

| | |
|---|---|
| Plan Effective Date | Means a day that is the business day as soon as reasonably practicable after all conditions to the effective date in the Plan have been met or waived, which date shall not be later than March 31, 2022. |
| Google Claim | Means Claim No. 9 filed by Google, LLC on or about July 6, 2020. |
| Individual Commitment | Means the stipulated judgment and order for nondischargeable debt against Levandowski under Bankruptcy Code section 523, in favor of Google, in form and substance acceptable to Google, in the amount of $25 Million, entered by the Bankruptcy Court upon Plan confirmation. The Plan shall provide that this $25 Million amount shall increase by each dollar or dollar of value that the Residual Trust is liquidated, or holds for liquidation, for net (after payment of costs and expenses of the Residual Trust and taxes) proceeds in excess of $25 Million, up to a maximum of $30 Million. The value of the Roth IRA, Pronto.ai SAFE Note and any Deferred Action shall be included in the liquidation value of the Residual Trust, after any taxes associated with the liquidation of such asset, to determine the total amount of the Individual Commitment. The Individual Commitment shall be reduced by proceeds received by Google from the Residual Trust, on and as of the third anniversary of the Plan Effective Date. Google shall not enforce the Individual Commitment until at least the third anniversary of the Plan Effective Date and then only for any unpaid portion of the Individual Commitment. At the option of Google, the Individual Commitment may be memorialized in a promissory note in favor of Google with rights against the Roth IRA that do not create a taxable event, but subject to the Agreed Exempt Amount, in form and substance acceptable to Google. |
| Residual Trust | Means a trust or other corporate entity created under the Plan to receive and liquidate as soon as commercially reasonable, the Trust Assets and the Deferred Actions, subject to the limitations contained herein. The trust or other governing document shall contain adequate means to protect and liquidate the assets and periodic reporting requirements to all beneficiaries. Google shall be identified as a beneficiary of the Residual Trust up to the amount of the Individual Commitment. All documents shall be subject to the prior approval of Google and the Bankruptcy Court at confirmation. |
| Roth IRA | Means that certain Roth IRA maintained for the benefit of the Debtor by Pensco Trust Company, as custodian. |

- 2 -

| | |
|---|---|
| Trustee | Means the trustee, managing member, or other person in charge of the Residual Trust. The Trustee shall be independent and selected by the Debtor and Google. The Trustee can be replaced, but only if Debtor and Google mutually agree on the replacement in advance. In the event Debtor and Google cannot agree the Bankruptcy Court shall select an independent qualified individual. |
| Uber Settlement Payment | Means the payments from Uber described in Section III herein. |
| CLAT | Means the Anthony Levandowski Charitable Lead Annuity Trust dated December 18, 2016. |
| Trust Assets | Means all claims and assets of the Debtor described in Exhibit A and Schedule 1 hereto |
| Deferred Actions | Means all matters described in Exhibit B hereto |
| Agreed Exempt Amount | Means $1 Million in gross value, before taxes, plus an additional $1 Million for every $10 Million in distributions that Google receives from the Trust or the Roth IRA. |
| Affiliates | With respect to a person or entity, shall mean (i) all entities now or in the future controlling, controlled by or under common control with that person or entity; (ii) all entities in the past controlling, controlled by or under common control with that person or entity, for the period of time that such control exists or existed; (iii) predecessors, successors or successors in interest thereof, including all entities formed or acquired by that person or entity in the future that come to be controlled by that person or entity and (iv) as to any individual, heirs and assigns. For purposes of this definition, "control" means possession directly or indirectly of the power to direct or cause the direction of management or policies of a company or entity through the ownership of voting securities, contract, or otherwise, and "entities" includes all persons, companies, partnerships, corporations, associations, organizations, and other entities; *provided* that, absent an express representation to the contrary, nothing herein constitutes a warranty or representation that such person or entity has the present power or authority to act on behalf of or bind an Affiliate, although this proviso does not alter the representations made in Section IX(k) below. |
| Google Affiliates | Shall mean all Affiliates of Google, including but not limited to Alphabet Inc. and Waymo LLC. For purposes of this Agreement, Google Affiliates shall not include CapitalG, or any entities that otherwise would be deemed an Affiliate of Google as a result of |

|  | an investment by CapitalG or GV even where such investment may afford CapitalG or GV some level of control over the entity. |
|---|---|
| 9019 Motion | Shall have the meaning set forth in Section VI below. |

