1                                          **<u>Exhibit 1</u>**

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**KELLER BENVENUTTI KIM LLP**
TOBIAS S. KELLER (Cal. Bar No. 151445)
(tkeller@kbkllp.com)
DARA L. SILVEIRA (Cal. Bar No. 274923)
(dsilveira@kbkllp.com)
650 California Street, Suite 1900
San Francisco, California 94108
Telephone: (415) 496-6723
Facsimile: (650) 636-9251

*Attorneys for Anthony S. Levandowski,*
*Debtor and Debtor in Possession*

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

|  |  |
|---|---|
| In re:<br><br>ANTHONY SCOTT LEVANDOWSKI,<br><br>              Debtor. | Bankruptcy Case<br>No. 20-30242 (HLB)<br><br>Chapter 11<br><br>**DEBTOR'S COMBINED DISCLOSURE STATEMENT AND CHAPTER 11 PLAN DATED ~~FEBRUARY 23~~MARCH 18, 2022**<br><br>Date: _____,April 21, 2022<br>Time: \_\_\_\_11:00 a.m. (Pacific Time)<br>Place: (Tele/Video Appearances Only)<br>      United States Bankruptcy Court<br>      Courtroom 19, 16th Floor<br>      San Francisco, CA 94102 |

# Table of Contents

I.      INTRODUCTION ................................................................................................ 6

II.     DEFINITIONS AND CONSTRUCTION OF TERMS ......................................... 6

        A.      Definitions. ........................................................................................... 6

        B.      Interpretation; Application of Definitions and Rules of Construction. ........ 14

III.    BACKGROUND AND DISCLOSURES ............................................................ 15

        A.      Debtor's Personal Background. ............................................................. 15

        B.      The Debtor's Tenure with Google. ........................................................ 16

        C.      Ottomotto, Uber and the Google Arbitration. ....................................... 16

        D.      The Chapter 11 Filing and the Initiation of the Uber AVP. ..................... 17

        E.      The Chapter 11 Case. .......................................................................... 17

        F.      The Uber Settlement, the Global Settlement, and Related Issues. ............ 19

        G.      Certain ~~Federal~~ Income Tax Consequences. ..................................... 21

        H.      Certain Risk Factors to Be Considered. ................................................ 25

IV.     SUMMARY OF DEBTOR'S ASSETS; SUMMARY OF TREATMENT OF
        CLAIMS AND ESTIMATED RECOVERIES ................................................... 26

        A.      Summary of Assets and Estimated Recoveries by Class. ......................... 26

        B.      Liquidation under Chapter 7 of the Bankruptcy Code. ............................ 26

V.      CONFIRMATION AND VOTING PROCEDURES ......................................... 27

        A.      Confirmation Hearing. ......................................................................... 27

        B.      Procedure for Objections. .................................................................... 27

        C.      Requirements for Confirmation. ........................................................... 28

        D.      Classification of Claims and Interests. .................................................. 28

        E.      Impaired Claims or Interests. ............................................................... 29

        F.      Eligibility to Vote on the Combined Plan and Disclosure Statement. ......... 29

        G.      Solicitation Notice. .............................................................................. 30

        H.      Procedure/Voting Deadlines. ............................................................... 30

        I.      Acceptance of the Combined Plan and Disclosure Statement. ................. 31

VI.    TREATMENT OF UNCLASSIFIED CLAIMS .............................................. 32

    A.    Administrative Expense Claims. ................................................ 32

    B.    Professional Fee Claims. ........................................................... 32

    C.    Priority Tax Claims. .................................................................. 32

    D.    DIP Financing Claim. ................................................................ 33

    E.    Payment of Statutory Fees. ....................................................... 33

VII.    CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS;
ESTIMATED RECOVERIES ................................................................... 33

VIII.    TREATMENT OF CLAIMS AND EQUITY INTERESTS ...................... 34

    A.    Treatment of Claims. ................................................................. 34

    B.    Modification of Treatment of Claims and interest. ................... 36

IX.    PROVISIONS REGARDING THE RESIDUAL TRUST ....................... 36

    A.    Establishment of the Residual Trust. ....................................... 36

    B.    Appointment of the Trustee. ...................................................... 38

    C.    Rights and Powers of the Trustee. ............................................ 38

    D.    Post Confirmation Date Expenses of the Trustee. .................... 39

X.    PROVISIONS GOVERNING DISTRIBUTIONS UNDER THE COMBINED
PLAN AND DISCLOSURE STATEMENT ............................................. 39

    A.    Method of Payment. .................................................................. 39

    B.    Objections to and Resolution of Claims. .................................. 39

    C.    Claims Objection Deadline. ...................................................... 39

    D.    No Distribution Pending Allowance. ........................................ 39

    E.    Escrow of Cash Distributions. .................................................. 40

    F.    Distribution After Allowance. .................................................. 40

    G.    Investment of Segregated Cash and Property. ......................... 40

    H.    Delivery of Distributions. ......................................................... 40

    I.    Unclaimed Distributions. .......................................................... 41

    J.    Set-Off. ....................................................................................... 42

**XI.     IMPLEMENTATION AND EFFECT OF CONFIRMATION OF COMBINED PLAN AND DISCLOSURE STATEMENT** ........................... 42

    **A.     Means for Implementation of the Combined Plan and Disclosure Statement.** ........................... 42

**XII.     DISCHARGE, INJUNCTION, EXCULPATION AND RELEASES** ........................ 43

    **A.     Discharge.** ........................... 43

    **B.     Injunction.** ........................... 43

    **C.     Exculpation.** ........................... 44

    **D.     Releases.** ........................... 45

**XIII.     RETENTION OF CLAIMS FOR RELIEF; EXECUTORY CONTRACTS** ........... 47

    **A.     Litigation Claims.** ........................... 47

    **B.     Rejection of Executory Contracts and Unexpired Leases.** ........................... 47

    **C.     Deadline for Filing Proofs of Claim Relating to Executory Contracts and Unexpired Leases Rejected Pursuant to the Combined Plan and Disclosure Statement.** ........................... 48

**XIV.     CONDITIONS TO THE EFFECTIVE DATE** ........................... 49

    **A.     Conditions Precedent to the Effective Date.** ........................... 49

    **B.     Effect of Failure of Conditions.** ........................... 49

    **C.     Waiver of Conditions to Confirmation and Effective Date.** ........................... 50

**XV.     RETENTION OF JURISDICTION** ........................... 50

**XVI.     MISCELLANEOUS PROVISIONS** ........................... 52

    **A.     Amendment or Modification of the Combined Plan and Disclosure Statement.** ........................... 52

    **B.     Severability.** ........................... 52

    **C.     Revocation or Withdrawal of the Combined Plan and Disclosure Statement.** ........................... 52

    **D.     Binding Effect.** ........................... 53

    **E.     Notices.** ........................... 53

    **F.     Governing Law.** ........................... 53

    **G.     Withholding and Reporting Requirements.** ........................... 53

    **H.     Allocation of Distributions Between Principal and Interest.** ........................... 53

I.    **Headings.** ................................................................ 54

J.    **Exhibits/Schedules.** .................................................... 54

K.    **Filing of Additional Documents.** ...................................... 54

L.    **No Admissions.** ........................................................ 54

M.    **Successors and Assigns.** ............................................... 54

N.    **Reservation of Rights.** ................................................ 54

O.    **Implementation.** ....................................................... 55

P.    **Inconsistency.** ........................................................ 55

Q.    **Closing of Chapter 11 Case.** .......................................... 55

R.    **Compromise of Controversies.** ......................................... 55

# I.    INTRODUCTION

Anthony S. Levandowski, as debtor and debtor in possession, hereby proposes the Debtor's Combined Plan and Disclosure Statement pursuant to sections 1125 and 1129 of the Bankruptcy Code.  The Debtor is the proponent of the Combined Plan and Disclosure Statement within the meaning of section 1129 of the Bankruptcy Code.

The Combined Plan and Disclosure Statement constitutes a liquidating chapter 11 plan. The Combined Plan and Disclosure Statement provides for proceeds of assets already liquidated and/or to be liquidated over time to be distributed to holders of Allowed Claims in accordance with the terms of the Combined Plan and Disclosure Statement and the priority of claims provisions of the Bankruptcy Code.  Except as otherwise provided by order of the Bankruptcy Court, Distributions will occur on the Effective Date or as soon thereafter as is practicable and at various intervals thereafter.  The Debtor will cease to be a Debtor in Possession on the Effective Date and the Bankruptcy Estate's assets and liabilities will be transferred to the Residual Trust.

Subject to the restrictions on modifications set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications set forth in Section XVI.A. of the Combined Plan and Disclosure Statement, the Debtor expressly reserves the right to alter, amend or modify the Combined Plan and Disclosure Statement, one or more times, before its substantial consummation.

# II.    DEFINITIONS AND CONSTRUCTION OF TERMS

## A.    Definitions.

As used herein, the following terms have the respective meanings specified below, unless the context otherwise requires:

1.    "9019 Motion" means that *Motion Pursuant to 11 U.S.C. §§ 105(a) and 363(b) and Fed. R. Bankr. P. 9019 for Entry of Orders (I) Approving Settlement Between the Debtor, Uber Technologies, Inc., and Google LLC; (II) the CLAT Settlement; (III) the Plan Support Agreement Between the Debtor and Google; and (IV) Granting Related Relief* [Docket No. 831] filed with the Bankruptcy Court on February 10, 2022.

///

2.     "Administrative Expense Bar Date" means the Business Day that is forty-five (45) days after the Effective Date.

3.     "Administrative Expense Claim" means any right to payment constituting a cost or expense of administration of the Chapter 11 Case under sections 503(b) and 507(a)(2) of the Bankruptcy Code including, without limitation, (a) any actual and necessary costs and expenses of preserving the Bankruptcy Estate, (b) all compensation and reimbursement of expenses to the extent Allowed by the Bankruptcy Court under section 330 or 503 of the Bankruptcy Code, (c) any fees or charges assessed against the Bankruptcy Estate under section 1930 of chapter 123 of Title 28 of the United States Code, and (d) all Claims arising under section 503(b)(9) of the Bankruptcy Code.

4.     "Agreed Exempt Amount" means $1 million in gross value, before taxes, plus an additional $1 million for every $10 million in Distributions from the Residual Trust.

5.     "Allowed" means, with reference to any Claim or interest, proof of which was timely and properly filed or, if no proof of Claim or interest was filed, which has been or hereafter is listed by the Debtor in the Schedules, as liquidated in amount and not disputed or contingent and, in each case, as to which: (A) no objection to allowance has been interposed within the applicable period fixed by the Combined Plan and Disclosure Statement, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or (B) an objection has been interposed and such Claim has been allowed, in whole or in part, by a Final Order.

6.     "Bankruptcy Code" means title 11 of the United States Code, as amended from time to time.

7.     "Bankruptcy Court" or "Court" means the United States Bankruptcy Court for the Northern District of California, or if such court ceases to exercise jurisdiction over the Chapter 11 Case, such court or adjunct thereof that exercises jurisdiction over the Chapter 11 Case in lieu of the United States Bankruptcy Court for the Northern District of California.

8.     "Bankruptcy Estate" means the estate created in the Chapter 11 Case pursuant to 11 U.S.C. §541 upon the filing of the Chapter 11 Case, inclusive of assets and earnings contributed thereto pursuant to 11 U.S.C. §1115.

9. "Bankruptcy Exception" means the exception to the recognition of COD Income under section 108(a)(l)(A) of the Tax Code when a taxpayer discharging indebtedness is under the jurisdiction of a court in a case under title 11 of the Bankruptcy Code and when the discharge is granted, or is affected pursuant to a plan approved, by a Bankruptcy Court.

10. "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code, and any Local Rules of the Bankruptcy Court, as amended from time to time.

11. "Bar Date" means July 6, 2020, the date fixed by the Bankruptcy Court pursuant to the Bar Date Notice of Chapter 11 Bankruptcy Case, Meeting of Creditors and Deadlines for Creditors to file proof of a General Unsecured Claim in the Chapter 11 Case.

12. "Business Day" means any day other than a Saturday, Sunday or any other day on which commercial banks in New York, New York, are required or authorized to close by law or executive order.

