1   ROB BONTA
    Attorney General of California
2   MICHAEL D. GOWE
    Supervising Deputy Attorney General
3   CARA M. PORTER
    Deputy Attorney General
4   State Bar No. 266045
     455 Golden Gate Avenue, Suite 11000
5    San Francisco, CA  94102-7004
     Telephone:  (415) 510-3508
6    Fax:  (415) 703-5480
     E-mail:  Cara.Porter@doj.ca.gov
7   *Attorneys for Creditor*
    *California Franchise Tax Board*
8
                    IN THE UNITED STATES BANKRUPTCY COURT
9
                    FOR THE NORTHERN DISTRICT OF CALIFORNIA
10
                            SAN FRANCISCO DIVISION
11

12

13  **In re:**                            CASE NO. 20-30242 HLB

14  **ANTHONY SCOTT LEVANDOWSKI,**        Chapter 11

15                          Debtor        **OPPOSITION OF CALIFORNIA**
                                          **FRANCHISE TAX BOARD TO**
16                                        **DEBTOR'S MOTION TO**
                                          **(I) DETERMINE TAX EFFECT OF**
17                                        **SETTLEMENT PAYMENT OR, IN THE**
                                          **ALTERNATIVE, (II) FIND THE**
18                                        **DEBTOR'S PLAN FEASIBLE WITHOUT**
                                          **RESERVING FOR TAXES THEREON**
19                                        **(IRS/FTB)**

20
                                          Hearing:      April 21, 2022
21                                        Time:         10:00 a.m. (Pacific Time)
                                          Location:     (Tele/Video Appearances Only)
22                                                       United States Bankruptcy Court
                                                         Courtroom 19, 16th Floor
23                                                       San Francisco, CA  94102

24                                        Judge         The Honorable Hannah L.
                                                        Blumenstiel
25

26

27

28

                                          1

**TABLE OF CONTENTS**

Page

Introduction ............................................................................................................... 6

Factual Background ..................................................................................................... 8

Argument ..................................................................................................................... 8

I.  A Tax Determination Now Would Be Premature and Would Result in
    Prejudicial Res Judicata .................................................................................. 8

II. The Indemnification Agreement and the Payments Thereunder Appear to
    Be Taxable as Gross Income ........................................................................... 9

    A.  The Indemnification Agreement Was Compensation for Debtor's
        Work at Uber ......................................................................................... 10

    B.  Viewed Another Way, the Indemnification Agreement Was
        Consideration for the Otto Acquisition ................................................ 10

        1.  The Indemnification Agreement Was Consideration for the
            Sale of Otto ..................................................................................... 10

        2.  Where a Third Party's Payment Is Consideration for the
            Taxpayer's Services, the Payment Is the Taxpayer's Income ....... 12

    C.  Alternatively, The Payments Are Debtor's Taxable Gross Income If
        the Parties Reduced the Purchase Price of the Otto Acquisition as A
        Contingent Liability in Anticipation of Google's Claim ...................... 13

III. Debtor Fails to Meet His Burden to Demonstrate that the Payments Do Not
    Constitute Taxable Income ............................................................................ 14

    A.  The Payments Are Not Akin to Non-Taxable Insurance Payments .......... 15

        1.  There Was No Insurance Risk Because It Was Anticipated
            that Google Would File a Claim ..................................................... 15

        2.  The Payments Did Not Involve Risk Distribution Because
            the Purported Risk Pool Was Not of Sufficient Size ..................... 16

        3.  The Payments Do Not Conform to the Commonly Accepted
            Notions of Insurance Because They Hedged Against
            Debtor's Intentional—Not Accidental or Unanticipated—
            Conduct ......................................................................................... 16

    B.  Debtor Fails to Allege Sufficient Facts to Support Debtor's
        Argument that the Tax Benefit Rule Indicates that the Payments
        Are Not Taxable Income ........................................................................ 17

    C.  Debtor Fails to Allege Sufficient Facts to Demonstrate the
        Payments Are a Working Condition Fringe ........................................... 17

    D.  Debtor Fails to Allege Sufficient Facts to Support a Finding that the
        Payments Are Deductible Reimbursements ........................................... 19

IV. Debtor's Request to Limit the Scope of FTB's Claim Fails ............................... 19

Conclusion ................................................................................................................. 20

2

# TABLE OF AUTHORITIES

**Page**

CASES

*Amerco and Subs. v. Commissioner*
 96 T.C. 18 (1991) .................................................................................................... 15

*Arrowsmith v. Comm'r of Internal Revenue*
 344 U.S. 6 (1952) .................................................................................................... 12

*Avrahami v. Commissioner*
 149 T.C. 144 (2017) ............................................................................................ 15, 16

*Clougherty Packing Co. v. Commissioner*
 811 F.2d 1297 (9th Cir. 1987), (1985) .................................................................. 16

*Commissioner v. Glenshaw Glass Co.*
 348 U.S. 426 ............................................................................................................ 10

*Consolidated Accessories Corp. v. Franchise Tax Board*
 161 Cal.App.3d 1036 (1984) .................................................................................. 14

*Hillsboro Nat. Bank v. Commissioner*
 460 U.S. 370 (1983) ................................................................................................ 17

*Huff v. Commissioner*
 80 T.C. 804 (1983) .............................................................................................. 11, 12

*Humana Inc. v. Comm'r*
 881 F.2d 247 (6th Cir. 1989) ............................................................................. 15, 16