## II.    Provisions for Treatment of Classes of Claims and Interests Under the Plan

Unclassified claims, and the classes of claims and equity interests against the Debtor, shall be treated under the Plan as follows:

| Unclassified Claims | Treatment |
|---|---|
| DIP Facility Claims | Paid in full in cash, with interest. |
| Administrative Expense Claims | Holders of Allowed Administrative Expense Claims shall be paid in full in cash. |
| Fee Claims | Holders of Allowed Fee Claims shall be paid in full in cash. |
| Priority Tax Claims | Holders of Allowed Priority Tax Claims shall be paid in full in cash (or paid over not more than 5 years from the commencement date in a manner not less favorable than the most favored nonpriority unsecured claim provided for by the plan, with interest at a rate to be agreed to by the parties or determined by the Bankruptcy Court). |

| Classified Claims and Equity Interests | Treatment |
|---|---|
| Class 1 – Other Priority Claims | Holders of Allowed Other Priority Claims shall be paid in full in cash.  The total Allowed Other Priority Claims, if any, shall be capped in an amount to be agreed upon by Google and the Debtor. |
| Class 2 – Google Claim | The holder of the Google Claim shall receive (a) the Main Uber Payment (as defined below), which shall be received directly from Uber upon Bankruptcy Court approval of the 9019 Motion, plus (b) net proceeds received from the Residual Trust in the amount of $25 Million.  The $25 Million amount shall increase by each dollar or dollar of value that the Residual Trust is liquidated, or holds for liquidation, for net (after payment of costs |

- 4 -

| | and expenses) proceeds in excess of $25 Million, up to a maximum of $30 Million. The net, after-tax value of the Roth IRA, Pronto.ai SAFE Note and any Deferred Action shall be included in the liquidation value of the Residual Trust, to determine the total amount of the Individual Commitment. In addition, the holder of the Google Claim shall receive and be the beneficiary of the Individual Commitment. |
|---|---|
| Class 3 – General Unsecured Claims | Holders of Allowed General Unsecured Claims shall receive (a) cash equal to ▮▮▮▮ of their Allowed Claims, plus (b) their pro rata shares, to be distributed pro rata with distributions to the holder of the Class 2 Google Claim, of net proceeds received from the Residual Trust. If the proceeds paid from the Residual Trust to the holder of the Class 2 Google Claim exceeds $25 Million, all additional net (after payment of costs and expenses) proceeds from the Residual Trust shall be paid to Google and holders of Allowed General Unsecured Claims on a prorated basis until such claims are paid in full, without interest and, as to Google, up to the amount of $30 Million. |
| Class 4 – Convenience Class Claims | Holders of Allowed Convenience Class Claims may elect to (a) be treated as a holder of an Allowed General Unsecured Claim, or (b) receive payment of fifty percent (50%) of the Allowed amount of such holder's claim on the Plan Effective Date. Failure to elect shall result in treatment (b). |
| Class 5 – Levandowski Claims and Rights | The Debtor shall receive net proceeds received from the Residual Trust if and after all required distributions are made to holders of Allowed Claims in Classes 2, 3 and 4. |

## III.    Uber Settlement Payment

The Settlement Agreement provides that on its Effective Date (the "Settlement Agreement Effective Date"), Uber shall wire (a) ▮▮▮▮▮ to an account designated by Google (the "Main Uber Payment") and (b) $2 Million to the Debtor. These payments, collectively, are the "Uber Settlement Payment."

## IV.    Residual Trust

All Trust Assets shall be transferred to the Residual Trust on the Plan Effective Date for administration by the Trustee. Levandowski shall reasonably and in good faith cooperate in all respects to pursue any and all causes of action. The Residual Trust and the Trustee shall use commercially reasonable efforts to liquidate all assets in the Residual Trust within three (3) years after the Plan Effective Date, except as provided in the next paragraph. The Trustee shall be authorized to retain counsel and advisors in his or her business judgment in accordance with the Residual Trust documents, without the need for

- 5 -

further court approval. The Residual Trust shall initially be funded with all assets of the estate after the payment of Priority Claims with not less than $300,000. To be clear, none of the assets and claims in the Residual Trust, including the Pronto SAFE note, can be revised, modified, directed or controlled by Levandowski.