13. "Cash" means legal tender of the United States of America and equivalents thereof.

14. "Chapter 11 Case" means the case under chapter 11 of the Bankruptcy Code commenced by the Debtor, styled as *In re Anthony Scott Levandowski*, Case No. 20-30242 (HLB), currently pending in the Bankruptcy Court.

15. "Claim" shall have the meaning set forth in section 101(5) of the Bankruptcy Code.

16. "Claims and Balloting Agent" means Keller Benvenutti Kim LLP.

17. "Claims Objection Deadline" means ninety (90) days after the Effective Date or such later date as may be approved by the Bankruptcy Court.

18. "Class" means any group of substantially similar Claims or interests classified by the Combined Plan and Disclosure Statement pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.

19. "CLAT" means the Anthony Levandowski Charitable Lead Annuity Trust dated December 18, 2016.

20.     "CLAT Settlement" means the Settlement Agreement between Anthony Scott Levandowski as Trustee of the Anthony Levandowski Charitable Lead Annuity Trust in the form filed with the 9019 Motion.

21.     "Clerk" means the clerk of the Bankruptcy Court.

22.     "Charity" means any non-profit organization whose primary purpose is the pursuit of philanthropic endeavors that is selected by the Trustee.

23.     "COD" means cancellation of indebtedness.

24.     "Combined Plan and Disclosure Statement" means this combined disclosure statement and Chapter 11 plan including, without limitation, all exhibits, supplements, appendices and schedules hereto, either in their present form or as the same may be altered, amended or modified from time to time through the Confirmation Date.

25.     "Confirmation Date" means the date on which the Confirmation Order is entered on the Docket.

26.     "Confirmation Hearing" means the hearing held by the Bankruptcy Court to consider (i) approval of the Combined Plan and Disclosure Statement as providing adequate information pursuant to section 1125 of the Bankruptcy Code and (ii) confirmation of the Combined Plan and Disclosure Statement pursuant to section 1129 of the Bankruptcy Code, as such hearing may be adjourned or continued from time to time.

27.     "Confirmation Order" means the order of the Bankruptcy Court confirming the Combined Plan and Disclosure Statement pursuant to section 1129 of the Bankruptcy Code.

28.     "Creditor" means any Person that is the Holder of a Claim against the Debtor.

29.     "Cure Amount" means the payment of Cash or the distribution of other property (as the parties may agree or the Bankruptcy Court may order) that is necessary to cure any and all defaults under an executory contract or unexpired lease so that such contract or lease may be assumed, or assumed and assigned, pursuant to Bankruptcy Code section 1123(b)(2).

30.     The "Debtor" means Anthony S. Levandowski, in his individual capacity.

31.     "Debtor in Possession" means the Debtor in his capacity as debtor-in-possession in the Chapter 11 Case pursuant to sections 1101, 1107(a) and 1108 of the Bankruptcy Code.

32. "Deferred Actions" means:

    a. Any claim or action that the Trustee might take to sell or convert the SAFE note issued by Pronto.ai;

    b. Any claim or action that the Trustee might take to withdraw assets from or assert control over the Roth IRA; and

    c. Litigation Claims against (i) Victoria Pacchiana for (a) the promissory note dated February 1, 2019, in the amount of $60,000, and (b) the SAFE note issued by Ms. Pacchiana's affiliate Formation Learning, Inc., formerly known as Home Studio, Inc. for $250,000; (ii) the SAFE note issued by One70, an affiliate of Max Levandowski in the amount of $30,000; and (iii) Fawn Park, LLC, an affiliate of Stephen Levandowski and Suzanna Musick.

33. "DIP Financing" means the financing provided to the Debtor in Possession pursuant to the terms of the Secured Promissory Note dated September 29, 2021, the DIP Security Agreement and the DIP Financing Order.

34. "DIP Financing Claim" means any Claim arising under or related to the DIP Financing.

35. "DIP Financing Order" means the Court's Order Authorizing Debtor to (A) Obtain Secured Superpriority Financing and Related Relief; and (B) Use Roth IRA Assets and Proceeds to Pay Estate Obligations [Docket No.674] entered September 13, 2021.

36. "DIP Financing Proceeds" means the proceeds loaned to the Debtor in Possession pursuant to the DIP Financing.

37. "DIP Lender" means Howard Chau.

38. "DIP Security Agreement" means that Security Agreement dated as of September 29, 2021, by and between DIP Lender and the Debtor in Possession, as the same may be further amended, modified, ratified, extended, renewed, restated or replaced.

39. "Disputed" means any Claim that is listed on the Schedules as disputed, contingent or unliquidated, or which is objected to in whole or in part in accordance with Section X.B. of the Combined Plan and Disclosure Statement, or otherwise.

40. "Distribution" means any distribution to the Holders of Allowed Claims.

41. "Docket" means the docket in the Chapter 11 Case maintained by the Clerk.

42. "Effective Date" means a date to be set as soon as practicable after the date on which the conditions specified in Section XIV of the Combined Plan and Disclosure Statement have been satisfied or waived.

43. "Entity" means an entity as defined in section 101(15) of the Bankruptcy Code.

44. "Executory Contract" means any executory contract or unexpired lease as of the ~~Commencement~~Petition Date between the Debtor and any other Person or Persons, specifically excluding contracts and agreements entered into pursuant to this Combined Plan and Disclosure Statement.

45. "File, Filed, or Filing" means file, filed or filing with the Bankruptcy Court in the Chapter 11 Case.

46. "Final Order" means an Order of the Bankruptcy Court or a Court of competent jurisdiction to hear appeals from the Bankruptcy Court, that has not been reversed, stayed, modified or amended and as to which the time to appeal, to petition for certiorari, or to move for reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for reargument or rehearing shall then be pending.

47. "General Unsecured Claim" means any Claim against the Debtor that arose or is deemed by the Bankruptcy Code or Bankruptcy Court, as the case may be, to have arisen before the ~~Commencement~~Petition Date and that is not a secured Claim, Administrative Expense Claim, Priority Tax Claim, Other Priority Claim or the Google Claim.

48. "Global Settlement" means the set of agreements described and as defined in the 9019 Motion.

49. "Google" shall mean Google LLC.

50. "Google Claim" shall mean Claim No. 9 filed by Google on or about July 6, 2020.

51. "Google Release" shall be the written release described in Section XII.D. herein.

52. "Holder" means the beneficial holder of any Claim.

//

53.    "Impaired" means any Class of Claims or interests that is impaired within the meaning of Bankruptcy Code section 1124.

54.    "Individual Commitment" means the stipulated judgment and order for nondischargeable debt against the Debtor being provided to the Google in its capacity as Holder of the Class 2 Claim (fully described in Section ~~VII~~VIII.A.2 herein), in form and substance to be mutually agreed by the Debtor and Google.  The Individual Commitment will be filed with the Plan Supplement.

55.    "IRS" means Internal Revenue Service.

56.    "Liquidation Analysis" means the analysis attached hereto as Exhibit A.

57.    "Litigation Claims" means all claims for relief and causes of action relating to assets identified in Schedules A and B of the Debtor's Schedules, plus those claims as identified as claims to "preserve" in the treatment column of Schedule 1 hereto.

58.    "Main Uber Payment" has the meaning ascribed to it in the Uber Settlement.

59.    "Order" means an order or judgment of the Bankruptcy Court as entered on the Docket.

60.    "Other Priority Claim" means a Claim that is entitled to priority in payment under section 507 of the Bankruptcy Code other than a Priority Tax Claim.

61.    "Petition Date" means March 4, 2020.

62.    "Person" shall have the meaning set forth in section 101(41) of the Bankruptcy Code.

63.    "Plan Supplement" shall be a Filing made no later than ~~five (5) Business Days prior to the Confirmation Hearing~~April 15, 2022, that shall include all material documents identified in this Combined Plan and Disclosure Statement, including the trust agreement or other governing document of the Residual Trust, the Google Release, the Confirmation Order and the Individual Commitment and any related documents.

64.    "Priority Tax Claim" means a Claim that is entitled to priority under section 507(a)(8) of the Bankruptcy Code.

##

65.     "Professional" means any professional person employed in the Chapter 11 Case pursuant to section 327 or 1103 of the Bankruptcy Code or otherwise pursuant to an Order of the Bankruptcy Court.

///

66.     "Professional Fee Claim" means a Claim of a Professional for compensation or reimbursement of costs and expenses (or of members of the Committee for reimbursement of expenses) relating to services provided during the period from the Petition Date through and including the Effective Date.

66.67.  "Pro Rata" means the proportion that an Allowed Claim in a particular Class bares to the aggregate amount of Allowed Claims in that Class.

67.68.  "Residual Trust" means a trust or other entity to receive and liquidate as soon as commercially reasonable the Trust Assets, subject to the limitations contained herein.  The trust agreement or other governing document shall (a) be in form acceptable to Google, (b) identify the Trustee, (c) contain adequate means to protect and liquidate the Trust Assets, (d) contain periodic reporting requirements to all beneficiaries, and (e) be filed with the Plan Supplement. Google shall be identified as a beneficiary of the Residual Trust up to the amount of the Individual Commitment.

68.69.  "Roth IRA" means that certain Roth IRA maintained for the benefit of the Debtor by Pensco Trust Company, as custodian, and listed as an exempt asset in the Schedules.

69.70.  "Schedules" means the schedules of assets and liabilities and the statement of financial affairs filed by the Debtor under section 521 of the Bankruptcy Code and Bankruptcy Rule 1007, and all amendments and modifications thereto through the Confirmation Date.

70.71.  "Settlement Agreement Effective Date" has the meaning ascribed to it in the Uber Settlement.

71.72.  "Tax Code" means the Internal Revenue Code of 1986, as amended.

72.73.  "Tentative Approval Order" means an order of the Bankruptcy Court conditionallytentatively approving this Combined Plan and Disclosure Statement for solicitation purposes only.

73.74.  "Trust Assets" means all of the following assets of the Bankruptcy Estate, whether included or omitted on Schedules A and B of the Debtor's Schedules:  Goods, Accounts, Inventory, Equipment, Contract Rights, General Intangibles, Deposit Accounts, Financial Assets, Securities, Cash (including CLAT proceeds), Membership Interests, Instruments, and Books and Records; and all Proceeds of each of the foregoing.  The foregoing terms shall have the definitions ascribed to them in the California Commercial Code.  The Trust Assets also include (i) the Litigation Claims, and (ii) the right to seek assets from the Debtor's interest in the Roth IRA (except for the Agreed Exempt Amount).  The Trust Assets do not include exempt assets identified in Schedule C other than the CLAT and the Roth IRA.

74.75.  "Trustee" means the person appointed to manage the Residual Trust.  The Trustee and his or her compensation will be identified in the Plan Supplement.

75.76.  "Uber" means Uber Technologies, Inc.

76.77.  "Uber AVP" means Adversary Proceeding No. 20–03050, which the Debtor commenced with the filing of the *Debtor's Complaint for Declaratory Relief, Specific Performance, and Damages; and Objection to Claim* ~~filed~~ on July 16, 2020.

77.78.  "Uber Settlement" means the Settlement Agreement dated February 10, 2022, in the form filed with the 9019 Motion.

78.79.  "Uber Settlement Payment" has the meaning ascribed to it in the Uber Settlement.

79.80.  "Unclaimed Distribution" means a Distribution that is not claimed by a holder of an Allowed Claim on or prior to the Unclaimed Distribution Deadline.

80.81.  "Unclaimed Distribution Deadline" means ninety (90) days from the date the Trustee makes a Distribution of Cash or other property under the Combined Plan and Disclosure Statement to a holder of an Allowed Claim.

81.82.  "Unimpaired" means any Class of Claims or interests that is not impaired within the meaning of Bankruptcy Code section 1124.

82.83.  "Voting Deadline" has the meaning set forth in Section V.H. hereof.