*In re Marriage of Sharp*
 143 Cal. App. 3d 714 (Cal. Ct. App. 1983) .......................................................... 13

*Lundell v. Anchor Construction Specialists, Inc.*
 223 F.3d 1035 (9th Cir. 2000) ................................................................................ 20

*O'Malley v. Commissioner*
 (1988) 91 T.C. 352 .................................................................................................. 12

*Old Colony Tr. Co. v. Comm'r of Internal Revenue*
 279 U.S. 716 ............................................................................................................ 12

*Parker v. Commissioner*
 365 F.2d 792 ............................................................................................................ 11

3

*Pope Estate v. Johnson*
  (1941) 43 Cal. App. 2d 170............................................................................................ 8, 9

*Raleigh v. Illinois Department of Revenue*
  530 U.S. 15 (2000) ......................................................................................................... 14

*Safe Harbor Water Power Corp. v. U.S.*
  157 Ct. Cl. 912 (1962) ................................................................................................... 12

*Tennessee Securities, Inc. v. Commissioner*
  674 F.2d 570 ................................................................................................................... 12

**STATUTES**

California Civil Code
  § 1605 ............................................................................................................................ 10
  § 1614 ............................................................................................................................ 10
  § 1615 ............................................................................................................................ 11

California Insurance Code § 22 ............................................................................... 15, 17

California Revenue & Taxation Code
  § 17041 ............................................................................................................................ 9
  § 17071 ...................................................................................................................... 9, 10
  § 17081 .......................................................................................................................... 10
  §§ 17081-17090 ........................................................................................................... 10

Internal Revenue Code
  § 61 ............................................................................................................................ 9, 10
  § 338 .............................................................................................................................. 13

Revenue Act of 1918, 40 Stat. 1065 ............................................................................. 12

Title 11 U.S. Code
  § 1129, subdivision (a)(11) ............................................................................................ 6
  § 502, subdivision (c) ............................................................................................. 6, 7, 9
  § 505, subdivision (a) ............................................................................................. 6, 7, 9
  § 553, subdivision (a) .................................................................................................... 20
  § 1129, subdivision (a)(11) ............................................................................................ 6

4

# TABLE OF AUTHORITIES
## (continued)

Title 26 U.S. Code

    § 62 .................................................................................................................... 19

    § 83 .................................................................................................................... 10

    § 132, subdivision (a)(3) ............................................................................. 17, 18

    § 132, subdivision (d) .......................................................................................... 17

    § 162 ....................................................................................................... 17, 18, 19

    § 501, subdivision (c)(3) ..................................................................................... 18

**COURT RULES**

Federal Rule of Bankruptcy Procedure Rule 3001(f) ................................................. 20

**OTHER AUTHORITIES**

Treasury Regulation

    § 1.132, subdivision (r)(3)(i) ............................................................................ 19

    § 1.132, subdivision (r)(4) ........................................................................... 18, 19

    § 1.338-7 ............................................................................................................ 13

FTB's Opp. to Debtor's Motion to Determine Tax Effect, or Find Debtor's Plan Feasible (20-30242 HLB)

1   California Franchise Tax Board ("FTB"), a creditor in the above-referenced bankruptcy

2   case, hereby submits this opposition ("Opposition") to the motion ("Motion," Dkt. 917) of debtor

3   Anthony Scott Levandowski ("Debtor") to determine the tax effect of the payments contemplated

4   in the Uber Settlement Agreement[1] between Debtor, Google LLC ("Google") and Uber

5   Technologies, Inc. ("Uber") arising from Uber's acquisition ("Otto Acquisition") of Ottomotto

6   fka 280 Systems ("Otto") or, in the alternative, to find Debtor's proposed plan [Dkt. 861] feasible

7   without reserving for taxes thereon.[2]

### INTRODUCTION

9   Debtor asks this Court to interpret California tax law, to issue a determination under

10  11 U.S.C. section 505(a)(1) whether two payments ("Payments") that Uber will make as

11  contemplated under the Uber Settlement Agreement will result in the accrual of state income

12  taxes to Debtor's estate for the 2022 tax year.[3]  Alternatively, Debtor requests that the Court issue

13  a determination that the effect of any resulting taxes does not deem Debtor's Plan infeasible as

14  contemplated under section 1129(a)(11), which necessarily requires a determination regarding the

15  amount or legality of applicable tax.

16  However, a prompt determination regarding the Payments—a single event in Debtor's 2022

17  tax year—would run afoul of California tax law, which requires that litigation concerning tax

18  liabilities for a given tax period must consider all disputes arising from the entire tax period, and

19  may not proceed in piecemeal fashion.  Instead, FTB suggests that the appropriate relief would be

20  the Court's estimation of FTB's claim for the 2022 tax year under section 502(c) for purposes of

21  plan confirmation.

22  Notably, given that Debtor, Uber and Google entered into the Global Settlement Agreement

23  in February 2022, and the corresponding tax year has not yet completed, the taxing authorities

---

[1] Capitalized terms not otherwise defined in this Opposition shall have the meanings ascribed in the Motion.

[2] The Uber Settlement Agreement provides for Uber to make two concurrent payments on the Settlement Effective Date: Motion at 4.  It is unclear whether Debtor seeks a determination of tax effect arising from payment of one or both of these amounts. This Opposition addresses both payments.

[3] Unless otherwise specified, all further statutory references are to Title 11 of the United States Code.