Levandowski shall be permitted to direct the Trustee not to prosecute or take, as the case may be, any Deferred Action so long as (a) the Individual Commitment remains outstanding and is not in default, or (b) the Individual Commitment has been fully satisfied. In either case, this limitation is conditioned upon the initial transferee that is a potential defendant in any avoidance action having entered into a valid tolling agreement that remains enforceable by the Trustee for not less than sixty (60) days beyond the date any action has been deferred by an instruction by Levandowski as provided herein. For clarity, any direction Levandowski gives with respect to any Deferred Action shall be void at such time as the Trustee has fewer than sixty (60) days to bring an action, regardless of when Levandowski gives his direction. Notwithstanding the foregoing, if the Individual Commitment is in default, the direction is deemed revoked and the Trustee can pursue, liquidate and/or act on the Deferred Actions (including sale of the Pronto SAFE notes).

## V. **Releases**

The releases to be provided by the Debtor and the Bankruptcy Estate, on the one hand, and Uber, on the other, to each other are set forth in the Settlement Agreement and will become effective on the Settlement Agreement Effective Date.

The releases to be provided by Uber and Google to each other are set forth in the Settlement Agreement and will become effective on the Settlement Agreement Effective Date.

The Bankruptcy Estate, the Debtor, Google, Waymo LLC, and Alphabet Inc. shall execute releases (including waivers of California Civ. Code § 1542) releasing each of the other Parties, and their respective Affiliates, of any and all claims as follows:

(a) With respect to the Debtor, the Bankruptcy Estate and Levandowski (collectively, "Levandowski Release Parties"), Google LLC and Waymo LLC, and each and each of their respective past, present, and future representatives, officers, directors, subsidiaries, divisions, attorneys, insurers, agents, partners, administrators, successors-in-interest, assignees, devisees, as well as the predecessors and successors to each of the foregoing, and Alphabet Inc. and each of its respective past, present, and future representatives, officers, directors, attorneys, insurers, agents, partners, administrators, successors-in-interest, assignees, devisees, as well as the predecessors and successors to each of the foregoing (collectively, the "Google Releasees") shall release each of the Levandowski Release Parties from all claims that have been or could have been brought in the Bankruptcy Case against the Levandowski Release Parties, or derivatively on behalf of the Levandowski Release Parties, including without limitation the Google Claim, the claim and counterclaims filed by Uber, claims relating to discharge/nondischargeability (11 U.S.C. §§ 523 and 727), except as

- 6 -

to the Individual Commitment, the Residual Trust, and any obligations of the Levandowski Release Parties under the Debtor's reorganization plan and/or settlement, and any objection to the Debtor's claims of exemption; for avoidance of doubt, the term "Google Releasees" excludes CapitalG, or any entities that otherwise would be deemed a Google Releasee as a result of an investment by CapitalG or GV even where such investment may afford CapitalG or GV some level of control over the entity;

(b)     with respect to Google and the Google Releasees, each of the Levandowski Release Parties and their Affiliates shall release each of Google and the Google Releasees from any and all claims that have been, or could have been, asserted by, or derivatively on behalf of, any of the Levandowski Release Parties or their Affiliates: (i) in the Bankruptcy or adversary proceeding, including without limitation, claims related to the claims, defenses and counterclaims filed by any of the Levandowski Release Parties, their Affiliates, or Uber and claims related to the *Waymo v. Uber* settlement agreement, any Otto-related entity or any Uber-related entity; (ii) against Google or the Google Releasees related to the defenses and counterclaims filed by any of the Levandowski Release Parties or their Affiliates, or in the Bankruptcy or adversary proceeding; (iii) in the underlying JAMS arbitration and related appeal, including without limitation, claims related to the claims, defenses and counterclaims filed by Levandowski, the Debtor or Lior Ron and each's Affiliates; or (iv) arising out of, or related to, the *Waymo v. Uber* litigation, the *Waymo v. Uber* settlement agreement, any Otto-related entity or any Uber-related entity, including without limitation, any interference with contract, tortious interference, unfair competition, restitution, damages, lost income or lost profit claims, or any other claims, defenses and counterclaims that could be brought or made by any of the Levandowski Release Parties or their Affiliates arising out of, or related to, such matters; and

(c)     with respect to the Debtor, Google and the Google Releasees shall release him from any and all claims that have been, or could have been, asserted in the underlying JAMS arbitration, resulting judgment and related appeal or in the *Waymo v. Uber* litigation.