**B.     Interpretation; Application of Definitions and Rules of Construction.**

1    Wherever from the context it appears appropriate, each term stated in either the singular

2  or the plural shall include both the singular and the plural and pronouns stated in the masculine,

3  feminine or neutral gender shall include the masculine, feminine and neutral.  Unless otherwise

4  specified, all section, schedule or exhibit references in the Combined Plan and Disclosure

5  Statement are to the respective section in, Schedule to, or Exhibit to the Combined Plan and

6  Disclosure Statement. The words "herein," "hereof," "hereto," "hereunder" and other words of

7  similar import refer to the Combined Plan and Disclosure Statement as a whole and not to any

8  particular section, subsection or clause contained in the Combined Plan and Disclosure

9  Statement. The rules of construction contained in section 102 of the Bankruptcy Code shall apply

10  to the construction of the Combined Plan and Disclosure Statement. A term used herein that is

11  not defined herein, but that is used in the Bankruptcy Code, shall have the meaning ascribed to

12  that term in the Bankruptcy Code. The headings in the Combined Plan and Disclosure Statement

13  are for convenience of reference only and shall not limit or otherwise affect the provisions of the

14  Combined Plan and Disclosure Statement.

15  **III.     BACKGROUND AND DISCLOSURES**

16    On the Petition Date, the Debtor filed a voluntary petition for relief pursuant to

17  Chapter 11 of the Bankruptcy Code, thereby initiating this Chapter 11 Case.  Since the Petition

18  Date, the Debtor has remained in possession of his assets and management of its businesses as

19  Debtor in Possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

20    **A.     Debtor's Personal Background.**

21    The Debtor is an individual residing in California and, at all times relevant to the

22  Chapter 11 Case, has been a resident of Alameda or Marin Counties.  Mr. Levandowski grew up

23  in the San Francisco Bay Area and attended the University of California at Berkeley, where he

24  was awarded a Bachelor of Science Degree in Industrial Engineering and Operations Research in

25  2002 and a master's degree in the same discipline in 2003.  In 2004 and 2005, he competed in

26  the DARPA Grand Challenge, a competition for autonomous vehicles funded by the Defense

27  Advanced Research Projects Agency.  For the Grand Challenge, he created an autonomous

28  motorcycle, the Ghostrider, which was the only two-wheeled vehicle in the competition.  The

1    Ghostrider is now displayed in the Smithsonian National Museum of American History.

2        **B.    The Debtor's Tenure with Google.**

3            In 2007, the Debtor was hired by Google.  In 2009, he became one of the founding

4    members of Project Chauffeur, a Google project aimed at developing and bringing to market a

5    self-driving vehicle.  In this role, he supervised an engineering team working on Light Detection

6    and Ranging ("LiDAR"), a remote surveying method that uses a pulsed laser to measure variable

7    distances.  While employed by Google, the Debtor signed various agreements that contained,

8    among other things, non-competition and non-solicitation provisions.

9            During the time he was at Google, he founded two companies, 510 Systems, LLC

10   ("510") and Anthony's Robots, LLC ("AR").  510 used LiDAR for mobile mapping purposes,

11   and AR built a self-driving Toyota Prius.  In 2011, the Debtor sold both 510 and AR to Google.

12   In 2012, while employed by Google, he worked with a startup company, Tyto LiDAR fka Odin

13   Wave ("Tyto"), that created a high-accuracy mapping LiDAR sensor.

14       **C.    Ottomotto, Uber and the Google Arbitration.**

15           In the fall of 2015, while working at Google, Lior Ron and the Debtor decided to form a

16   company, Ottomotto fka 280 Systems ("Otto"), focused on self-driving trucks.  They left Google

17   in January 2016 with several Google colleagues.  Otto was sold to Uber in August 2016.  As part

18   of the sale of Otto, Mr. Ron and the Debtor entered into an Indemnification Agreement with

19   Uber dated April 11, 2016 (the "Indemnification Agreement").  The Indemnification Agreement

20   provides that Uber would indemnify the Debtor for certain claims brought by Google, including

21   claims for breach of fiduciary duty, breach of duty of loyalty, breach of non-solicitation, non-

22   competition, and confidentiality obligations, infringement, and misappropriation of intellectual

23   property.  As discussed below, a dispute regarding the interpretation of the Indemnification

24   Agreement was later the subject of the Uber AVP.

25           Google commenced an arbitration against the Debtor and Mr. Ron on October 28, 2016.

26   Google sought damages relating to the Debtor's involvement with Tyto and the sale of Otto to

27   Uber on multiple theories, including contractual claims based on the allegation that the Debtor

28   and Mr. Ron had violated non-competition and non-solicitation obligations to Google.  On

December 23, 2019, the arbitration panel issued a unanimous final award in Google's favor.   On

March 4, 2020, a California Superior Court confirmed the award and entered a $179,047,998.64

judgment in favor of Google against the Debtor.  On July 6, 2020, Google filed the Google

Claim, which was based on Google's judgment and additional interest, fees and Recoverable

Costs (as such term is defined in Google Claim) thereon.

*///*

**D.**     **The Chapter 11 Filing and the Initiation of the Uber AVP.**

The Debtor commenced this Chapter 11 Case soon after entry of Google's judgment, on

March 4, 2020.  On March 30, 2020, the Debtor filed a motion to compel Uber to engage in

arbitration relating to the Indemnification Agreement.  The arbitration the Debtor sought to

compel was converted into the Uber AVP on July 16, 2020.  Google thereafter filed a motion to

intervene, which was granted in part on September 3, 2020.

**E.**     **The Chapter 11 Case.**

The following is a brief description of certain major events that have occurred during this

Chapter 11 Case.

1.     <u>First Day Filings.</u>

On the Petition Date, the Debtor filed his voluntary petition for relief under Chapter 11 of

the Bankruptcy Code, along with a list of creditors.  He filed his Schedules on March 18, 2020,

and thereafter filed amendments on May 4, May 29, June 26, July 14, and August 17, 2020, and

January 8, 2021.

2.     <u>Employment and Compensation of Professionals and Advisors.</u>

The Debtor has retained the various Professionals in his Chapter 11 Case as follows.  By

order dated June 9, 2020, the Bankruptcy Court authorized the Debtor to retain Keller Benvenutti

Kim LLP as general bankruptcy counsel.  By order dated April 21, 2020, the Bankruptcy Court

authorized the Debtor to retain Goodwin Procter, LLP as special litigation counsel.  By order

dated May 26, 2020, the Bankruptcy Court authorized the Debtor to retain Paladin Management

Group, LLC as financial advisor.  By order dated November 23, 2020, the Bankruptcy Court

authorized the Debtor to retain Julie Jenanyan as a bookkeeper for the Debtor.  By order dated

February 22, 2021, the Bankruptcy Court authorized the Debtor to retain Bayshore Tax & Consulting (fka Holland & Associates CPAs, Inc.) as tax accountants for the Debtor.

In addition to the foregoing, various Entities have been retained to assist Goodwin Procter in connection with the Uber AVP.

///

///

3.     <u>Claims Process and Bar Date.</u>

    a.     <u>Section 341(a) Meeting of Creditors</u>.

On April 7, 2020, the UST presided over an initial Section 341(a) meeting of creditors in the Chapter 11 Case. A further hearing was held, and the meeting of creditors was concluded, on May 15, 2020.

    b.     <u>Bar Date</u>.

The Bankruptcy Court fixed July 6, 2020, as the date by which Creditors had to file Proofs of Claims in this Chapter 11 Case.

    c.     <u>Claims Filed</u>.

Ten claimants filed proofs of Claim in the Chapter 11 Case, and the Debtor scheduled four claims that were not contingent, unliquidated, or disputed or superseded by filed Claims. Of those, two were from taxing authorities and assert Claims of $10,000 (IRS) and $16,996.47 (FTB) in the aggregate. The Debtor believes that two of those Claims (Uber and Husky Finco) have been or will be withdrawn.

Of the remaining Claims, the Google Claim in the approximate amount of $180 million is the largest, followed by the Claims of two law firms: Ramsey & Ehrlich, in the amount of $3.65 million; and Goodwin Procter, in the amount of $481,079. The remaining Filed and scheduled Claims (that are not contingent, unliquidated or disputed) are for less than $250,000 in the aggregate. Certain of the Claims may be subject to dispute or disallowance.

4.     <u>Criminal Proceedings.</u>

On August 15, 2019, prior to the commencement of this Chapter 11 Case, the Debtor was indicted under 18 U.S.C. § 1832(a)(1)-(4) (Theft and Attempted Theft of Trade Secrets) and 18 U.S.C. § 1843 and 2323 (Criminal Forfeiture) in a criminal proceeding brought before the United States District Court for the Northern District of California. On March 19, 2020, the Debtor entered into a plea agreement with the United States Attorney's Office for the Northern District of California. Pursuant to the plea agreement, the ~~Defendant~~Debtor agreed to plead guilty to one count relating to the theft of trade secrets from Google.

On June 16, 2020, the Debtor entered into a stipulation with the United States Attorney's Office requesting that the District Court order the Clerk of the Court for the District Court to accept a check from the Debtor's criminal counsel, Ramsey & Ehrlich, representing restitution in the amount of $756,499.22. The Clerk was to hold the funds in the Clerk's Registry, including interest earned thereon, pending further order of the District Court. The District Court entered an order approving the Stipulation on June 17, 2020. The Bankruptcy Court also entered an order authorizing the payment on August 10, 2020, and the restitution payment was made. On August 4, 2020, the Debtor was sentenced by the District Court to serve eighteen months in prison. His sentence was deferred pending developments in the COVID crisis.

On January 20, 2021, the Debtor was pardoned by the President of the United States.

**F.    The Uber Settlement, the Global Settlement, and Related Issues.**

1.    <u>The Uber Settlement.</u>

After commencement of the Uber AVP in July 2020, the parties (including Google as intervenor) engaged in extended discovery, including expert discovery, and brought numerous procedural and substantive motions. None of those resolved the case and the matter was set for a ten-day trial scheduled to commence on February 14, 2022.

While the trial date was pending, the Parties participated in a mediation settlement conference on January 11, 2022, with Robert A. Meyer acting as a mediator. The parties ultimately reached the Global Settlement, resolving all disputes among the parties. Certain terms of the settlement were confidential. The 9019 Motion, which sought, among other things, to approve the Uber Settlement, was filed on February 10, 2022~~, and was heard on March 3, 2022.~~.

The "Global Settlement" described therein had three components: (a) payment by Uber of the Uber Settlement Payment, including a direct transfer of the Main Uber Payment to Google; (b) concurrent resolution of the creditors' fraudulent transfer assertions involving the funding of the CLAT; and (c) approval of a plan support agreement between Google and the Debtor with provisions regarding filing of, and support for, this Combined Plan and Disclosure Statement.

On March 3, 2022, the Bankruptcy Court heard the motion on the Global Settlement [to supplement after March 3 hearing]

On March 3, 10 and 11, 2022, the Bankruptcy Court considered the 9019 Motion, in which the Debtor sought approval of the Global Settlement. The Bankruptcy Court did not rule on the 9019 Motion at those hearings because it determined it needed to first rule on the tax treatment of the Uber Settlement Payment. *See* discussion at Section III.G.2. below. The Bankruptcy Court continued the 9019 Motion to be heard at the time of the Confirmation Hearing (if the 9019 Motion is not decided without a hearing).

2.      Approval of the CLAT Settlement.

In December 2016, the Debtor established and funded the CLAT with $7 million. Google and Uber have argued that the CLAT transfer was a voidable transaction. Without admitting or denying whether the transfer was voidable, the Debtor, in his capacity as trustee of the CLAT, has agreed on behalf of the CLAT to enter into the CLAT Settlement, which provides for the avoidance of the December transfers to the CLAT. The 9019 Motion sought, among other things, approval of the CLAT Settlement. [to supplement after March 3 hearing]As discussed in the preceding paragraph, if not decided without a hearing the 9019 Motion will be heard at the time of with the Confirmation Hearing.

3.      Administrative Claim of the Debtor's Individual Counsel.

On December 15, 2021, the Debtor filed a motion for authority to pay the Bankruptcy Estate's portion of the fees of Mr. Meyer, the mediator selected in the Uber AVP, and for authority to advance $25,000 to the Debtor's personal counsel. As described above, the mediation process led to the Global Settlement. The Debtor's personal counsel's fees exceeded $25,000, as the Debtor's individual exposure (*e.g.*, as referenced in the Individual Commitment)

was a material part of the overall negotiation.  In recognition of the benefit that these efforts

yielded, the Term Sheet that arose out of the mediation included that the parties thereto "will

stipulate to allowance of an administrative claim of Levandowski, in his personal capacity, for

payment of counsel fees" relating to the settlement in an amount not to exceed $30,000 (which

amount is in addition to the $25,000 previously advanced).