6

have not yet begun their investigations and analysis—much less issued determinations—on whether the Payments give rise to federal or state tax liabilities. Such determinations would provide guidance to this Court's interpretation of applicable tax law in estimating (or determining) the amount of the tax liability associated with the Payments.

Nonetheless, relevant factual information which is necessary for determining the characterization of the Payments is absent or redacted in the Motion. Further information is necessary to determine whether the Payments constitute *compensation* for Debtor's work at Uber, *consideration* for the Otto Acquisition, a *contingent liability* attached to the Otto Acquisition for which the parties may have adjusted the purchase price, an *insurance policy*, an *expense* as contemplated under the Tax Code, or something else. Based on the facts asserted, the Payments appear to be taxable gross income, and Debtor fails to meet his burden to demonstrate anything to the contrary.

Accordingly, in the interests of judicial and administrative economy, FTB requests the opportunity to conduct an administrative investigation of the facts surrounding the payments, issue a determination about the amount of applicable tax, and meet and confer with Debtor regarding FTB's findings and conclusions. Should the parties disagree regarding the results of the administrative procedures, FTB suggests the parties submit further briefing to the Court—including evidence and arguments grounded on the facts ascertained during the administrative investigation. Alternatively, FTB requests the opportunity to conduct discovery and present its evidence and arguments at a hearing before this Court no earlier than July 1, 2022. In any event, FTB suggests that the Court interpret Debtor's motion as one for an estimation of FTB's claim for the 2022 tax year under section 502(c)(1), instead of a ruling under section 505(a)[4] Subject to investigation and discovery, FTB requests that the Court estimate the amount of taxes owing to

---

[4] FTB filed its amended Claim 10-3 on October 20, 2020, listing $0 for tax year ending December 31, 2014. FTB intends to amend its claim to add a liability for the tax year ending December 31, 2016 in the anticipated amount of $78,748.82, claimed wholly as a priority claim. Any potential dispute as to the amount of FTB's claim for the 2016 tax year does not appear to impact the relief Debtor seeks in the Motion.

FTB for the 2022 tax year is no less than $21,984,739.06. [5]  Alternatively, FTB urges the Court to find that Debtor's proposed plan is infeasible without reserving for taxes thereon.

Further, FTB opposes Debtor's request for an order limiting the scope of FTB's Claim 10, which reserves the taxing authority's right to amend its claim, including to assert an administrative expense or a secured claim, and specifically states it is not waiving any right of setoff of Debtor's debts.

**FACTUAL BACKGROUND**

FTB has not had time to commence an investigation or analysis of the tax liability in question.  Accordingly, for purposes of this Opposition, FTB hereby incorporates by reference the factual background as Debtor presented it in the Motion at 5:10-8:18, without admitting the accuracy of the information contained therein and subject to revision upon FTB's completion of an administrative investigation or discovery in this matter. [6]  Nonetheless, for purposes of this Opposition, FTB treats all factual assertions as true.

**ARGUMENT**

**I.  A TAX DETERMINATION NOW WOULD BE PREMATURE AND WOULD RESULT IN PREJUDICIAL RES JUDICATA**

Under California law, litigation concerning tax liabilities for a given tax period must consider all disputes arising from the entire tax period, and may not proceed in piecemeal fashion. *Pope Estate v. Johnson* (1941) 43 Cal. App. 2d 170, 174.  "The rule is quite absolute in its character and applies so as to prevent a second action in the courts involving a particular year's liability even though the facts upon which the second suit rests occurred after the first was decided."  *Id*.  The rule often arises in the context of a taxpayer filing a suit for refund of taxes, and a government taxing authority initiating an action to recover a deficiency during the same tax period.  *Id*.  In that example, the litigation may not proceed until both suits are properly before the court.

---

[5] The amount of the estimation is and upper limit, calculated using Debtor's tax rate and the published amount of the California Supreme Court judgment against Debtor.

[6] All citations to the Motion are to the PDF page number.

8

Accordingly, the Court's determination concerning the Payments, which will occur in 2022, must include an assessment of Debtor's tax liabilities for the 2022 tax year *in full*. However, the 2022 tax year is not yet complete and Debtor has not declared a short tax year. Thus, any judicial determination that issues prior to January 1, 2023 regarding the amount or legality of tax on the Payments would be premature. Additionally, any determination now would act as *res judicata* and preclude further litigation concerning any other of Debtor's state income tax liabilities for 2022. *Pope Estate*, *supra*, 43 Cal. App. 2d at 174. Such a result would prejudice both Debtor and FTB.

In light of the time-sensitivity of a tax analysis concerning the Payments, FTB suggests that a ruling on the Motion should be in the form of an estimation of FTB's claim for the 2022 tax year under section 502(c)(1) for purposes of plan confirmation, and not a ruling under section 505(a).

## II. THE INDEMNIFICATION AGREEMENT AND THE PAYMENTS THEREUNDER APPEAR TO BE TAXABLE AS GROSS INCOME

The tax treatment for the Payments turns on the characterization of the Indemnification Agreement and the Payments thereunder as either (1) *compensation* for Debtor's work at Uber, which is taxable; (2) *consideration* paid for the Otto Acquisition, which is taxable; (3) a *contingent liability* attached to the Otto Acquisition, in which case the tax treatment is highly complex and the authorities are not uniform. The Motion presents insufficient facts to determine the proper characterization of the Payments. However, based on the information the Motion presents, the Indemnification Agreement appears most likely to be compensation for Debtor's work at Uber, or consideration paid for the Otto Acquisition. Both of these characterizations qualify as taxable gross income.