Notwithstanding the foregoing, as between the Levandowski Release Parties and the Google Releasees, (i) rights and remedies provided or preserved by the Plan shall not be released, (ii) the Debtor and the Google Releasees shall retain the right to enforce the final settlement agreement between them and/or any representations, warranties or obligations stated herein which shall be incorporated in the Plan; (iii) the Levandowski Release Parties and the Google Releasees acknowledge that the releases herein were granted in reliance upon the representations and warranties provided in Section IX below; (iv) the release shall be clear that it does not release any of Levandowski's still existing, on-going obligations to Google or the Google Releasees; (v) the release shall be clear that it does not release any of Levandowski's still existing, on-going obligations to Google or the Google Releasees under: a) Levandowski's At Will Employment, Confidential Invention Assignment and Arbitration Agreements with Google, last one dated approximately dated January 1, 2012; b) the Agreement and Plan of Merger by and Among Google Inc., Plus

- 7 -

490 LLC, 510 Systems, LLC, Each of the Members of 510 Systems, LLC and with Respect to Articles VI, VIII, IX and X only, Anthony Levandowski, dated July 28, 2011 including all exhibits and related final agreements; c) the Membership Interest Purchase Agreement By Google, Anthony's Robots, LLC and The Sole Member of Anthony's Robots, LLC, dated July 28, 2011, including all exhibits and related final agreements; d) the July 28, 2011 Non-Competition and Non-Solicitation Agreements for Anthony Levandowski related to 510 Systems and Anthony's Robots; e) the July 28, 2011 Side Letter with 510 Systems LLC (and its related February 15, 2011 Mutual Confidentiality and Non-Disclosure Agreements); and f) the Project Chauffeur Development Team Offer Amendment Letter dated January 1, 2012, with all exhibits; and (vi) the Google Releasees and the Levandowski Release Parties agree that these releases do not change, alter or nullify any obligations existing under any sealing, protective order or confidentiality orders issued in the *Google v. Levandowski and Ron* arbitrations, any related court proceedings including but not limited to the State Court, *Google LLC v. Anthony Levandowski and Lior Ron* (S.F. Sup. Ct. No. CPF-20-516982) and *Anthony Levandowski v. Google LLC* (S.F. Sup. Ct. No. CPF-20-516984)), the Bankruptcy Case, the adversary proceeding in the Bankruptcy Case, and the *Waymo v. Uber* litigation. The Google Releasees and the Debtor Releasees agree that each will continue to honor their respective obligations under any sealing, protective order or confidentiality orders issued in the *Google v. Levandowski and Ron* arbitrations, any related court proceedings including but not limited to the State Court, *Google LLC v. Anthony Levandowski and Lior Ron* (S.F. Sup. Ct. No. CPF-20-516982) and *Anthony Levandowski v. Google LLC* (S.F. Sup. Ct. No. CPF-20-516984)), the Bankruptcy Case, the adversary proceeding in the Bankruptcy Case and the *Waymo v. Uber* litigation

## VI. 9019 Motion

On or before February 10, 2022, the Debtor will file a motion (the "9019 Motion") seeking approval of:

(a) A settlement with Uber pursuant to the terms of the Settlement Agreement. It is a condition to Google's agreement to enter into the settlement that the Main Uber Payment be made immediately and indefeasibly to Google upon the Settlement Agreement Effective Date. It is a condition of Uber's agreement to make the Uber Settlement Payment and to enter into the other agreements set forth in the Settlement Agreement, that the Settlement Agreement be approved pursuant to a 9019 Motion and that such settlement become indefeasible as to Uber upon the Settlement Agreement Effective Date.

(b) Approval of the settlement described in Section VIII between the Debtor's estate and the CLAT, and entry of a separate order and judgment directing return of the CLAT's assets in a form acceptable to the Debtor and Google.

(c) This Term Sheet and Google's commitment hereto, shall be incorporated into a plan support agreement, executed by necessary parties no later than February 10, 2022, pursuant to which the Debtor will agree to file a plan and disclosure statement consistent with this Term Sheet within ten (10) business days after the execution of the plan support agreement. The terms of the plan support agreement shall be fully

consistent with this Plan Term Sheet and subject to the approval of Google and Debtor.

## VII. Roth IRA

(a) Google agrees that, in the event that it exercises rights against the Roth IRA, the Agreed Exempt Amount shall not be subject to exercise of its remedies. The Plan will contain a finding sustaining the Debtor's claim of exemption to the extent of the Agreed Exempt Amount.

(b) The Roth IRA shall not be included among the assets transferred to the Residual Trust and will continue to exist for the benefit of the Debtor; provided that, as set forth above, the Roth IRA shall be available to fulfill Levandowski's obligations under the Individual Commitment and Google may exercise any and all remedies against the Roth IRA if the Debtor defaults on the Individual Commitment, except to the extent of the Agreed Exempt Amount. Other than the Agreed Exempt Amount, in the event of a default under the Individual Commitment, Levandowski and the trustee under the Roth IRA shall immediately transfer all assets in the Roth IRA (net of taxes owed as the result of the transfer) to Google in partial satisfaction of the Individual Commitment, or at Google's sole discretion, to the Residual Trust for distribution under the Plan. At Levandowski's discretion, he shall be permitted to make a transfer or transfers of the Agreed Exempt Amount, when earned, from the Roth IRA into another vehicle or vehicles.