### G.      Certain ~~Federal~~ Income Tax Consequences.

The following discussion is a summary of certain ~~U.S. federal~~ income tax consequences

of the Combined Plan and Disclosure Statement to the Debtor and to Holders of Claims.  This

discussion is based on the Tax Code, Treasury Regulations promulgated and proposed

thereunder, judicial decisions and published administrative rules and pronouncements of the IRS,

all as in effect on the date hereof.

Due to the complexity of certain aspects of the Combined Plan and Disclosure Statement,

the lack of applicable legal precedent, the possibility of changes in the law, the differences in the

nature of the Claims, and each Holder's status and method of accounting and the potential for

disputes as to legal and factual matters with the IRS, the tax consequences described herein are

uncertain. No legal opinions have been requested from counsel with respect to any of the tax

aspects of the Combined Plan and Disclosure Statement and no rulings have been or will be

requested from the IRS with respect to the any of the issues discussed below. Further, legislative,

judicial or administrative changes may occur, perhaps with retroactive effect, which could affect

the accuracy of the statements and conclusions set forth below as well as the tax consequences to

the Debtor and the Holders of Claims.

This discussion does not purport to address all aspects of ~~U.S. federal~~ income taxation

that may be relevant to the Debtor or the Holders of Claims or interests in light of their personal

circumstances, nor does the discussion deal with tax issues with respect to taxpayers subject to

special treatment under the ~~U.S. federal~~ income tax laws (including, for example, insurance

companies, financial institutions, real estate investment trusts, tax-exempt organizations, small

business investment companies, regulated investment companies, foreign taxpayers, persons

whose functional currency is not the U.S. dollar, persons subject to the alternative minimum tax,

and persons holding Claims or Interests as part of a "straddle," "hedge," "constructive sale" or "conversion transaction" with other investments). This discussion does not address the tax consequences to Holders of Claims who did not acquire such Claims at the issue price on original issue.  No aspect of foreign, state, local or estate and gift taxation is addressed.

Each Holder of a Claim or interest is urged to consult with such Holder's tax advisors concerning the federal, state, local, foreign and other tax consequences of the Combined Plan and Disclosure Statement.

///

///

1.      Tax Consequences to the Debtor.

Pursuant to the Tax Code and subject to certain exceptions, a taxpayer generally must recognize income from COD Income to the extent that such taxpayer's indebtedness is discharged for an amount less than the indebtedness' adjusted issue price determined in the manner described below. Generally, the amount of COD Income, subject to certain statutory and judicial exceptions, is the excess of (i) the adjusted issue price of the discharged indebtedness less (ii) the sum of the fair market value (determined at the date of the exchange) of the consideration, if any, given in exchange for such discharged indebtedness.

The recognition of COD Income may be treated differently in the context of a confirmed chapter 11 plan. For example, under the Bankruptcy Exception, instead of recognizing COD Income, the taxpayer is required, pursuant to section 108(b), to reduce certain of that taxpayer's tax attributes to the extent of the amount of COD Income. The attributes of the taxpayer generally are reduced in the following order: net operating losses, general business and minimum tax credit carry forwards, capital loss carry forwards, the basis of the taxpayer's assets and, finally, foreign tax credit carry forwards (collectively, "Tax Attributes").  If the amount of COD Income exceeds the amount of Tax Attributes available to be reduced, the excess still is excluded from income. Pursuant to section 108(b)(4)(A), the reduction of Tax Attributes does not occur until the end of the taxable year after such Tax Attributes have been applied to determine the tax in the year of discharge or, in the case of asset basis reduction, the first day of the taxable year

following the taxable year in which the COD Income is realized. Section l08(e)(2) provides a further exception to the recognition of COD Income upon the discharge of debt, providing that a taxpayer will not recognize COD Income to the extent that the taxpayer's satisfaction of the debt would have given rise to a deduction for ~~United States federal~~ income tax purposes.

~~It should be noted that the Debtor believes that the Uber Settlement Payment is not taxable to the Bankruptcy Estate or that any gain would be offset by losses sustained by the Bankruptcy Estate. As such, the Debtor is not reserving for taxes on the Uber Settlement Payment. The Debtor will request the Bankruptcy Court to make findings regarding the tax treatment of the Uber Settlement Payment.~~

2.      Tax Treatment of the Uber Settlement Payment.

On March 18, 2022, the Debtor filed a [Motion to (I) Determine Tax Effect of Settlement Payment or, in the Alternative, (II) Find the Debtor's Plan Feasible Without Reserving for Taxes Thereon] [Docket No. XXX] (the "Tax Determination Motion"). The Tax Determination Motion requests that the Bankruptcy Court find that the Uber Settlement Payment is not taxable to the Debtor or his estate (or will not otherwise result in net taxation) or, in the alternative, that the Debtor need not reserve funds for the IRS and California taxing authorities under the Plan. A hearing on the Tax Determination Motion has been set for April 21, 2022, at the same time as the Confirmation Hearing, and the IRS and California taxing authorities must oppose the Tax Determination Motion no later than April 1, 2022. If the Court does not grant the Tax Determination Motion, or otherwise finds that the Debtor or his estate may have significant tax liability in connection with the Uber Settlement Payment, the Debtor may not be able to establish that the Plan is feasible at the Confirmation Hearing. *See* Section V.C. below ("Requirements for Confirmation").

~~2.~~3.    Tax Consequences to Creditors.

Generally, a Holder of a Claim should in most, but not all, circumstances recognize gain or loss equal to the difference between the "amount realized" by such Holder in exchange for its Claim and such Holder's adjusted tax basis in the Claim. The "amount realized" is equal to the sum of the cash and the fair market value of any other consideration received under a plan of

reorganization in respect of a Holder's Claim. The tax basis of a Holder in a Claim will generally be equal to the Holder's cost. To the extent applicable, the character of any recognized gain or loss (*e.g*., ordinary income, or short-term or long-term capital gain or loss) will depend upon the status of the Holder, the nature of the Claim in the Holder's hands, the purpose and circumstances of its acquisition, the Holder's holding period of the Claim, and the extent to which the Holder previously claimed a deduction for the worthlessness of all or a portion of the Claim.  Generally, if the Claim is a capital asset in the Holder's hands, any gain or loss realized generally will be characterized as capital gain or loss and will constitute long-term capital gain or loss if the Holder has held such Claim for more than one year.

A Holder who received Cash (or potentially other consideration) in satisfaction of its Claim may recognize ordinary income or loss to the extent that any portion of such consideration is characterized as accrued interest. A Holder who did not previously include in income accrued but unpaid interest attributable to its Claim, and who receives a distribution on account of its Claim pursuant to the Combined Plan and Disclosure Statement, will be treated as having received interest income to the extent that any consideration received is characterized for ~~United States federal~~ income tax purposes as interest, regardless of whether such Holder realizes an overall gain or loss as a result of surrendering its Claim. A Holder who previously included in its income accrued but unpaid interest attributable to its Claim should recognize an ordinary loss to the extent that such accrued but unpaid interest is not satisfied, regardless of whether such Holder realizes an overall gain or loss as a result of the distribution it may receive under the Combined Plan and Disclosure Statement on account of its Claim.

~~3.~~4.    Importance of Obtaining Professional Tax Assistance.

The foregoing discussion is intended only as a summary of certain income tax consequences of the Combined Plan and Disclosure Statement.  The above discussion is for informational purposes only and is not tax advice.  The tax consequences are in many cases uncertain and may vary depending on a Claim Holder's particular circumstances.  Accordingly, Claim Holders are urged to consult their tax advisors about the federal, state and local, and

applicable foreign income and other tax consequences of the Combined Plan and Disclosure Statement.

///

///

**H.    Certain Risk Factors to Be Considered.**

Prior to voting on the Combined Plan and Disclosure Statement, each holder of a Claim entitled to vote should consider the risk factors described below, as well as all of the information contained in this Combined Plan and Disclosure Statement, including the Exhibits hereto. These risk factors should not, however, be regarded as constituting the only risks involved in connection with the Combined Plan and Disclosure Statement and its implementation.

1.    Risk of Non-Confirmation of Combined Plan and Disclosure Statement.

Although the Debtor believes the Combined Plan and Disclosure Statement will satisfy all requirements necessary for confirmation by the Bankruptcy Court, there can be no assurance that the Bankruptcy Court will reach the same conclusion.  Moreover, there can be no assurance that modifications to the Combined Plan and Disclosure Statement will not be required for confirmation or that such modifications would not necessitate a re-solicitation of votes.

///

2.    Delays of Confirmation and/or Effective Date.

Any delay in confirmation and effectiveness of the Combined Plan and Disclosure Statement could result in, among other things, increased Administrative Expense Claims. These or any other negative effects of delays in confirmation or effectiveness of the Combined Plan and Disclosure Statement could put at risk the Global Settlement and render approval of the Combined Plan and Disclosure Statement by the Bankruptcy Court impossible.

3.    Alternative Plan or Conversion.

The Combined Plan and Disclosure Statement is a significant part of the Global Settlement.  If the Combined Plan and Disclosure Statement cannot be confirmed, it is unclear where the Debtor in Possession would remain in control of the Chapter 11 Case or whether the Chapter 11 Case would be converted to a case under Chapter 7 of the Bankruptcy Code.  It is

also possible that the Debtor, Google, or any other party in interest would attempt to formulate a different plan.  In all cases, however, the additional Administrative Expenses that would be incurred would be significant; and disputes that were resolved with the Global Settlement would still require resolution, likely through litigation.  Accordingly, the Debtor and Debtor in ///

Possession believes that the Combined Plan and Disclosure Statement enables creditors to realize the best return under the circumstances.

## IV.  SUMMARY OF DEBTOR'S ASSETS; SUMMARY OF TREATMENT OF CLAIMS AND ESTIMATED RECOVERIES

### A.  Summary of Assets and Estimated Recoveries by Class.

The chart attached hereto as <u>Exhibit A</u> provides a summary of the Debtor's assets, the estimated value of such assets, and the realized value of such assets that are available to the Debtor and the Residual Trust.  It also provides a summary of treatment of each Class of Claims (other than Administrative and Priority Tax Claims) and an estimate of the recoveries of each class. The treatment provided in this chart is for information purposes only and is qualified in its entirety by Sections VI and VII of the Combined Plan and Disclosure Statement.

///

///

### B.  Liquidation under Chapter 7 of the Bankruptcy Code.

The Debtor, with the assistance of his financial advisors, has prepared the Liquidation Analysis attached as <u>Exhibit A</u> hereto for the purpose of evaluating whether the Combined Plan and Disclosure Statement meets the best interests test under section 1129(a)(7) of the Bankruptcy Code.  The Liquidation Analysis has been prepared assuming the Debtor's current Chapter 11 Case converted to a Chapter 7 case under the Bankruptcy Code and the assets of the Bankruptcy Estate were liquidated.  A Chapter 7 trustee would be appointed or elected to commence the liquidation of those assets.

As indicated in the Liquidation Analysis, there is tremendous uncertainty with respect to how, and whether, the claims at issue in the Uber AVP would be resolved in favor of the

Bankruptcy Estate. While there is no assurance that there would be any recovery (and the Liquidation Analysis assumes that the recovery would be limited to $1 million and the waiver of the Uber claim), it is highly unlikely that a Chapter 7 trustee could get a resolution as favorable as included in the Global Settlement. Moreover, the value of certain of the Debtor's assets, particularly the Litigation Claims, and the costs that would be associated with the collection of those assets. are uncertain. Because of the Individual Commitment, the Debtor believes that the Holder of the Google Claim will receive more than it would have received in a Chapter 7 liquidation. Similarly, while it is possible that the Residual Trust will ultimately return Distributions in excess thereof, the Liquidation Analysis indicates that under all circumstances Holders of Allowed Class 3 General Unsecured Claims will receive more than they would otherwise receive in a Chapter 7 liquidation.