California assesses taxes on taxpayers' gross income. Cal. Rev. & Tax. Code, § 17041. Gross income is broadly defined as "all income from whatever source derived." Cal. Rev. & Tax. Code, section 17071, incorporating Internal Revenue Code section 61.[7] The United States

_____

[7] In general, California personal income tax law conforms to the federal Internal Revenue Code. Thus, determinations of the IRS on the same issue generally apply to California. With

9

FTB's Opp. to Debtor's Motion to Determine Tax Effect, or Find Debtor's Plan Feasible (20-30242 HLB)

Supreme Court "has given a liberal construction to this broad phraseology in recognition of the intention of Congress to tax all gains except those specifically exempted." *Commissioner v. Glenshaw Glass Co.*, 348 U.S. 426, 430. The California Revenue and Taxation Code specifies certain items as included in gross income. Cal. Rev. & Tax. Code, §§ 17081-17090.] One such item is property transferred in connection with performance of services. Cal. Rev. & Tax. Code, § 17081, incorporating 26 U.S.C. § 83. However, the property contemplated under that statute appears to be real or personal property other than cash value. *Id.* Accordingly, the analysis goes beyond 26 U.S.C. § 83.

### A. The Indemnification Agreement Was Compensation for Debtor's Work at Uber

Debtor entered into an Agreement and Plan of Merger for the Otto Acquisition, and Uber hired Debtor and others to work in Uber's autonomous vehicle business. Motion at 5:13-2. The Indemnification Agreement was a condition of Debtor's employment by Uber. Motion at 5:23-24. Much like a candidate negotiates for a salary of a threshold amount, Debtor considered the Indemnification Agreement to be a critical part of the sale and employment, and would not have done the deal without it. Motion at 5:26-28. Thus, in exchange for his work at Uber, Debtor received the value of the Indemnification as a portion of his compensation. Such compensation is taxable as gross income, making the Payments under the Indemnification Agreement taxable gross income.

### B. Viewed Another Way, the Indemnification Agreement Was Consideration for the Otto Acquisition

#### 1. The Indemnification Agreement Was Consideration for the Sale of Otto

Consideration is "any benefit conferred, or agreed to be conferred, upon the promisor . . . and an inducement to the promisor" to enter into a contract. Cal. Civ. Code, § 1605. "A written instrument is presumptive evidence of a consideration." Cal. Civ. Code, § 1614. The burden of

---

respect to the issue in the present case, California conforms to federal law with respect to the definition of gross income under Internal Revenue Code section 61, at California Revenue and Taxation Code section 17071.

showing that the indemnification provision here is not consideration for the acquisition transaction lies with Debtor.  Cal. Civ. Code, § 1615.

The Indemnification Agreement and the Payments thereunder meet all of the elements of consideration.  First, Uber provided a benefit to Debtor individually by agreeing to indemnify Debtor.  A company's agreement to indemnify any employee against damages, judgments or other monetary amounts as a result of the employees' business practices, and the corporation's subsequent payment of civil penalties that a court imposes upon its employees, confers a benefit on the employees individually that is subject to taxation. *Huff v. Commissioner*, 80 T.C. 804, 814-15 (1983); *cf. Parker v. Commissioner*, 365 F.2d 792, 801-802 (where the acts of the company's founder cannot be separated from the acts of the company, indemnification is not a personal benefit).  Indeed, Uber has now agreed to make the Payments in settlement of the judgment that arose from the two arbitration actions Google filed against Debtor individually. Motion at 17:18-20; Debtor's Status Conference Statement filed April 28, 2020 [Dkt. 64] at 2:1-8. Debtor, separate from Otto, received and has realized a benefit from the Indemnification Agreement.

Second, the benefit has considerable value.  As explained below, Debtor required the Indemnification Agreement as a condition of employment, evidencing the significant value to him.  Likewise, Uber was arguably aware of the risk of a claim from Google and Debtor's insistence on the Indemnification Agreement, which demonstrates the value Uber placed on the Indemnification Agreement as well.  This anticipated benefit has now been realized.  Under the Indemnification Agreement, the Payments are in settlement of the judgment of over $179 million. Motion at 6:24-25; 8:5-8.  Debtor is receiving value at least equal to the amount Uber is paying to Google and Debtor, up to the entire amount of the over $179 million judgment.

Third, Debtor admits that the Indemnification Agreement was an inducement for him to engage in the Otto Acquisition.  The Motion states, "The Indemnification Agreement was a condition of Debtor's sale of Otto to Uber . . ." and "Uber agreed to provide indemnity in order to

| | |
|---|---|
| 1 | convince the Debtor to join Uber as an employee . . . ." Motion at 5:23-24, 19:13-14.[8] Indeed, |
| 2 | Debtor "would not have . . . sold Otto to Uber without [ ] Uber assuming the obligations set forth |
| 3 | in on (sic) the Indemnification Agreement." Motion at 5:24-28; Fisher Decl. Ex. B. Moreover, |
| 4 | Debtor requests that the Court find, among other things, "The Indemnification Agreement was |
| 5 | entered into by Uber to induce Debtor to join Uber." Motion at 22:8-13. Further, the inference |
| 6 | that Debtor bargained for the Indemnification Agreement support a finding of consideration. |
| 7 | Accordingly, the Indemnification Agreement and the Payments thereunder constitute |
| 8 | consideration for the Otto Acquisition. |