(c) Levandowski shall have no obligation to liquidate or withdraw funds from the Roth IRA under the Plan or pursuant to the Individual Commitment; *provided* that any distributions received from the Roth IRA before the Individual Commitment is fully satisfied shall be transferred to Google. The Roth IRA shall be subject to periodic reporting to Google and subject to limitation on reinvestment of assets currently held while the Individual Commitment is outstanding, all subject to agreement prior to the filing of the Plan.

## VIII. CLAT

(a) The 9019 Motion shall include a proposed settlement between the estate and the CLAT in which the CLAT will agree to the avoidance of all assets contributed by the Debtor to the CLAT and proceeds thereof.

(b) Assets recovered from the CLAT shall be used first to provide liquidity to fund the Plan. Any unused cash shall be transferred to the Residual Trust.

## IX. Other Terms

(a) Other than the releases referenced above, there shall not be any third-party releases under the Plan other than consensual releases to be provided by Google. The Plan shall include a customary exculpation provision for post-petition, pre-Plan Effective Date actions.

- 9 -

(b)     Levandowski shall receive a discharge to the fullest extent permissible by law, subject to the terms and commitments contained herein.

(c)     Property received by the Debtor after the Plan Effective Date shall not vest in the Residual Trust but rather shall vest in Levandowski (and not the debtor in possession or the Bankruptcy Estate), and the Residual Trust as well as holders of any and all Claims waive their right to any post-confirmation property under 11 U.S.C. § 1115. For the avoidance of doubt, nothing herein shall change the treatment of the Roth IRA.

(d)     Executory contracts and unexpired leases not assumed by the Reorganized Debtor, and all obligations thereunder, shall be deemed rejected. Notwithstanding, this shall not include any contracts or obligations otherwise affirmed herein, and in no event shall this agreement provide relief beyond that provided by the Bankruptcy Code relating to executory contracts.

(e)     The Trustee, Google and Levandowski shall use their commercially best efforts to make all transactions and documents tax-efficient including, where necessary, with appropriate findings in the confirmation order regarding, among other things, the nature of the Uber Settlement Payment.

(f)     The parties hereto will stipulate to allowance of an administrative claim of Levandowski, in his personal capacity, for payment of counsel fees in the negotiation of this Term Sheet in an amount not to exceed $30,000 (which amount is exclusive of the $25,000 previously advanced).

(g)     Levandowski and Debtor shall represent and warrant to the Google Releasees that, as of the date of signature on this agreement or the Plan Support Agreement (whichever document Levandowski and Google mutually agree shall require a signature), he has destroyed, or returned to Google, and no longer has any documents, files or information containing confidential information or trade secret information of Google or any Google Affiliates in his possession, custody or control or in any place he has access to or controls. Levandowski and Debtor shall also represent and warrant to the Google Releasees that he has not used any confidential information or trade secret information of Google or of any Google Affiliates for the benefit of any non-Google or non-Google Affiliate person, party or entity. Levandowski and Debtor shall also represent and warrant to the Google Releasees that he has not provided any documents, files or information containing confidential information or trade secret information of Google or of any Google Affiliates to any non-Google or non-Google Affiliate person, party or entity other than to Stroz Friedberg, although Levandowski does not know if Stroz Friedberg provided some of those documents or files to other third parties without his approval or knowledge. In particular, Levandowski and Debtor shall represent and warrant to the Google Releasees that he has not provided any confidential information or trade secret information of Google or of any Google Affiliates to, or used any confidential information or trade secret information of Google or any Google Affiliates at, or for, Pronto.ai or any Pronto.ai-related entity. Levandowski

- 10 -

and Debtor shall also represent and warrant to the Google Releasees that he will not use or disclose any confidential information or trade secret information of Google or any Google Affiliates. The Google Releasees' remedies for any alleged breach of these representations and warranties shall include any available relief, including but not limited to, injunctive relief, remediation, damages or any other form of court ordered relief. Levandowski and Debtor acknowledges that the Google Releasees shall rely on the accuracy of these representations in granting the releases contained in Section V(a) and (c) above.