## V. CONFIRMATION AND VOTING PROCEDURES

### A. Confirmation Hearing.

A hearing before the Bankruptcy Judge has been scheduled for [Date/Time],April 21, 2022, at 11:00 am Pacific time, at the United States Bankruptcy Court, [virtual via video or other attendance information],teleconference to consider (i) approval of the Combined Plan and Disclosure Statement as providing adequate information pursuant to section 1125 of the Bankruptcy Code and (ii) confirmation of the Combined Plan and Disclosure Statement pursuant to section 1129 of the Bankruptcy Code. The Confirmation Hearing may be adjourned from time to time by the Bankruptcy Court without further notice, except for an announcement of the adjourned date made at the Confirmation Hearing.

### B. Procedure for Objections.

Any objection to approval or confirmation of the Combined Plan and Disclosure Statement must be made in writing and specify in detail the name and address of the objector, all grounds for the objection and the amount of the Claim held by the objector. Any such objection must be filed with the Bankruptcy Court and served on the Debtor's counsel and all parties who have filed a notice of appearance by 5by April 15, 2022 at 4:00 p.m. prevailing [Date/Time].pm

Pacific time.  If an objection is not timely filed and served, it may not be considered by the Bankruptcy Court.

**C.**     **Requirements for Confirmation.**

The Bankruptcy Court will confirm the Combined Plan and Disclosure Statement only if it meets all the applicable requirements of section 1129 of the Bankruptcy Code. Among the requirements for confirmation in this Chapter 11 Case is that the Combined Plan and Disclosure Statement be: (i) accepted by all impaired classes of Claims and interests or, if rejected by an impaired class, that the Combined Plan and Disclosure Statement "does not discriminate unfairly" against and is "fair and equitable" with respect to such class; and (ii) feasible. The Bankruptcy Court must also find that:

1.     The Combined Plan and Disclosure Statement has classified claims and interests in a permissible manner;

2.     The Combined Plan and Disclosure Statement complies with the technical requirements of Chapter 11 of the Bankruptcy Code; and

3.     The Combined Plan and Disclosure Statement has been proposed in good faith.

**D.**     **Classification of Claims and Interests.**

Section 1122 of the Bankruptcy Code requires the Combined Plan and Disclosure Statement to place a claim or equity interest in a particular class only if such claim or equity interest is substantially similar to the other claims or equity interests in such class. The Combined Plan and Disclosure Statement creates separate classes to deal respectively with secured claims, unsecured claims and equity interests. The Debtor believes that the Combined Plan and Disclosure Statement's classifications place substantially similar claims or equity interests in the same class and thus, meet the requirements of section 1122 of the Bankruptcy Code.

The Google Claim has been separately classified from General Unsecured Claims because Google, unlike Holders of other Claims, has retained and asserted its right to obtain a determination that the Debtor's obligations to Google are not dischargeable pursuant to section 523 of the Bankruptcy Code.  Thus, although its treatment is generally *pari passu* with

Holders of General Unsecured Claims, it will also receive the Individual Commitment from the Debtor while Holders of Class 3 General Unsecured Claims will not. On the other hand, the Holder of the Google Claim (1) does not have the option of receiving an immediate cash payment of 50% of the Allowed amount of its Claim; and (2) will limit its recovery from the Residual Trust to $30 million. Neither of the foregoing applies to Holders of Class 3 General Unsecured Claims.

### E. Impaired Claims or Interests.

Pursuant to section 1126 of the Bankruptcy Code, only the Holders of Claims in Classes "Impaired" by the Combined Plan and Disclosure Statement and receiving a payment or Distribution under the Combined Plan and Disclosure Statement may vote on the Combined Plan and Disclosure Statement. Pursuant to section 1124 of the Bankruptcy Code, a Class of Claims may be "Impaired" if the Combined Plan and Disclosure Statement alters the legal, equitable or contractual rights of the Holders of such Claims or Interests treated in such Class. Holders of Claims not Impaired by the Combined Plan and Disclosure Statement are deemed to accept the Combined Plan and Disclosure Statement and do not have the right to vote on the Combined Plan and Disclosure Statement. Holders of Claims in any Class that will not receive any payment or distribution or retain any property pursuant to the Combined Plan and Disclosure Statement are deemed to reject the Combined Plan and Disclosure Statement and do not have the right to vote.

///

///

### F. Eligibility to Vote on the Combined Plan and Disclosure Statement.

Unless otherwise ordered by the Bankruptcy Court, only Holders of Allowed Claims in Classes 2 and 3 may vote on the Combined Plan and Disclosure Statement. In order to vote on the Combined Plan and Disclosure Statement, you must hold a Claim in Classes 2 or 3 and have timely filed a proof of Claim or have a Claim that is identified on the Schedules that is not listed as disputed, unliquidated or contingent, or be the holder of a Claim that has been temporarily Allowed for voting purposes only under Bankruptcy Rule 3018(a).

**G. Solicitation Notice.**

All parties in interest have received a notice containing (a) notice of the Confirmation Hearing; (b) the email address, hrobertsdonnelly@kbkllp.com, at which parties in interest may request copies of the Combined Plan and Disclosure Statement, ballot, and related documents; and (c) a telephone number, (415) 496-6723, through which parties in interest can request to obtain paper copies of the Combined Plan and Disclosure Statement, ballot, and related documents. To ensure your vote is counted you must complete your ballot by (i) indicating your decision either to accept or reject the Combined Plan and Disclosure Statement in the boxes provided on the ballot, and (ii) signing and returning the ballot to the address set forth on the ballot and below.

*///*

*///*

**H. Procedure/Voting Deadlines.**

In order for your ballot to count, you must either complete, date, sign and properly deliver a ballot to the Balloting Agent at the following address:

Keller Benvenutti Kim LLP
650 California Street, 19th Floor
San Francisco, CA 94108
Attn: Hadley Roberts-Donnelly
Email: hrobertsdonnelly@kbkllp.com

Ballots may be submitted (i) electronically in portable document format, or "pdf", or (ii) physically, by mail or by overnight delivery. The Balloting Agent must receive such ballots on or before [Date], April 15, 2022, at 4:00 p.m. (prevailing Pacific Time)time (the "Voting Deadline"). Except as otherwise ordered by the Bankruptcy Court, you may not change your vote once a ballot is delivered.

Any ballot that is timely submitted electronically or received physically, that contains sufficient information to permit the identification of the claimant and that is cast as an acceptance or rejection of the Combined Plan and Disclosure Statement will be counted and will be deemed to be cast as an acceptance or rejection, as the case may be, of the Combined Plan and Disclosure Statement. If more than one Ballot is received from any given claimant, the Ballot

stating the lower claim amount shall be counted. If the Ballots are substantively identical, the first-received Ballot shall be used.

The following ballots will not be counted or considered for any purpose in determining whether the Combined Plan and Disclosure Statement has been accepted or rejected:

1. any ballot submitted electronically or received physically after the Voting Deadline, unless the Court grants an extension of the Voting Deadline with respect to such ballot;

2. any ballot that is illegible or contains insufficient information to permit the identification of the claimant;

3. any ballot cast by a person or entity that does not hold a Claim in a class that is entitled to vote to accept or reject the Combined Plan and Disclosure Statement;

4. any ballot cast for a Claim designated as unliquidated, contingent or disputed or as zero or unknown in amount and for which no Rule 3018(a) motion has been filed by the Rule 3018(a) motion deadline;

5. any ballot timely received that is cast in a manner that indicates neither acceptance nor rejection of the Combined Plan and Disclosure Statement or that indicates both acceptance and rejection of the Combined Plan and Disclosure Statement; or

6. any unsigned ballot; or

6.7. Any ballot submitted by an entity other than the claimant or its agent of record.

**I.      Acceptance of the Combined Plan and Disclosure Statement.**

As a Creditor, your acceptance of the Combined Plan and Disclosure Statement is important. In order for the Combined Plan and Disclosure Statement to be accepted by an impaired Class of Claims, a majority in number (*i.e.*, more than half) and two-thirds in dollar amount of the Claims voting (of each Impaired Class of Claims) must vote to accept the Combined Plan and Disclosure Statement. At least one impaired Class of Creditors, excluding the votes of insiders, must actually vote to accept the Combined Plan and Disclosure Statement. The Debtor urges that you vote to accept the Combined Plan and Disclosure Statement. You are urged to complete, date, sign and promptly mail the ballot attached to the notice. Please be sure

to complete the ballot properly and legibly identify the exact amount of your Claim and the name of the creditor.

## VI.    TREATMENT OF UNCLASSIFIED CLAIMS

### A.    Administrative Expense Claims.

Except to the extent that any entity entitled to payment of an Allowed Administrative Expense Claim agrees to a different treatment, each Holder of an Allowed Administrative Expense Claim shall receive Cash in an amount equal to such Allowed Administrative Expense Claim on the Effective Date or seven (7) Business Days after the entry of a Final Order Allowing such Administrative Expense Claim, or as soon thereafter as is practicable.

### B.    Professional Fee Claims.

Except to the extent that any entity entitled to payment of a Professional Fee Claim agrees to a different treatment, each Holder of a Professional Fee Claim shall receive Cash in an amount equal to such Professional Fee Claim on the Effective Date or seven (7) Business Days after the entry of a Final Order Allowing such Professional Expense Claim, or as soon thereafter as is practicable.

### C.    Priority Tax Claims.

Each Holder of an Allowed Priority Tax Claim, if any, shall receive in full satisfaction of such Allowed Priority Tax Claim (a) Cash equal to the unpaid portion of such Allowed Priority Tax Claim on the later of the Effective Date and thirty (30) calendar days following the date on which such Priority Tax Claim becomes an Allowed Priority Tax Claim; (b) in regular installment payments in Cash over a period not exceeding five (5) years after the Petition Date, plus interest on the unpaid portion thereof at the rate determined under applicable nonbankruptcy law as of the calendar month in which the Effective Date occurs (provided that such election shall be without prejudice to the right to prepay any such Allowed Priority Tax Claim in full or in part without penalty); or (c) such other treatment as to which the Holder of an Allowed Priority Tax Claim and the Trust shall have agreed upon in writing; provided, however, that any Claim or demand for payment of a penalty (other than a penalty of the type specified in section 507(a)(8)(G) of the Bankruptcy Code) shall be disallowed pursuant to this Combined Plan and

Disclosure Statement and the Holder of an Allowed Priority Tax Claim shall not assess or attempt to collect such penalty from the Debtor or his Estate.

**D.      DIP Financing Claim.**

Except to the extent that any entity entitled to payment of an Allowed DIP Financing Claim agrees to a different treatment, each Holder of an Allowed DIP Financing Claim shall receive Cash in an amount equal to such Allowed DIP Financing Claim on the Effective Date or seven (7) Business Days after the entry of a Final Order Allowing such DIP Financing Claim, or as soon thereafter as is practicable.

**E.      Payment of Statutory Fees.**

All fees payable pursuant to section 1930 of title 28 of the United States Code, to the extent unpaid through the Confirmation Date, shall be paid in Cash within seven (7) Business Days after the Confirmation Date. From and after the Confirmation Date through the closing of the Chapter 11 Case, all fees payable pursuant to section 1930 of title 28 of the United States Code, plus any interest under 37 U.S.C. § 3717, shall be paid by the Debtor in Possession or the Trustee.

**VII.      CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS**

Certain Claims are classified for all purposes, including voting, confirmation and distribution pursuant to the Combined Plan and Disclosure Statement, as follows:

///

///

///

///

///

| | | |
|---|---|---|
| (Unclassified) – Administrative Expense Claims | Unimpaired | Not Entitled to Vote |
| (Unclassified) – Professional Fee Claims | Unimpaired | Not Entitled to Vote |
| (Unclassified) – Priority Tax Claims | Unimpaired | Not Entitled to Vote |
| (Unclassified) – DIP Financing Claim | Unimpaired | Not Entitled to Vote |
| Class 1 – Other Priority Claims | Unimpaired | Not Entitled to Vote |
| Class 2 – Google Claim | Impaired | Entitled to Vote |
| Class 3 – General Unsecured Claims | Impaired | Entitled to Vote |
| Class 4 – Levandowski Interest | Unimpaired | Not Entitled to Vote |

## VIII.   TREATMENT OF CLAIMS AND EQUITY INTERESTS

### A.   Treatment of Claims.

1.   <u>Class 1 — Other Priority Claims</u>

a.   Classification.  Class 1 consists of Other Priority Claims against the Debtor pursuant to section 507 of the Bankruptcy Code.

b.   Impairment and Voting.  Class 1 is Unimpaired by the Combined Plan and Disclosure Statement.  ~~The~~ Holders of Class 1 Claims are conclusively presumed to have accepted the Combined Plan and Disclosure Statement and, therefore, are not entitled to vote to accept or reject the Combined Plan and Disclosure Statement.

c.   Treatment.  Holders of Allowed Class 1 Claims shall receive payment in full in Cash on the later of the Effective Date or seven (7) Business Days after such Class 1 Claim is Allowed, or as soon thereafter as is practicable.