### 2. Where a Third Party's Payment Is Consideration for the Taxpayer's Services, the Payment Is the Taxpayer's Income

Where a taxpayer performs services to a third party, and the third party issues payment as consideration for the taxpayer's services, that payment is the taxpayer's taxable income. *Old Colony Tr. Co. v. Comm'r of Internal Revenue*, 279 U.S. 716, 729. Such "services" extend serving as an employee or the act of selling a company. *Id.* at 729; *see also Arrowsmith v. Comm'r of Internal Revenue*, 344 U.S. 6, 7 (1952). This concept is one of form over substance. It is immaterial if the third party makes payment to the taxpayer who then turns it over to a creditor, or whether the third party makes payment directly to that creditor. *Old Colony Tr. Co., supra,* 279 U.S. at 729. '"The form of the payment is expressly declared to make no difference." *Id.* citing Section 213, Revenue Act of 1918, c. 18, 40 Stat. 1065. Regardless of whether the payment is for federal income taxes, legal fees to defend criminal or civil charges, or similar payments, the issue is whether the payment is *consideration* for the taxpayer's services. *Id.*; *O'Malley v. Commissioner* (1988) 91 T.C. 352, 361; *Huff , supra,* 80 T.C. at 814-15; *Safe Harbor Water Power Corp. v. U.S.*, 157 Ct. Cl. 912, 921 (1962); *Tennessee Securities, Inc. v. Commissioner*, 674 F.2d 570, 574. Accordingly, the Payments Uber will make in accordance with the Indemnification Agreement constitute Debtor's taxable income.

---

[8] Debtor did not submit his own declaration in support of the Motion. As such, FTB relies upon the assertions in the Motion in support of its arguments. FTB anticipates that through its request for an administrative investigation or discovery, it would find authenticated support for these assertions.

Case: 20-30242   Doc# 953   Filed: 04/01/22   Entered: 04/01/22 16:31:57   Page 12 of 22

**C.** **Alternatively, The Payments Are Debtor's Taxable Gross Income If the Parties Reduced the Purchase Price of the Otto Acquisition As A Contingent Liability in Anticipation of Google's Claim**

A tax liability that applies only upon the occurrence of certain events constitutes a contingent liability. *See In re Marriage of Sharp*, 143 Cal. App. 3d 714, 717 (Cal. Ct. App. 1983). At the time of the Otto Acquisition, Debtor, Otto and Uber must have been aware of the probability that Google would file a claim with respect to the transaction, and they anticipated that the resulting defense of such claim would incur a significant expense. Presumably for this reason, Debtor negotiated for, and Uber agreed to provide, the Indemnification Agreement. Accordingly, the Indemnification Agreement, and the Payments arising thereunder, constitute a contingent liability.

The tax treatment for contingent liabilities is highly complex and the authorities are not uniform, often being highly fact dependent. First, we must determine whether the Otto Acquisition was an asset acquisition, a stock acquisition, or whether the parties elected to treat the stock acquisition as an asset sale. The tax treatment for asset and stock acquisitions differ. The Motion is silent on this point. Additionally, Internal Revenue Code section 338, Treasury Regulation section 1.338-7, and related federal regulations require the parties to the transaction to adjust and re-determine the sale price of an acquired corporation once contingent liabilities become fixed after the acquisition date, such as here.

Second, we must determine how the parties valued Otto during the acquisition. At least three scenarios arise when evaluating the price of transactions that include contingent liabilities, wherein the seller agrees to indemnify the buyer. First, the sale price may represent a reduction in the value of the asset or stock in light of the contingent liability, to compensate for the seller's anticipated expenses that the seller may incur indemnifying the buyer if the contingent liability realizes. Second, the sale price may represent an increase in the value of the asset or stock in light as consideration for the seller accepting the risk that the contingent liability may realize. Third, the parties may agree to place an agreeable value on the asset or stock, notwithstanding the potential for future liabilities to realize.

13

1    Here, however, the reverse scenario occurred: the buyer agreed to indemnify the seller.

2    Turning the above three scenarios on their heads, the pricing for the Otto Acquisition could have

3    either: (1) represented an increase in the value, to compensate Uber for its anticipated expenses

4    that it would incur indemnifying Debtor; (2) represented a decrease in the value as consideration

5    for Uber accepting the risk that it would need to indemnify Debtor, or (3) represent an agreeable

6    value on the asset or stock, notwithstanding the potential for future claims to occur.

7         The taxation on the Payments, now that the triggering event has occurred, depends on the

8    valuation the parties placed on the Otto Acquisition when they completed the transaction in 2016.

9    If the parties reduced the sale price of Otto in anticipation of indemnification, the amount of the

10   Payments represents the decrease in the value the parties ascribed to Otto in 2016, and also

11   represents the amount subject to taxation, now that the contingency has realized.  Such

12   information will follow only after an administrative investigation or appropriate discovery here.