(h)   Google, Levandowski and Uber agree that the Google and Waymo information contained within the bankruptcy, arbitration and trade secret case documents shall be returned to Google and Waymo or destroyed, with their advance consent on the method to be used, consistent with the applicable protective orders. Google, Waymo and Levandowski will confer regarding a mechanism reasonably acceptable to Google, Waymo and Levandowski to obtain the return or destruction of such documents.

(i)   The Bankruptcy Court shall retain jurisdiction over the Plan, this Plan Term Sheet, the Residual Trust, the Individual Commitment, and any obligations (and the enforcement of those obligations) of the Levandowski Release Parties under the Debtor's reorganization plan, this Plan Term Sheet, the Residual Trust, and the Individual Commitment.

(j)   For any Deferred Action, the Debtor shall preserve for 5 years or turn over to the Trustee all documents and information related to that Deferred Claim. The Trustee will provide a litigation hold notice to parties that may have liability on Deferred Claims to preserve all documents and information related to such Deferred Claims for 5 years.

(k)   The Levandowski Release Parties and Google will represent and warrant that they hold and control and have not assigned or transferred to any other entity or person any of the rights and claims which are being released, altered or otherwise affected by this Plan. Additionally, Google LLC (previously known as Google Inc.), Waymo LLC and Alphabet Inc. will represent and warrant that they have not transferred any legal claims or rights against Levandowski to any entity or person that is not included in the definition of Google Releasee at any point prior to the date that the parties sign this term sheet. The Google Releasees will also acknowledge that Levandowski Release Parties shall rely on the accuracy of the foregoing representation in granting the releases contained in Section V above.

## EXHIBITS A and B

### Exhibit A - Trust Assets

1. Except as otherwise set forth in this Exhibit A, all of the following assets of the bankruptcy estate, whether included or omitted on Schedules A and B of the Debtor's Schedules: Goods, Accounts, Inventory, Equipment, Contract Rights, General Intangibles, Deposit Accounts, Financial Assets, Securities, Cash (including CLAT proceeds), Membership Interests, Instruments, and Books and Records; and all Proceeds of each of the foregoing. The foregoing terms shall have the definitions ascribed to them in the California Commercial Code. The foregoing list of assets does not include (1) Litigation Claims, (2) the Roth IRA, and (3) personal items at the Debtor's residence (provided that the fair market value of such items will not exceed $40,000); and

2. All "Litigation Claims" as follows:

   All claims for relief and causes of action relating to assets identified in Schedules A and B of the Debtor's Schedules, including without limitation all claims and causes of action identified in Schedule 1 hereto. Levandowski represents that Schedule 1 includes a full and complete list of all known claims for relief and causes of action of the Levandowski estate.

### Exhibit B - Deferred Actions

1. Any claim or action that the Trustee might take to sell or convert the SAFE note issued by Pronto.ai.

2. Claims relating to the following individuals and entities:

   a. Litigation claims against Victoria Pacchiana for (i) the promissory note dated February 1, 2019, in the amount of $60,000, and (iii) the SAFE note issued by Ms. Pacchiana's affiliate Formation Learning, Inc., formerly known as Home Studio Inc. for $250,000.

   b. Litigation claims relating to the SAFE note issued by One70, an affiliate of Max Levandowski.

   c. Litigation claims relating to Fawn Park, LLC, an affiliate of Stephan Levandowski and Suzanna Musick.

- 12 -

## SCHEDULE 1

[To be provided]

- 13 -

**EXHIBIT 3**

ADVERSARY PROCEEDING DISMISSAL STIPULATION

1  TOBIAS S. KELLER (SBN 151445)
   *TKeller@kbkllp.com*
2  DARA L. SILVEIRA (SBN 274923)
   *DSilveira@kbkllp.com*
3  **KELLER BENVENUTTI KIM LLP**
   650 California Street, Suite 1900
4  San Francisco, California 94108
   Tel: (414) 364-6793
5
   BRETT M. SCHUMAN (SBN 189247
6  *BSchuman@goodwinlaw.com*
   JENNIFER BRIGGS FISHER (SBN 241321)
7  *JFisher@goodwinlaw.com*
   **GOODWIN PROCTER LLP**
8  Three Embarcadero
   San Francisco, California, 94111
9  Tel: (415) 733-6000
   Fax: (415) 677-9041
10
   ANDREW S. ONG (SBN 267889)
11 AOng@goodwinlaw.com
   **GOODWIN PROCTER LLP**
12 601 Marshall Street
   Red Wood City, California, 90017
13 Tel: (650) 752-3100
   Fax: (650) 853-1038
14
   *Counsel for Anthony Levandowski*
15