///

///

2.   <u>Class 2 — Google Claim</u>

a.   Classification.  Class 2 consists of all Claims asserted by Google, including the Google Claim.

b.      Impairment and Voting.  Class 2 is Impaired by the Combined Plan and Disclosure Statement.  The Holder of the Class 2 Claim is entitled to vote to accept or reject the Combined Plan and Disclosure Statement.

c.      Treatment.   The Holder of the Google Claim shall receive (a) the Main Uber Payment, which shall be received directly from Uber upon Bankruptcy Court approval of the Uber Settlement, plus (b) its share, to be distributed Pro Rata with Distributions to the Holders of the Class 3 General Unsecured Claims, of net proceeds from the Residual Trust up to the amount of $30 million.  In addition, the holder of the Google Claim shall receive and be the sole beneficiary of the Individual Commitment. The full and comprehensive documentation relating to the Individual Commitment is contained in the Plan Supplement.

3.      Class 3 — General Unsecured Claims

a.      Classification.  Class 3 consists of General Unsecured Claims.

b.      Impairment and Voting.  Class 3 is Impaired by the Combined Plan and Disclosure Statement.  Holders of Class 3 Claims are entitled to vote to accept or reject the Combined Plan and Disclosure Statement.

c.      Treatment.  Unless Holders of Allowed General Unsecured Claims shall elect to receive either:

(i)      (a) an equalizing Cash payment such that the recovery on such Holder's Allowed Claim is in the same proportion as the Main Uber Payment is to the Google Claim, plus (b) their shares, to be distributed Pro Rata with Distributions to the Holder of the Class 2 Google Claim, of net proceeds from the Residual Trust.  If the proceeds paid from the Residual Trust to the holder of the Class 2 Google Claim exceeds $30 million, all additional net (after payment of costs and expenses) proceeds from the Residual Trust shall be paid to Holders of Allowed General Unsecured Claims until such claims are paid in full, without interest; or

(ii)    payment of 50% of the Allowed amount of such Holder's Claim in Cash on the Effective Date.

///

A Holder of an Allowed General Unsecured Claim that does not elect its treatment shall be deemed to have elected option (ii) above.

4.    Class 4 — Levandowski Interest

a.    Classification.  Class 4 consists of the Debtor's interest in his Bankruptcy Estate.

b.    Impairment and Voting.  Class 4 is Unimpaired by the Combined Plan and Disclosure Statement.  The Holder of the Class 4 interest is conclusively presumed to have accepted the Combined Plan and Disclosure Statement and, therefore, is not entitled to vote to accept or reject the Combined Plan and Disclosure Statement.

c.    Treatment.  The Holder of the Class 4 interest shall receive net proceeds received from the Residual Trust if and after all required ~~distributions~~Distributions are made to holders of Allowed Claims in Classes 2 and 3.

**B.    Modification of Treatment of Claims and interest.**

The Debtor reserves the right to modify the treatment of any Allowed Claim or interest in any manner adverse only to the Holder of such Claim or interest at any time after the Effective Date upon the consent of the Holder of the Claim or interest whose Allowed Claim or interest, as the case may be, is being adversely affected.

**IX.    PROVISIONS REGARDING THE RESIDUAL TRUST**

**A.    Establishment of the Residual Trust.**

All Trust Assets shall be transferred to the Residual Trust on the Effective Date for administration by the Trustee.  The Debtor shall reasonably and in good faith cooperate in all respects to pursue any and all Litigation Claims.  The Residual Trust and the Trustee shall use

commercially reasonable efforts to liquidate all assets in the Residual Trust within three (3) years after the Effective Date, except as provided in the next paragraph. The Trustee shall be authorized to retain counsel and advisors in his or her business judgment in accordance with the Residual Trust documents, without the need for further court approval. The Residual Trust shall initially be funded with all assets of the Bankruptcy Estate, after the payment of all unclassified and Classified Claims, in an amount not less than $300,000. None of the assets and claims in the Residual Trust, including the Pronto SAFE note, can be revised, modified, directed or controlled by the Debtor.

The Debtor shall be permitted to direct the Trustee not to prosecute or take, as the case may be, any Deferred Action unless (1) the Individual Commitment has not been fully satisfied within three years after the Effective Date, or (2) the Individual Commitment is otherwise in default. In either case, this limitation is conditioned upon the initial transferee that is a potential defendant to any Litigation Claim having entered into a valid tolling agreement that remains enforceable by the Trustee for not less than sixty (60) days beyond the date any action has been deferred by an instruction by the Debtor as provided herein. For clarity, any direction the Debtor gives with respect to any Deferred Action shall be void at such time as the Trustee has fewer than sixty (60) days to bring an action, regardless of when the Debtor gives his direction. Notwithstanding the foregoing, if the Individual Commitment is in default, the direction is deemed revoked and the Trustee can pursue, liquidate and/or act on the Deferred Actions (including sale of the Pronto SAFE ~~notes~~note). The Trustee shall be permitted to sell any rights relating to the Deferred Actions to the Debtor, subject to his duties as described in the Residual Trust.

The Debtor shall turn over to the Trustee all documents and information related to Deferred Actions. The Trustee will provide a litigation hold notice to parties that may have liability on Deferred Actions to preserve all documents and information related to such Deferred Action for 5 years.

///

///

**B.      Appointment of the Trustee.**

On the Effective Date, the Trustee shall be appointed and thereafter serve in accordance with this Combined Plan and Disclosure Statement and the governing document of the Residual Trust.  The Trustee shall be selected by the Debtor and Google (or, in the event they cannot agree, the Court shall select an independent qualified individual), and can be replaced, but only if the Debtor and Google mutually agree on the replacement in advance.  The Trustee shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court.

**C.      Rights and Powers of the Trustee.**

The Trustee shall have the powers and duties set forth in the trust agreement or other governing document relating to the Residual Trust that will be Filed with the Plan Supplement. Among other things, that document will empower the Trustee to (i) effect all actions and execute all agreements, instruments and other documents necessary to perform its duties under the Combined Plan and Disclosure Statement, (ii) establish, as necessary, disbursement accounts for the deposit and distribution of all amounts distributed under the Combined Plan and Disclosure Statement; (iii) make Distributions in accordance with the Combined Plan and Disclosure Statement, (iv) object to Claims, as appropriate; (v) employ and compensate professionals to represent it with respect to its responsibilities, (vi) assert the Litigation Claims and all rights of setoff and other legal or equitable defenses, and (vii) exercise such other powers as may be vested in the Trustee by order of the Bankruptcy Court, pursuant to the Combined Plan and Disclosure Statement, or as deemed by the Trustee to be necessary and proper to implement the provisions hereof. The Trustee may take any and all actions which he or she deems reasonably necessary or appropriate to defend against any Claim, including, without limitation, the right to: (a) exercise any and all judgment and discretion with respect to the manner in which to defend against or settle any Claim, including, without limitation, the retention of professionals, experts and consultants; and (b) enter into a settlement agreement or agreements, provided that such settlement is entered into by the Trustee in good faith.

*##*

**D. Post Confirmation Date Expenses of the Trustee.**

The Trustee shall receive reasonable compensation for services rendered pursuant to the Combined Plan and Disclosure Statement without further Court Order. In addition, except as otherwise ordered by the Bankruptcy Court, the amount of reasonable fees and expenses incurred by the Trustee on or after the Effective Date (including, without limitation, reasonable attorney and professional fees and expenses) shall be paid without further Court Order.

///

**X. PROVISIONS GOVERNING DISTRIBUTIONS UNDER THE COMBINED PLAN AND DISCLOSURE STATEMENT**

**A. Method of Payment.**

Unless otherwise expressly agreed, in writing, all Cash payments to be made pursuant to the Combined Plan and Disclosure Statement shall be made by (1) check or automated clearing house (ACH) draft drawn on a domestic bank, or (2) electronic wire.

**B. Objections to and Resolution of Claims.**

The Trustee shall have the right to file objections to Claims after the Effective Date. All objections shall be litigated to entry of a Final Order; provided, however, that only the Trustee shall have the authority to compromise, settle, otherwise resolve or withdraw any objections, without approval of the Bankruptcy Court.

**C. Claims Objection Deadline.**

The Trustee, and any other party in interest to the extent permitted pursuant to section 502(a) of the Bankruptcy Code, shall file and serve any objection to any Claims no later than the Claims Objection Deadline; provided, however, the Claims Objection Deadline may be extended by the Bankruptcy Court from time to time upon notice of motion by the Trustee for cause.

**D. No Distribution Pending Allowance.**

Notwithstanding any other provision of the Combined Plan and Disclosure Statement, no payment or Distribution of Cash or other property shall be made with respect to any portion of a

Disputed Claim unless and until all objections to such Claim are resolved by Final Order or as otherwise permitted by this Combined Plan and Disclosure Statement.

**E.      Escrow of Cash Distributions.**

On any date that Distributions are to be made under the terms of the Combined Plan and Disclosure Statement, the Trustee shall deposit in one or more segregated accounts, Cash or property equal to 100% of the Cash or property that would be distributed on such date on account of Disputed Claims as if each such Disputed Claim were an Allowed Claim but for the pendency of a dispute with respect thereto. The Trustee shall also segregate any interest, dividends or proceeds of such Cash. Such Cash together with any interest, dividends or proceeds thereof, shall be held in the Residual Trust for the benefit of the Holders of all such Disputed Claims pending determination of their entitlement thereto.  If a Disputed Claim is disallowed, any Cash or property segregated on account of such Disputed Claim shall be returned to the Residual Trust within seven (7) Business Days after a Final Order disallowing such Disputed Claim.

**F.      Distribution After Allowance.**

Within the later of (i) seven (7) Business Days after any such Claim becomes an Allowed Claim and (ii) thirty (30) days after the expiration of the Claims Objection Deadline, the Trustee shall distribute all Cash or other property, including any interest, dividends or proceeds thereof, to which a Holder of an Allowed Claim is then entitled.

**G.      Investment of Segregated Cash and Property.**

To the extent practicable, the Trustee may invest any Cash, or property segregated on account of a Disputed Claim, undeliverable Distribution, or any proceeds thereof (i) in a manner that will yield a reasonable net return taking into account the safety of the investment or (ii) in any manner permitted by section 345 of the Bankruptcy Code; provided, however, that the Trustee shall be under no obligation to so invest such Cash or proceeds and shall have no liability to any party for any investment made or any omission to invest such Cash, other property or proceeds.

**H.      Delivery of Distributions.**

Except as provided herein, Distributions to Holders of Allowed Claims shall be made: (1) at the addresses set forth on the respective Proofs of Claim Filed by such holders; (2) at the addresses set forth in any written notices of address changes delivered to the Trustee after the date of any related Proof of Claim; or (3) at the address reflected in the Schedules if no Proof of Claim is filed and the Trustee has not received a written notice of a change of address.

1.      Undeliverable Distributions.  If the Distribution to the Holder of any Claim is returned to the Trustee as undeliverable, no further Distribution shall be made to such Holder unless and until the Trustee is notified in writing of such Holder's then-current address. Undeliverable Distributions shall remain in the possession of the Trustee until the earlier of (i) such time as a Distribution becomes deliverable or (ii) such undeliverable Distribution becomes an Unclaimed Distribution.

2.      Until such time as an undeliverable distribution becomes an unclaimed distribution pursuant to this Combined Plan and Disclosure Statement, within 30 days after the end of each calendar quarter following the Effective Date, or upon such other interval as the Bankruptcy Court may order, but in no event less frequently than annually, the Trustee shall make distributions of all Cash and property that has become deliverable during the preceding quarter. Each such Distribution shall include the net return yielded from the investment of any undeliverable Cash, from the date such distribution would have been due had it then been deliverable to the date that such distribution becomes deliverable.