13   **III.    DEBTOR FAILS TO MEET HIS BURDEN TO DEMONSTRATE THAT THE PAYMENTS DO
           NOT CONSTITUTE TAXABLE INCOME**

14

15        Debtor has the burden to establish the deductibility of the Payments under the

16   Indemnification Agreement.  "The burden of proof on a tax claim in bankruptcy remains where

17   the substantive tax law puts it."  (*Raleigh v. Illinois Department of Revenue*, 530 U.S. 15, 26

18   (2000).  In the case of a taxpayer's challenge to the taxing authority's determination, the burden

19   of proof rests with the taxpayer. *See Consolidated Accessories Corp. v. Franchise Tax Board*,

20   161 Cal.App.3d 1036, 1039 (1984).  As stated by the United States Supreme Court, placing the

21   burden of proof on the taxpayer

22        reflects . . . the vital interest of the government in acquiring its lifeblood, revenue, . . .
          the taxpayer's readier access to the relevant information, . . . and the importance of
23        encouraging voluntary compliance by giving taxpayers incentives to self-report and to
          keep adequate records in case of dispute . . . .
24

25   (*Raleigh*, 530 U.S. at 21.)  Debtor fails to meet his burden.

26        Debtor advances four arguments why the Payments are not taxable income.  First, Debtor

27   asserts that the Payments are akin to non-taxable insurance payments.  Second, Debtor argues that

28   he cannot benefit from the Payments under the "tax benefit rule," and as such, the Payments are

14

ETB's Opp. to Debtor's Motion to Determine Tax Effect or Find Debtor's Plan Feasible (20-30242 HLB)

not taxable.  Third, the Indemnification Agreement is a "working condition fringe," such that any payment under the indemnity is not taxable.  Fourth, the Payments are deductible reimbursements for services Debtor provided to Uber.  All four arguments fail.

### A.    The Payments are Not Akin to Non-Taxable Insurance Payments

Insurance is a contract whereby one undertakes to indemnify another against loss, damage, or liability arising from a contingent or unknown event.  Cal. Ins. Code, § 22.  To be "insurance," an arrangement must (1) involve insurance risk, (2) involve risk shifting, (3) involve risk distribution, and (4) meet the commonly accepted notions of insurance.  *Avrahami v. Commissioner*, 149 T.C. 144, 181 (2017); *Amerco and Subs. v. Commissioner*, 96 T.C. 18, 38 (1991).  "Risk shifting involves the shifting of an identifiable risk of the insured to the insurer . . . .  Risk distribution involves shifting to a group of individuals the identified risk of the insured."  *Humana Inc. v. Comm'r,* 881 F.2d 247, 251 (6th Cir. 1989).  In the absence of either risk shifting or risk distribution, a transaction cannot be considered "insurance."  *Id.* at 190-91.  Here, the issues are whether insurance risk existed, the Payments involved risk distribution and meet the commonly accepted notions of insurance.  The Payments fail to meet both of these criteria.

### 1.    There Was No Insurance Risk Because It Was Anticipated that Google Would File A Claim

Debtor describes insurance risk as "some form of contingent hazard above and beyond regular risk."  Motion at 13:3-4.  However, here no extraordinary risk presented itself.  Instead, Uber was aware that Debtor entered into negotiations with Uber while he was still a Google employee.  *See* Motion at 5:23-28; Fisher Decl. Ex. B.  The Indemnification Agreement indemnified Debtor and others against willful acts such as fraud and breach of fiduciary duty.  *See* Motion at 22, n. 21.  Further, indemnification was a condition of the Otto Acquisition.  Motion at 5:23-28; Fisher Decl. Ex. B.  Thus, Uber was aware, and even anticipated, that a dispute between Debtor and Google would occur.  Accordingly, there was no insurance risk.

### 2. The Payments Did Not Involve Risk Distribution Because the Purported Risk Pool Was Not of Sufficient Size

Risk distribution occurs when the insurer pools a large enough collection of unrelated risks. *Avrahmi, supra*, 149 T.C. at 181. "By assuming numerous relatively small, independent risks that occur randomly over time, the insurer smoothes out losses to match more closely its receipt of premiums." *Clougherty Packing Co. v. Commissioner*, 811 F.2d 1297, 1300 (9th Cir. 1987), aff'g 84 T.C. 948 (1985). "The focus is broader and looks . . . to whether the risk insured against can be distributed over a larger group . . . ." *Humana, Inc., supra*, 881 F.2d at 251. The Tax Court observed that (in a pure captive arrangement) there must be at least 12 affiliated corporate policyholders that pool their risk, and (in an associative captive arrangement) there must be at least seven policyholders, in order for risk distribution to exist.[9] *Id*. at 183.

Here, there was no risk distribution. First, the potential risks arising from the Indemnification Agreement arise from no more than six potential insureds. Motion at 15:6-9 (asserting that the risk distribution pool consists of only Debtor, Otto, and four other employees). This number does not meet the standard set by *Humana*. Motion at 15:6-9.

Second, the risks of the six putative insureds are not unrelated as required under *Avrahmi*. Instead, the risks the six putative insureds all arise from the same transaction and events: the Otto Acquisition. The acts of the six entities all relate to their common exit from Google and re-employment with Uber. Any action against one of them would likely be an action against all of them at the same time. As such, the risks are not small, independent, or anticipated to occur over time as contemplated by Cl*ougherty Packing Co.* Accordingly, there was no risk distribution.