16              **UNITED STATES BANKRUPTCY COURT**
                **NORTHERN DISTRICT OF CALIFORNIA**
17                  **SAN FRANCISCO DIVISION**

18 | In re:                              | Case No. 20-30242 (HLB)
19 | ANTHONY SCOTT LEVANDOWSKI,          | Chapter 11
20 |                 Debtor.             |
21 | ANTHONY SCOTT LEVANDOWSKI, an       | Adv. Pro. No. 20-03050 (HLB)
   | individual,                         |
22 |                                     | **JOINT STIPULATION TO DISMISS**
   |                 Plaintiff,          | **ADVERSARY PROCEEDING**
23 |                                     |
   |        v.                           |
24 | UBER TECHNOLOGIES, INC.             |
25 |                                     |
   |                 Defendant.          |
26
27
28

Plaintiff Anthony Levandowski ("Plaintiff") and Defendant Uber Technologies, Inc. ("Uber") by and through their respective counsel of record, pursuant to Rule 41(a)(2) of the Federal Rules of Civil Procedure and Rule 7041 of the Federal Rules of Bankruptcy Procedure, hereby stipulate and agree that this Adversary Proceeding, including Plaintiff's Claims and Defendant's Counterclaims, should be dismissed with prejudice, each party to bear their own costs.

Dated: _____, 2022

GOODWIN PROCTER LLP

By _____
Brett M. Schuman
Jennifer Briggs Fisher

--and--

KELLER BENVENUTTI KIM LLP
Tobias S. Keller
Dara L. Silveira

*Counsel for Plaintiff and Debtor and Debtor in Possession Anthony Levandowski*

PACHULSKI STANG ZIEHL & JONES LLP

By _____
Debra I. Grassgreen
Miriam Manning

--and--

JENNER & BLOCK LLP
David J. Bradford
Catherine Steege
Terri L. Mascherin
Katharine R. McLaughlin
*Counsel for Uber Technologies, Inc.*

1   TOBIAS S. KELLER (SBN 151445)
    *TKeller@kbkllp.com*
2   DARA L. SILVEIRA (SBN 274923)
    *DSilveira@kbkllp.com*
3   **KELLER BENVENUTTI KIM LLP**
    650 California Street, Suite 1900
4   San Francisco, California 94108
    Tel: (414) 364-6793
5
    BRETT M. SCHUMAN (SBN 189247)
6   *BSchuman@goodwinlaw.com*
    JENNIFER BRIGGS FISHER (SBN 241321)
7   *JFisher@goodwinlaw.com*
    **GOODWIN PROCTER LLP**
8   Three Embarcadero
    San Francisco, California, 94111
9   Tel: (415) 733-6000
    Fax: (415) 677-9041
10
    ANDREW S. ONG (SBN 267889)
11  AOng@goodwinlaw.com
    **GOODWIN PROCTER LLP**
12  601 Marshall Street
    Red Wood City, California, 90017
13  Tel: (650) 752-3100
    Fax: (650) 853-1038
14
    *Counsel for Anthony Levandowski*
15

16                    **UNITED STATES BANKRUPTCY COURT**
                       **NORTHERN DISTRICT OF CALIFORNIA**
17                         **SAN FRANCISCO DIVISION**

18   In re:                                    Bankruptcy Case
                                               No. 20-30242 (HLB)
19   ANTHONY SCOTT LEVANDOWSKI,                Chapter 11

20                           Debtor.           **Adv. Pro. No. 20-03050 (HLB)**

21   ANTHONY LEVANDOWSKI, an individual,       **ORDER GRANTING JOINT**
                                               **STIPULATION TO DISMISS**
22                           Plaintiff,        **ADVERSARY PROCEEDING**

23        v.

24   UBER TECHNOLOGIES, INC.

25                           Defendant.

26

27

28

1    The Court having considered the Joint Stipulation To Dismiss Adversary Proceeding; and
2  good cause appearing;
3      **IT IS HEREBY ORDERED THAT** this Adversary Proceeding, including Plaintiff's claims
4  and Defendant's counterclaims, is dismissed with prejudice, each party to bear its own costs.
5
6
7
                            *** END OF ORDER ***
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**EXHIBIT 4**