3.      The Trustee shall make reasonable efforts to update or correct contact information for recipients of undeliverable Distributions, provided, however, nothing contained in the Combined Plan and Disclosure Statement shall require the Trustee to locate any Holder or an Allowed Claim.

**I.      Unclaimed Distributions.**

Any Cash or other property to be distributed under the Combined Plan and Disclosure Statement shall revert to the Residual Trust if it is not claimed by the Entity on or before the Unclaimed Distribution Deadline, and all claims of any Entity to such Unclaimed Distributions shall be discharged and forever barred. If such Cash or other property is not claimed on or before

the Unclaimed Distribution Deadline, the Distribution that must be made to such Entity under the Combined Plan and Disclosure Statement shall be deemed to be reduced to zero. Any Unclaimed Distributions to Holders of General Unsecured Claims shall be donated to Charity if the amount of the Unclaimed Distribution is insufficient to justify the time and expense of effectuating additional Distributions.

**J.    Set-Off.**

The Trustee retains the right to reduce any Claim by way of setoff in accordance with the Bankruptcy Estate's books and records.

**XI.    IMPLEMENTATION AND EFFECT OF CONFIRMATION OF COMBINED PLAN AND DISCLOSURE STATEMENT**

**A.    Means for Implementation of the Combined Plan and Disclosure Statement.**

In addition to the provisions set forth elsewhere in the Combined Plan and Disclosure Statement, the following shall constitute the means for implementation of the Combined Plan and Disclosure Statement:

1.    Funding of Liabilities and Distributions. The Trustee shall pay from its share of the Uber Settlement Payment, the proceeds of the CLAT Settlement, and Cash on hand, the payments required hereunder, including without limitation (i) the wind-down costs associated with fixing claims and making Distributions to Creditors, (ii) all Allowed Administrative Expense Claims, including Allowed Professional Fee Claims and Allowed DIP Financing Claims, through confirmation of this Combined Plan and Disclosure Statement; (iii) all Allowed Priority Tax Claims and Other Priority Claims and (iv) Distributions to Holders of General Unsecured Claims.

2.    Authorized Action; Effectuating Documents; Further Transactions.  On the Effective Date, all matters and actions provided for under the Combined Plan and Disclosure Statement that would otherwise require approval of the Debtor in Possession or the Trustee shall be deemed to have been authorized and effective in all respects as provided herein and shall be taken without any requirement for further action by the Debtor in Possession or the Trustee. The Debtor is authorized to execute, deliver, file or record such contracts, instruments, releases, and

other agreements or documents and to take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Combined Plan and Disclosure Statement.

## // effectuate and further evidence the terms and conditions of the Combined Plan and Disclosure Statement.

## XII. DISCHARGE, INJUNCTION, EXCULPATION AND RELEASES

### A. Discharge.

Except for the Individual Commitment and the Debtor's obligations under this Combined Plan and Disclosure terms Statement and the Confirmation Order, which shall survive and be enforceable, the Debtor shall be discharged of all Claims that have been or could have been asserted as of the Effective Date pursuant to sections 108 and 727(b) of the Bankruptcy Code. Consistent therewith, the Confirmation Order shall confirm that section 1115 of the Bankruptcy Code shall have no effect after the Effective Date, such that property the Debtor acquires, and earnings that the Debtor accrues, after the Effective Date shall be property of the Debtor in his individual capacity and shall not be included in or available to the Bankruptcy Estate or the Residual Trust.

### B. Injunction.

All injunctions or stays provided for in the Chapter 11 Case under sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date with respect to the Residual Trust. Except as otherwise provided in the Combined Plan and Disclosure Statement or to the extent necessary to enforce the terms and conditions of the Combined Plan and Disclosure Statement, the Confirmation Order or a separate Order of the Bankruptcy Court, all Entities who have held, hold or may hold Claims against or interests in the Bankruptcy Estate shall be permanently enjoined from taking any of the following actions against the Debtor, the Debtor in Possession, the Bankruptcy Estate, the Residual Trust, or any of their property on account of any such claims or interests: (1) commencing or continuing, in any manner or in any place, any action or other

proceeding; (2) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree or order; (3) creating, perfecting, or enforcing any lien or encumbrance; (4) asserting a setoff, right of subrogation, or recoupment of any kind against any debt, liability, or obligation due to the Debtor, except as part of the claims resolution process set forth in Section X of this Combined Plan and Disclosure Statement; and (5) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Combined Plan and Disclosure Statement; provided, however, that such Entities shall not be precluded from exercising their rights pursuant to and consistent with the terms of the Combined Plan and Disclosure Statement or the Confirmation Order.

///

///

## C.    Exculpation.

Except as otherwise specifically provided in the Combined Plan and Disclosure Statement, the Debtor in Possession, and each of his respective advisors, attorneys, representatives, financial advisors, agents or other professionals and each of such parties' successors and assigns, solely in their capacities as such, shall not have or incur any liability for any ~~claim,~~ action, proceeding, cause of action, avoidance action, suit, account, controversy, agreement, promise, right to legal remedies, right to equitable remedies, right to payment, or claim (as defined in Bankruptcy Code section 101(5)), whether known, unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured and whether asserted or assertable directly or derivatively, in law, equity, or otherwise to one another or to any claimholder or interest holder, or any other party in interest, or any of their respective agents, employees, representatives, advisors, attorneys, or affiliates, or any of their successors or assigns, for any act or omission originating or occurring on or after the Petition Date through and including the Effective Date in connection with, relating to, or arising out of the Debtor in Possession, the Chapter 11 Case, the negotiation and filing of the Combined Plan and Disclosure Statement, the filing of the Chapter 11 Case, the pursuit of confirmation of the Combined Plan and Disclosure

Statement, the consummation of the Combined Plan and Disclosure Statement, the administration of the Combined Plan and Disclosure Statement, or the property to be liquidated and/or distributed under the Combined Plan and Disclosure Statement, except for their willful misconduct or gross negligence as determined by a Final Order of a court of competent jurisdiction, and in all respects shall be entitled to rely reasonably upon the advice of counsel ///

with respect to their duties and responsibilities under the Combined Plan and Disclosure Statement.

The foregoing paragraph shall apply to attorneys only to the extent permissible under applicable bar rules and applicable case law.

///

///

///

**D.      Releases.**

1.      <u>Terms of Releases.</u>

Except for the obligations, claims, rights, and causes of action excluded in subparagraph 2 below, and as more particularly set forth in this Combined Plan and Disclosure Statement and its attachments, as of the ~~effective date~~<u>Effective Date</u>, for good and valuable consideration, the Debtor and the Debtor in Possession shall release forever, waive, and discharge all claims obligations, suits, judgments, damages, demands, debts, rights, causes of action, and liabilities (other than the rights of the debtor to enforce this Combined Plan and Disclosure Statement~~, the sale agreement~~ and the contracts, instruments, releases, indentures, and other agreement or documents delivered hereunder, and liabilities arising after the ~~effective date~~<u>Effective Date</u> in the ordinary course of business) whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity, or otherwise that are based in whole or part on any act, omission, transaction, event, or other occurrences, except where resulting from willful misconduct or gross negligence as determined by a Final Order of a court of competent

jurisdiction, taking place on or after the Petition Date through and including the Effective Date in connection with, relating to, or arising out of the Debtor in Possession, the Chapter 11 Case, the negotiation and filing of this Combined Plan and Disclosure Statement, the filing of the Chapter 11 Case, and the pursuit of confirmation of the Combined Plan and Disclosure Statement.

    2.    <u>Matters Excluded from Release.</u>

        a.    Retention of Causes of Action.  Except as specifically provided in the Combined Plan and Disclosure Statement or in the confirmation order, nothing contained in the Combined Plan and Disclosure Statement or the Confirmation Order shall be deemed to be a waiver or the relinquishment of any rights, claims, or causes of action that the Debtor in Possession or the Trustee, as the case may be, may have or which the Debtor in Possession or the Trustee, as the case may be, may choose to assert on behalf of the Bankruptcy Estate, the Debtor in Possession or the Trustee in accordance with any provision of the Bankruptcy Code or any applicable nonbankruptcy law, including, without limitation, (i) any and all claims against any Person or Entity, to the extent such Person or Entity asserts a cross-claim, counterclaim, and/or claim for setoff which seeks affirmative relief against the Bankruptcy Estate or the Residual Trust, or the Trustee, (ii) the Litigation Claims, (iii) the turnover of any property of the estate, or (iv) every other claim for relief or cause of action reserved pursuant to the Combined Plan and Disclosure Statement.

        b.    Reservation of Rights.  Except as specifically provided in the Combined Plan and Disclosure Statement or in the confirmation order, nothing contained in the Combined Plan and Disclosure Statement or in the confirmation order shall be deemed to be a waiver or relinquishment of any claim, cause of action, right of setoff, or other legal or equitable defense that the Debtor had immediately prior to the Petition Date, against or with respect to any Claim left unimpaired by the Combined Plan and Disclosure Statement.  The Debtor in Possession or the Trustee, as the case may be, shall have, retain, reserve, and be entitled to assert all Litigation Claims, rights of setoff, or other legal or equitable defenses which he had immediately prior to the Petition Date fully as if

the Chapter 11 Case had not been commenced. The Trustee's right to commence and prosecute the Litigation Claims shall not be abridged or materially altered in any manner by reason of confirmation of the Combined Plan and Disclosure Statement. No defendant party to any causes of action brought by the Debtor in Possession or the Trustee shall be entitled to assert any defense based, in whole or in part, upon confirmation of the Combined Plan and Disclosure Statement, and confirmation of the Combined Plan and Disclosure Statement shall not have any *res judicata* or collateral estoppel effect upon the commencement and prosecution of the Litigation Claims.

3. <u>Google Release</u>.

As set forth in the 9019 Motion, the Bankruptcy Estate, the Debtor (post-confirmation, in his individual capacity), Google, Waymo LLC, and Alphabet Inc. shall enter into the Google Release, which shall be included in the Plan Supplement.

*///*

## XIII. RETENTION OF CLAIMS FOR RELIEF; EXECUTORY CONTRACTS

### A. Litigation Claims.

The Litigation Claims shall be preserved and the Trustee shall have the power and the authority to assert any and all rights of the Debtor and his estate as of the Effective Date.

### B. Executory Contracts and Unexpired Leases.

On the Effective Date, the Debtors shall assume all executory contracts and unexpired leases that are listed in <u>Schedule 2</u>. On the Effective Date, all Executory Contracts and unexpired leases not assumed before the Confirmation Date or identified in <u>Schedule 2</u> will be deemed rejected. The Confirmation Order shall constitute an order approving such assumption or rejection, as applicable, as of the Effective Date. ~~Notwithstanding the foregoing, the Debtor shall remain bound by the Surviving Obligations after the Effective Date.~~ Any amount that must be paid under Bankruptcy Code section 365(b)(1) to cure a default under and compensate the non-debtor party to an executory contract or unexpired lease to be assumed under the Plan is identified as the "Cure Payment" on the <u>Schedule 2</u>. Unless the parties mutually agree to a different date, such payment shall be made in Cash within ten (10) Business Days following the

later of: (i) the Effective Date and (ii) entry of a Final Order resolving any disputes regarding (A) the Cure Amount, (B) the ability of the Debtor to provide "adequate assurance of future performance" within the meaning of Bankruptcy Code section 365 with respect to a contract or lease to be assumed, to the extent required, or (C) any other matter pertaining to assumption and assignment.

Any Person that is a party to an executory contract or unexpired lease that will be assumed under the Plan and that objects to such assumption (including the proposed Cure Amount) must File with the Bankruptcy Court ~~and serve on parties entitled to notice~~ a written statement and, if applicable, a supporting declaration stating the basis for its objection. This statement and, if applicable, declaration must be Filed ~~and served~~ on or before the deadline established by the Tentative Approval Order. Any Person that fails to timely File ~~and serve~~ such a statement and, if applicable, a declaration shall be deemed to waive any and all objections to the proposed assumption (including the proposed Cure Amount) of its contract or lease.