### 3. The Payments Do Not Conform to the Commonly Accepted Notions of Insurance Because They Hedged Against Debtor's Intentional—Not Accidental or Unanticipated—Conduct

Debtor has not established that the technical or hallmark elements of insurance exist here. Insurance is a contract whereby one undertakes to indemnify another against loss, damage, or

---

[9] Generally speaking, a "captive insurer" is an insurance company that is wholly owned and controlled by its insureds. By contrast, an "associative captive insurer" is formed when a group of individuals or entities come together to jointly own a captive insurance company.

liability arising from a contingent or unknown event.  Cal. Ins. Code, § 22.  In exchange for the offer of indemnification, an insured generally pays the insurer a financial premium.

As set forth above, the liability resulting from the arbitration proceedings Google initiated was not an uncertain risk.  To the contrary, the liability flowed from Debtor's intentional conduct.  Additionally, Debtor has not asserted that it made any payment to Uber that either parties characterized as an insurance premium, or as consideration in exchange for the Indemnification Agreement.  Finally, Debtor has not demonstrated that Uber is a licensed insurer, or was acting in the manner generally ascribed to insurers, when Uber executed the Indemnification Agreement.  Accordingly, Debtor has not demonstrated that the Indemnification Agreement is akin to an insurance policy.

**B.  Debtor Fails to Allege Sufficient Facts to Support Debtor's Argument that the Tax Benefit Rule Indicates that the Payments Are Not Taxable Income**

Under the "tax benefit rule," a taxpayer need not include in his (taxable) gross income amounts recovered for his loss if he did not receive a "tax benefit" for the loss in a prior year.  *Hillsboro Nat. Bank v. Commissioner*, 460 U.S. 370, 388 (1983).  Thus, in order to utilize the tax benefit rule for 2022, Debtor must demonstrate that he received a tax benefit—such as an exclusion, deduction, or credit—in a prior year.  Debtor has failed to allege such facts.

Instead, Debtor argues—without supporting evidence—that the Payments are "a recoupment of, and directly attributable to, the expense incurred by the Debtor to Google in settlement of the judgment secured against him in the arbitration."  Motion at 17:18-20.  Without evidence to support the purported expenses Debtor incurred, or evidence to demonstrate that Debtor received a tax benefit in a prior tax year associated with some exclusion, deduction or credit, Debtor fails to meet his burden to demonstrate the tax benefit rule applies here.

**C.  Debtor Fails to Allege Sufficient Facts to Demonstrate the Payments Are a Working Condition Fringe**

A working condition fringe is excluded from gross income.  26 U.S.C. § 132(a)(3).  A working condition fringe is property or services provided to an employee to the extent that, if the employee paid for such property or services, such payment would be allowable as a deduction under 26 U.S.C. § 162 ("Section 162") or 167.  26 U.S.C. § 132(d).  Debtor asserts that the

17

Case: 20-30242   Doc# 953   Filed: 04/01/22   Entered: 04/01/22 16:31:37   Page 17 of 22

1  Payments are deductible under Section 162.[10]  Section 162(a) allows for a deduction for the

2  "ordinary and necessary expenses" paid or incurred during the taxable year.  The IRS defines an

3  "ordinary" expense as anything that is "common and accepted" to a specific trade or business.

4  The IRS defines a "necessary" expense as anything that is "helpful and appropriate" for one's

5  trade or business.  Internal Revenue Service. "Deducting Business Expenses",

6  https://www.irs.gov/businesses/small-businesses-self-employed/deducting-business-expenses,

7  accessed April 1, 2022.  The Motion argues that "courts look to the 'origin and character' of the

8  claim" to determine whether "the claims arise out of conduct connected with a person's duties as

9  an officer or employee.

10      The Motion, however, fails to provide any facts or legal argument to explain how the

11  Payments constitute "ordinary and necessary expenses" of Debtor's business, including that the

12  Motion fails to analyze whether the Payments are common and accepted expenses, or helpful and

13  appropriate in the context of Debtor's industry.  Further, the Motion fails to analyze the origin

14  and character of the activities for which Uber indemnified Debtor, or demonstrate that those

15  activities—i.e. selling Otto to Uber and the Bad Acts related thereto—were within the scope of

16  Debtor's duties as an Uber employee.  Importantly, the Motion does not differentiate between the

17  Payments as an *expense,* as opposed to a portion of Debtor's *compensation* for employment at

18  Uber or *consideration* for the Otto Acquisition.  Accordingly, Debtor fails to demonstrate that the

19  Payments meet any of the categories under Section 162, and thus Debtor fails to demonstrate that

20  the Payments constitute a working condition fringe that are deductible under 26 U.S.C. 132(a)(3).

21      Additionally, Debtor's reference to Treasury Regulation 1.132(r)(4) is inapposite.  The

22  Example under that regulation considers an employee A of company P, which is a tax-exempt

23  organization as described in section 501(c)(3).  501(c)(3) organizations enjoy tax benefits not

24  available to for-profit organizations such as Uber.  *See* 26 U.S.C. § 501(c)(3).  While company P

25  does not have a profit motive, the Example explains that employee A has a profit motive under

26  26 U.S.C. section 162, because the total value of the benefits A receives is not substantially less

27  _____

28      [10] The Motion does not specify which of the 19 subdivisions of 26 U.S.C. section 162
apply to the Payments.  This Opposition addresses subdivision (a), which the Motion addresses at
21:11-22:7.

ETB's Opp. to Debtor's Motion to Determine Tax Effect or Find Debtor's Plan Feasible (20-30242 HLB)

than the total value of the services A provides.  Treasury Regulation 1.132(r)(3)(i), (r)(4).