WITHDRAWAL OF UBER PROOF OF CLAIM

Debra I. Grassgreen (CA Bar No. 169978)
Miriam Manning (CA Bar No. 178584)
PACHULSKI STANG ZIEHL & JONES LLP
One Market Plaza, Spear Tower
40th Floor, Suite 4000
San Francisco, CA 94105-1020
Telephone:    (415) 263-7000
Facsimile:    (415) 263-7010
E-mail:       dgrassgreen@pszjlaw.com
              mmanning@pszjlaw.com

David J. Bradford (admitted *pro hac vice*)
Catherine Steege (admitted *pro hac vice*)
Terri L. Mascherin (admitted *pro hac vice*)
Katharine R. McLaughlin (admitted *pro hac vice*)
JENNER & BLOCK LLP
353 N. Clark St.
Chicago, IL 60654
Telephone:    (312) 222-9350
E-mail:       dbradford@jenner.com
              csteege@jenner.com
              tmascherin@jenner.com
              kmclaughlin@jenner.com

*Attorneys for Defendant*
*Uber Technologies, Inc.*

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| In re: | Case No. 20-30242 (HLB) |
| ANTHONY SCOTT LEVANDOWSKI, | Chapter 11 |
| Debtor. | |
| ANTHONY SCOTT LEVANDOWSKI, an individual, | Adv. Pro. No. 20-03050 (HLB) |
| Plaintiff, | **JOINT STIPULATION TO WITHDRAW PROOF OF CLAIM NO. 8** |
| v. | |
| UBER TECHNOLOGIES, INC. | |
| Defendant. | |

Plaintiff Anthony Levandowski ("Plaintiff") and Defendant Uber Technologies, Inc. ("Uber") by and through their respective counsel of record, pursuant to Rule 3006 of the Federal Rules of Bankruptcy Procedure, hereby stipulate and agree that Uber may withdraw its proof of claim, docketed as Claim No. 8, with prejudice, each party to bear its own costs.

Dated: _____, 2022                    PACHULSKI STANG ZIEHL & JONES LLP

                                             By      _____
                                                     Debra I. Grassgreen
                                                     Miriam Manning

                                                     --and--

                                                     JENNER & BLOCK LLP
                                                     David J. Bradford
                                                     Catherine Steege
                                                     Terri L. Mascherin
                                                     Katharine R. McLaughlin
                                                     *Counsel for Uber Technologies, Inc.*

                                             GOODWIN PROCTER LLP

                                             By      _____
                                                     Brett M. Schuman
                                                     Jennifer Briggs Fisher

                                                     --and--

                                                     KELLER BENVENUTTI KIM LLP
                                                     Tobias S. Keller
                                                     Dara L. Silveira

                                                     *Counsel for Plaintiff and Debtor and Debtor in*
                                                     *Possession Anthony Levandowski*

Debra I. Grassgreen (CA Bar No. 169978)
Miriam Manning (CA Bar No. 178584)
PACHULSKI STANG ZIEHL & JONES LLP
One Market Plaza, Spear Tower
40th Floor, Suite 4000
San Francisco, CA 94105-1020
Telephone:    (415) 263-7000
Facsimile:    (415) 263-7010
E-mail:       dgrassgreen@pszjlaw.com
              mmanning@pszjlaw.com

David J. Bradford (admitted *pro hac vice*)
Catherine Steege (admitted *pro hac vice*)
Terri L. Mascherin (admitted *pro hac vice*)
Katharine R. McLaughlin (admitted *pro hac vice*)
JENNER & BLOCK LLP
353 N. Clark St.
Chicago, IL 60654
Telephone:    (312) 222-9350
E-mail:       dbradford@jenner.com
              csteege@jenner.com
              tmascherin@jenner.com
              kmclaughlin@jenner.com

*Attorneys for Defendant Uber Technologies, Inc.*

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br><br>ANTHONY SCOTT LEVANDOWSKI,<br><br>Debtor. | Bankruptcy Case<br>No. 20-30242 (HLB)<br>Chapter 11<br><br>**Adv. Pro. No. 20-03050 (HLB)** |
| ANTHONY LEVANDOWSKI, an individual,<br><br>Plaintiff,<br><br>v.<br><br>UBER TECHNOLOGIES, INC.<br><br>Defendant. | **ORDER GRANTING JOINT STIPULATION TO WITHDRAW PROOF OF CLAIM NO. 8** |

1       The Court having considered the Joint Stipulation To Withdraw Proof of Claim No. 8; and

2 good cause appearing;

3       **IT IS HEREBY ORDERED THAT** Claim no. 8 is hereby withdrawn with prejudice, each

4 party to bear its own costs.

5

6

7

*** END OF ORDER ***

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28