In the absence of a timely objection by a Person that is a party to an executory contract or unexpired lease, the Confirmation Order shall constitute a conclusive determination regarding the amount of any cure and compensation due under the applicable executory contract or unexpired lease, as well as a conclusive finding that the Debtor has demonstrated adequate assurance of future performance with respect to such executory contract or unexpired lease, to the extent required.

**C. Deadline for Filing Proofs of Claim Relating to Executory Contracts and Unexpired Leases Rejected Pursuant to the Combined Plan and Disclosure Statement.**

If the rejection by the Debtor, pursuant to the Combined Plan and Disclosure Statement or otherwise, of an Executory Contract or unexpired leases gives rise to a Claim, a Proof of Claim must be filed with the Claims Agent no later than thirty (30) days after the later of (i) notice of entry of the Confirmation Order, and (ii) other notice that the Executory Contract or unexpired lease has been rejected. Any Proofs of Claim not filed ~~and served~~ within such time periods will be forever barred from assertion against the Debtor and its Estate. Unless otherwise

Ordered by the Bankruptcy Court, all Claims arising from the rejection of Executory Contracts and unexpired leases shall be treated as General Unsecured Claims under the Combined Plan and Disclosure Statement.

## XIV. CONDITIONS TO THE EFFECTIVE DATE

### A. Conditions Precedent to the Effective Date.

The Effective Date shall not occur unless and until the following conditions shall have been satisfied or waived:

1. The Confirmation Order shall have become a Final Order.

2. The Settlement Agreement Effective Date shall have occurred.

3. The CLAT Order shall have become a Final Order.

4. Google shall have received the Main Uber Settlement payment in full on the Settlement Agreement Effective Date.

///

5. Google shall have received all documentation required for the Individual Commitment.

6. The Google Release shall have been executed by all parties thereto.

7. All Plan Supplement Documents shall have been executed and have become effective and binding ~~agreement~~agreements.

8. The Trustee shall be duly appointed, qualified and acting in that capacity.

### B. Effect of Failure of Conditions.

If each condition to the Effective Date has not been satisfied or duly waived within forty-five (45) days after the Confirmation Date, then upon motion by any party in interest, made before the time that each of the conditions has been satisfied or duly waived and upon notice to such parties in interest as the Bankruptcy Court may direct, the Confirmation Order may be vacated by the Bankruptcy Court; provided, however, that notwithstanding the filing of such motion, the Confirmation Order shall not be vacated if each of the conditions to the Effective Date is either satisfied or duly waived by the Debtor before the any Order granting such relief becomes a Final Order. If the Confirmation Order is vacated pursuant to this Section, the

Combined Plan and Disclosure Statement shall be deemed null and void in all respects and nothing contained herein shall (A) constitute a waiver or release of any Claims by or against the Debtor, or (B) prejudice in any manner the rights of the Debtor.

**C.     Waiver of Conditions to Confirmation and Effective Date.**

Each of the conditions to the Effective Date may be waived, in whole or in part, by the Debtor, without notice or an Order of the Bankruptcy Court, provided, however, the Debtor shall must have the written consent of Google to any such waiver.

///

**XV.     RETENTION OF JURISDICTION**

The Bankruptcy Court shall have exclusive jurisdiction of all matters arising out of, and related to, the Chapter 11 Case and the Combined Plan and Disclosure Statement pursuant to, and for the purposes of, sections 105(a) and 1142 of the Bankruptcy Code and for, among other things, the following purposes:

///

1.     To hear and determine any objections to Claims and to address any issues relating to Disputed Claims;

2.     To hear and determine the Litigation Claims and issues relating thereto;

~~2.~~3.     To enter and implement such Orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified or vacated;

~~3.~~4.     To issue such Orders in aid of execution and consummation of the Combined Plan and Disclosure Statement, to the extent authorized by section 1142 of the Bankruptcy Code;

~~4.~~5.     To consider any amendments to or modifications of the Combined Plan and Disclosure Statement, to cure any defect or omission, or reconcile any inconsistency in any Order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

~~5.~~6.     To hear and determine all requests for compensation and reimbursement of expenses to the extent Allowed by the Bankruptcy Court under section 330 or 503 of the Bankruptcy Code;

6.7.    To hear and determine disputes arising in connection with the interpretation, implementation or enforcement of the Combined Plan and Disclosure Statement;

7.8.    To hear and determine matters concerning state, local and federal taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code;

8.9.    To hear any other matter not inconsistent with the Bankruptcy Code;

9.10.    To enter a final decree closing the Chapter 11 Case;

10.11.  To ensure that Distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of the Combined Plan and Disclosure Statement;

11.12.  To decide or resolve any motions, adversary proceedings, contested or litigated matters and any other matters and grant or deny any applications involving the Debtor that may be pending on the Effective Date;

12.13.  To issue injunctions, enter and implement other Orders or take such other actions as may be necessary or appropriate to restrain interference by any Person or Entity with the occurrence of the Effective Date or enforcement of the Combined Plan and Disclosure Statement, except as otherwise provided herein;

13.14.  To determine any other matters that may arise in connection with or related to the Combined Plan and Disclosure Statement, the Disclosure Statement, the Confirmation Order or any contract, instrument, release, indenture or other agreement or document created or implemented in connection with the Combined Plan and Disclosure Statement or the Disclosure Statement;

14.15.  To enforce, interpret, and determine any disputes arising in connection with any stipulations, orders, judgments, injunctions, exculpations, and rulings entered in connection with the Chapter 11 Case (whether or not the Chapter 11 Case have has been closed);

15.16.  To resolve disputes concerning any reserves with respect to Disputed Claims or the administration thereof;

16.17.  To hear and resolve any disputes concerning the Residual Trust;

17.18.  To hear and resolve any disputes concerning the Individual Commitment and the enforcement of the Individual Commitment and the non-dischargeable, stipulated judgment therein; and

18.19.  To resolve any disputes concerning whether a Person or Entity had sufficient notice of the Chapter 11 Case, the Bar Date, the hearing on the confirmation of the Combined Plan and Disclosure Statement for the purpose of determining whether a Claim is discharged hereunder or for any other purpose.

## XVI.  MISCELLANEOUS PROVISIONS

### A.  Amendment or Modification of the Combined Plan and Disclosure Statement.

Alterations, amendments or modifications of the Combined Plan and Disclosure Statement may be proposed in writing by the Debtor in Possession at any time before the Confirmation Date, provided that the Combined Plan and Disclosure Statement, as altered, amended or modified, satisfies the conditions of sections 1122 and 1123 of the Bankruptcy Code, and the Debtor shall have complied with section 1125 of the Bankruptcy Code.  Any such alterations, amendments or modifications of the Combined Plan and Disclosure Statement shall be subject to the approval of Google.

///

### B.  Severability.

In the event the Bankruptcy Court determines, before the Confirmation Date, that any provision in the Combined Plan and Disclosure Statement is invalid, void or unenforceable, such provision shall be invalid, void or unenforceable with respect to the Holder or Holders of such Claims as to which the provision is determined to be invalid, void or unenforceable. The invalidity, voidability or unenforceability of any such provision shall in no way limit or affect the enforceability and operative effect of any other provision of the Combined Plan and Disclosure Statement.

### C.  Revocation or Withdrawal of the Combined Plan and Disclosure Statement.

The Debtor reserves the right to revoke or withdraw the Combined Plan and Disclosure Statement before the Confirmation Date. If the Debtor revokes or withdraws the Combined Plan

and Disclosure Statement before the Confirmation Date, then the Combined Plan and Disclosure Statement shall be deemed null and void. In such event, nothing contained herein shall constitute or be deemed a waiver or release of any Claims by or against the Debtor or Trustee or to prejudice in any manner the rights of either of the Debtor or Trustee in any further proceedings involving the Debtor.

**D.      Binding Effect.**

The Combined Plan and Disclosure Statement shall be binding upon and inure to the benefit of the Debtor, the _Trustee,_ Holders of Claims and their respective successors and assigns.

**E.      Notices.**

All notices, requests and demands to or upon the Trustee to be effective shall be in writing and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as shall be set forth in the Confirmation Order. ~~##~~

**F.      Governing Law.**

Except to the extent the Bankruptcy Code, Bankruptcy Rules or other federal law is applicable, or to the extent an exhibit to the Combined Plan and Disclosure Statement provides otherwise, the rights and obligations arising under the Combined Plan and Disclosure Statement shall be governed by, and construed and enforced in accordance with, the laws of the State of California, without giving effect to the principles of conflicts of law of such jurisdiction.

**G.      Withholding and Reporting Requirements.**

In connection with the consummation of the Combined Plan and Disclosure Statement, the Debtor in Possession and Trustee shall comply with all withholding and reporting requirements imposed by any federal, state, local or foreign taxing authority and all distributions hereunder shall be subject to any such withholding and reporting requirements.

**H.      Allocation of Distributions Between Principal and Interest.**

To the extent that any Allowed Claim entitled to a Distribution under the Combined Plan and Disclosure Statement is comprised of indebtedness and accrued but unpaid interest thereon,

such distribution shall be allocated to the principal amount of the Claim first and then, to the extent the consideration exceeds the principal amount of the Claim, to accrued but unpaid interest.

**I.      Headings.**

Headings are used in the Combined Plan and Disclosure Statement for convenience and reference only, and shall not constitute a part of the Combined Plan and Disclosure Statement for any other purpose.

**J.      Exhibits/Schedules.**

All exhibits and schedules to the Combined Plan and Disclosure Statement are incorporated into and are a part of the Combined Plan and Disclosure Statement as if set forth in full herein.

**K.      Filing of Additional Documents.**

On or before substantial consummation of the Combined Plan and Disclosure Statement, the Debtor shall file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Combined Plan and Disclosure Statement.

///

///

**L.      No Admissions.**

Notwithstanding anything herein to the contrary, nothing contained in the Combined Plan and Disclosure Statement shall be deemed as an admission by any Entity with respect to any matter set forth herein.

**M.      Successors and Assigns.**

The rights, benefits and obligations of any Person or Entity named or referred to in the Combined Plan and Disclosure Statement shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign of such Person or Entity.

**N.      Reservation of Rights.**

Except as expressly set forth herein, the Combined Plan and Disclosure Statement shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order. None of the filing of the Combined Plan and Disclosure Statement, any statement or provision contained herein, or the taking of any action by the Debtor with respect to the Combined Plan and Disclosure Statement shall be or shall be deemed to be an admission or waiver of any rights of the Debtor, Holders of Claims or interest before the Effective Date.

**O.    Implementation.**

The Debtor shall take all steps, and execute all documents, including appropriate releases, necessary to effectuate the provisions contained in this Combined Plan and Disclosure Statement.

**P.    Inconsistency.**

In the event of any inconsistency among the Combined Plan and Disclosure Statement or any other instrument or document created or executed pursuant to the Combined Plan and Disclosure Statement, the provisions of the Combined Plan and Disclosure Statement shall govern.

///

///

**Q.    Closing of Chapter 11 Case.**

Upon substantial consummation, the Trustee may move for a final decree to close the Chapter 11 Case and to request such other order as may be just.

///

**R.    Compromise of Controversies.**

Pursuant to Bankruptcy Rule 9019, and in consideration for the classification, distribution and other benefits provided under the Combined Plan and Disclosure Statement, the provisions of this Combined Plan and Disclosure Statement shall constitute a good faith compromise and settlement of all Claims or controversies resolved pursuant to the Combined Plan and Disclosure Statement and in these Chapter 11 Case.  The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of each of the foregoing compromises or settlements, and all

other compromises and settlements provided for in the Combined Plan and Disclosure Statement and the Chapter 11 Case, and the Bankruptcy Court's findings shall constitute its determination that such compromises and settlements are in the best interests of the Debtor, the Debtor in Possession, the Bankruptcy Estate and all Holders of Claims against the Bankruptcy Estate.

Dated: ~~February 23~~March 18, 2022          **ANTHONY S. LEVANDOWSKI**


_/s/ Anthony S. Levandowski_

_Debtor and Debtor in Possession_

**<u>SCHEDULE 1</u>**

**Certain Litigation Claims**

**[To be provided]**

**<u>SCHEDULE 2</u>**

**Executory Contracts to be Assumed**

**[None]**