Because of A's profit motive while employed at a non-profit organization, A "would be able to

deduct payments for liability insurance coverage [that P provided] had he paid for it himself."  *Id.*

Here, however, the employer Uber is a for-profit corporation, and has a profit motive

aligned with its employee. Debtor.  Further, as explained above, the Indemnification Agreement

was not a form of "liability insurance coverage" as contemplated in the Example.  As such, the

Example does not provide guidance or a framework for Debtor's argument that "provision of

liability insurance (and payments made under the policy . . .) to cover actions taken by A as an

employee of P" constitutes working condition fringe that would be deductible under 26 U.S.C.

§ 162.  Accordingly, Debtor fails to demonstrate that the Payments are a working condition

fringe, and thus deductible under Section 162.

### D.   Debtor Fails to Allege Sufficient Facts to Support a Finding that the Payments are Deductible Reimbursements

Here, Debtor relies on 26 U.S.C. section 62(a)(2)(A) ("Section 62") as grounds for the

deductibility of the Payments.  Section 62 allows for deductions for expenses paid or incurred by

a taxpayer under a "reimbursement or other expense allowance arrangement with his employer"

However, as above, the Motion fails to provide any facts or legal argument to explain how

the Payments constitute "expenses" of Debtor's employment with Uber, as opposed to being

*compensation* or *consideration*.  Further, the Motion fails to explain how the Indemnification

Agreement acts as a reimbursement or other expense arrangement with Uber.  Such an analysis is

necessary to demonstrate that indemnification (a *protection* against one's loss or damage)

constitutes reimbursement (the *repayment* of money spent on one's behalf).  Accordingly, Debtor

has not demonstrated that the Payments constitute expenses that would be deductible under

Section 62.

### IV.   DEBTOR'S REQUEST TO LIMIT THE SCOPE OF FTB'S CLAIM FAILS

Without argument or authority, the Motion seeks "an order limiting the scope of the claims

the [IRS and FTB] allegedly reserved in their filings."  Motion at 3:8-9.  FTB's Claim 10

("Claim") reserves FTB's right to amend its claim, including to assert an administrative expense

| | |
|---|---|
| 1 | or a secured claim, and specifically states it is not waiving any right of setoff of Debtor's debts. |
| 2 | Claim at 5. To the extent Debtor's single sentence purports to object to FTB's claim, the Court |
| 3 | should overrule such objection. The Claim is presumptively valid pursuant to Federal Rule of |
| 4 | Bankruptcy Procedure 3001(f). *Lundell v. Anchor Construction Specialists, Inc.*, 223 F.3d 1035, |
| 5 | 1039 (9th Cir. 2000). Debtor fails to overcome the presumption of validity of FTB's claim |
| 6 | because he fails to present any evidence to meet his burden. *Lundell,* 223 F.3d at 1039. |
| 7 | Moreover, even if Debtor overcame the presumptive validity of the Claim, he cites no authority to |
| 8 | limit FTB's setoff rights, which the Bankruptcy Code explicitly preserves for creditors. |
| 9 | Section 553(a) provides that, with certain exceptions that are inapplicable here, "this title does not |
| 10 | affect any right of a creditor to offset a mutual debt" as between that creditor and the debtor. |
| 11 | § 553(a). Debtor fails to cite any authority to the contrary or to overcome this protection. |
| 12 | Accordingly, Debtor's objection to FTB's Claim should be overruled. |

**CONCLUSION**

| | |
|---|---|
| 14 | For the foregoing reasons, the Court should allow the taxing authorities to conduct an |
| 15 | administrative investigation of the facts surrounding the Payments or engage in discovery in |
| 16 | preparation for an evidentiary hearing before the Court. FTB requests that any evidentiary |
| 17 | hearing be set no earlier than July 1, 2022. Subject to investigation and discovery, FTB requests |
| 18 | that the Court estimate the amount of taxes owing to FTB for the 2022 tax year is no less than |
| 19 | $21,984,739.06. Alternatively, FTB urges the Court to find that Debtor's proposed plan is |
| 20 | infeasible without reserving for taxes thereon. To the extent Debtor objects to FTB's Claim, the |
| 21 | Court should overrule such objection. |

Case: 20-30242    Doc# 953    Filed: 04/01/22    Entered: 04/01/22 16:31:37    Page 20 of 22

Dated: April 1, 2022

Respectfully submitted,

ROB BONTA
Attorney General of California
MICHAEL D. GOWE
Supervising Deputy Attorney General

_____
CARA M. PORTER
Deputy Attorney General
*Attorneys for Creditor*
*California Franchise Tax Board*

21

# CERTIFICATE OF SERVICE

Case Name:     **In re Anthony Scott Levandowski**     No.     **20-30242 HLB**

I hereby certify that on <u>April 1, 2022</u>, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

> **OPPOSITION OF CALIFORNIA FRANCHISE TAX BOARD TO DEBTOR'S MOTION TO (I) DETERMINE TAX EFFECT OF SETTLEMENT PAYMENT OR, IN THE ALTERNATIVE, (II) FIND THE DEBTOR'S PLAN FEASIBLE WITHOUT RESERVING FOR TAXES THEREON (IRS/FTB)**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on <u>April 1, 2022</u>, at San Francisco, California.

Rachel Patu
Declarant

Signature

SF2022400607
43157359.docx

Case: 20-30242    Doc# 953    Filed: 04/01/22    Entered: 04/01/22 16:31:37    Page 22 of 22