ROB BONTA
Attorney General of California
MICHAEL D. GOWE
Supervising Deputy Attorney General
CARA M. PORTER
Deputy Attorney General
State Bar No. 266045
  455 Golden Gate Avenue, Suite 11000
  San Francisco, CA  94102-7004
  Telephone:  (415) 510-3508
  Fax:  (415) 703-5480
  E-mail:  Cara.Porter@doj.ca.gov
*Attorneys for Creditor*
*California Franchise Tax Board*

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| **In re:** | CASE NO. 20-30242 HLB |
| **ANTHONY SCOTT LEVANDOWSKI,** | Chapter 11 |
| Debtor | **OBJECTION OF CALIFORNIA FRANCHISE TAX BOARD TO CONFIRMATION OF DEBTOR'S COMBINED DISCLOSURE STATEMENT AND CHAPTER 11 PLAN DATED MARCH 29, 2022** |
| | Hearing:      April 21, 2022<br>Time:         11:00 a.m. (Pacific Time)<br>Location:    (Tele/Video Appearances Only)<br>                   United States Bankruptcy Court<br>                   Courtroom 19, 16th Floor<br>                   San Francisco, CA  94102 |
| | Judge        The Honorable Hannah L. Blumenstiel |

California Franchise Tax Board ("FTB") submits the following objections to confirmation

of the Debtor's Combined Disclosure Statement and Chapter 11 Plan Dated March 29, 2022, (the

"Plan") [Docket No. 940].[1]

---

[1] Capitalized terms not otherwise defined herein shall have the meaning attributed in
Debtor's Plan.

1

**INTRODUCTION**

Debtor Anthony Scott Levandowski's ("Debtor") Plan cannot be confirmed because it is not feasible. Debtor proposes a Plan that hinges on this Court's determination of the amount of federal and state taxes applicable to the Uber Settlement. As set forth in FTB's Opposition ("Opposition," Dkt. 953) to Debtor's motion to determine the tax effect of the payments contemplated in the Uber Settlement between Debtor, Google, and Uber arising from Uber's acquisition ("Otto Acquisition") of Otto ("Tax Motion," Dkt. 917), this Court's prompt determination of the amount of resulting state taxes would run afoul of California tax law that requires litigating all disputes arising from the entire tax period. Further, this Court's determination of 2022 state tax liabilities would be premature and prejudicial to FTB (and Debtor himself) because it would preclude FTB and Debtor from further determinations (and due process for further disputes) of the amount of state taxes Debtor owes for the entirety of the 2022 tax year, no matter whether those liabilities accrue pre-confirmation or post-confirmation.[2]

FTB urges the Court to refrain from issuing a determination of Debtor's state tax liabilities without affording FTB the opportunity to obtain evidence in support of a state tax determination through an administrative investigation or discovery. Further, FTB urges the Court to deny confirmation until such time as the amount of Debtor's 2022 state tax liabilities (or the amount of a short 2022 tax year, should Debtor elect one), is fully litigated.

Absent evidence showing that the calculation of Debtor's tax liability—represented by the amount of Debtor's tax rate multiplied by the amount of the undisclosed Uber Settlement—is incorrect, Debtor has failed to meet his burden to demonstrate that the Plan is feasible, and thus Debtor's Plan cannot be confirmed.

**RELEVANT FACTUAL BACKGROUND**

Debtor filed a voluntary petition for relief pursuant to Chapter 11 of the Bankruptcy Code on March 4, 2020, initiating this bankruptcy case. FTB timely filed a Claim in this case, which listed an amount owing for Debtor's tax year ending December 31, 2014. Claim 10-1, dated

---

[2] Should Debtor elect a short tax year for liabilities from January 1, 2022 through the Effective Date of the Plan, the arguments set forth herein may change.

2

July 28, 2020. By amendment dated October 20, 2020, FTB amended its claim for the 2014 tax year to $0.00. Claim 10-3. FTB intends to amend its claim to add a liability for the pre-petition tax year ending December 31, 2016 in the anticipated amount of $78,748.82, claimed wholly as a priority claim. Declaration of Sheila Navarette ("Navarette Decl."), ¶ 4.

Postpetition—within weeks of entering into the Uber Settlement between Debtor, Google and Uber arising from the Otto Acquisition—Debtor filed the Tax Motion, seeking this Court's determination under 11 U.S.C. section 505(a)(1), among other things, whether two payments ("Payments") that Uber will make as contemplated under the Uber Settlement will result in the accrual of state income taxes to Debtor's estate for the 2022 tax year.[3] Tax Motion, Dkt. 917. The Payments result from an Indemnification Agreement that Uber entered into with Debtor at the time of the Otto Acquisition.

The Tax Motion, however, fails to provide evidence to support the assertions that (1) the Indemnification Agreement was a condition of Debtor's employment by Uber (Tax Motion at 5:23-24); and (2) Debtor would not have completed the Otto Acquisition without the Indemnification Agreement (Tax Motion at 5:26-28). Further, as set forth in FTB's Opposition to the Tax Motion, factual information is missing that is necessary for determining whether the Payments are *compensation* for Debtor's work at Uber, *consideration* for the Otto Acquisition, a *contingent liability* attached to the Otto Acquisition for which the parties may have adjusted the purchase price, an *insurance policy*, an *expense* as contemplated under the Tax Code, or something else. Such information includes the allocation of the Payments between various purposes, such as restitution, reimbursement, compensation, or otherwise. The characterization of the Payments impacts the tax effects. *See, e.g.* 26 U.S.C §§ 62, 162.[4] Further, it is possible that certain amounts previously received, reported, and taxed as income, could be excluded from income upon Uber's payment to Google. The Payments appear to include interest, attorney fees,

---

[3] Unless otherwise specified, all further statutory references are to Title 11 of the United States Code.

[4] In general, California personal income tax law conforms to the federal Internal Revenue Code. Thus, determinations of the IRS on the same issue generally apply to California. With respect to the issue in the present case, California conforms to federal law with respect to the definition of gross income under Internal Revenue Code section 61, at California Revenue and Taxation Code section 17071.

3

and costs. Without a breakdown of these amounts, however, it would be impossible to determine what amount, if any, is excludable under the claim of right doctrine as Debtor argued in the Tax Motion.

Debtor has not yet filed a tax return with FTB for the 2022 tax year, nor has Debtor sought FTB's assessment or analysis of state taxes applicable to the Uber Settlement.[5] Navarette Decl., ¶¶ 5, 6. Indeed, FTB has not assessed or determined Debtor's personal income taxes for the 2022 tax year. Navarette Decl., ¶ 7. Nor has the administrative procedure for challenging any such assessment or determination been exhausted.[6] The Tax Motion is currently pending before the Court, with a hearing date concurrent with the hearing on confirmation of Debtor's proposed Plan.

The Plan provides that, unless the Holder of an Allowed Administrative Expense Claim agrees to different treatment, such Allowed Administrative Expense Claim shall receive Cash in an amount equal to such claim on the Effective Date or seven Business Days after entry of a final order allowing the claim. Plan at 31:9-14 [Section VI.A.].

The Plan also provides that the holder of any Claims or interest against the bankruptcy estate are enjoined from, among other things, asserting a setoff or recoupment against the Debtor, the Debtor in Possession, the Bankruptcy Estate, the Residual Trust. Plan at 42:10-22 [Section XII.B.].

**ARGUMENT**

The Plan fails to satisfy Bankruptcy Code Section 1129(a), which mandates that "[t]he court shall confirm a plan only if all the . . . requirements [in section 1129(a)] are met." 11 U.S.C. § 1129(a). Bankruptcy Code section 1129(a)(1) requires that the Plan comply with the

---

[5] A tax return would prompt FTB to determine the correct amount of tax owing for the reported tax period. Cal. Rev. & Tax. Code, § 19032.

[6] Any proposed deficiency assessment FTB issues becomes final 60 days after issuance, unless the taxpayer files a written protest to FTB. Cal. Rev. & Tax. Code, §§ 19041, 19042. If the taxpayer timely protests the deficiency assessment, FTB reconsiders the assessment and holds an oral hearing, if requested. Cal. Rev. & Tax. Code, § 19044. FTB's determination on the protest becomes final 30 days after issuance unless the taxpayer appeals the protest determination to the California Office of Tax Appeals. Cal. Rev. & Tax. Code, § 19045. The board's determination on the appeal becomes final 30 days after issuance, unless the taxpayer seeks a rehearing before the board. Cal. Rev. & Tax. Code, § 19048.

applicable provisions of Title 11.  At the confirmation hearing, the Plan Proponents bear the burden of proof to demonstrate that the Plan complies with sections 1129(a) and (b) by a preponderance of the evidence.  *In re Sagewood Manor Associates LP*, 223 B.R. 756, 761 (Bankr. D. Nev. 1998).  "Proof by the preponderance of the evidence means that it is sufficient to persuade the finder of fact that the proposition is more likely true than not."  *Sagewood*, 223 B.R. at 761 (*quoting In re Arnold and Baker Farms*, 177 B.R. 648, 654 (B.A.P. 9th Cir. 1994).)  The Plan fails to meet this standard and fails to demonstrate feasibility as required under the Bankruptcy Code.

The Plan is not feasible as required under Bankruptcy Code section 1129(a)(11) because it purports to pay Allowed Administrative Expense Claims in full, yet fails to provide a reserve to pay taxes for the 2022 tax year.  Debtor's tax liabilities for the 2022 tax year are Administrative Expense Claims under the Plan (Plan at 7:3-10 [Definitions]) and section 503(b)(1)(B) of the Bankruptcy Code, as they are post-petition taxes incurred by the estate.  The amount of Debtor's tax liabilities for the 2022 tax year are not yet determined, and cannot be determined prior to January 1, 2023 without Debtor's further action.  Under California law, litigation concerning tax liabilities for a given tax period must consider all disputes arising from the entire tax period, and may not proceed in piecemeal fashion.  *Pope Estate v. Johnson* (1941) 43 Cal. App. 2d 170, 174.  "The rule is quite absolute in its character and applies so as to prevent a second action in the courts involving a particular year's liability even though the facts upon which the second suit rests occurred after the first was decided."  *Id*.  The rule often arises in the context of a taxpayer filing a suit for refund of taxes, and a government taxing authority initiating an action to recover a deficiency during the same tax period.  *Id*.  In that example, the litigation may not proceed until both suits are properly before the court.

Accordingly, the Court's determination concerning the Payments, which will occur in 2022, must include an assessment of Debtor's tax liabilities for the 2022 tax year *in full*.  However, the 2022 tax year is not yet complete and Debtor has not declared a short tax year.  Thus, any judicial determination that issues prior to January 1, 2023 regarding the amount or legality of tax on the Payments would be premature.  Additionally, any determination now would act as *res judicata*

5

Case: 20-30242    Doc# 983    Filed: 04/14/22    Entered: 04/14/22 16:16:19    Page 5 of 8

and preclude further litigation concerning any other of Debtor's state income tax liabilities for 2022. *Pope Estate*, *supra*, 43 Cal. App. 2d at 174. Such a result would prejudice both Debtor and FTB.

Even if Debtor had elected a short tax year, Debtor has failed to meet his burden to demonstrate that the Payments do not constitute taxable income. "The burden of proof on a tax claim in bankruptcy remains where the substantive tax law puts it." (*Raleigh v. Illinois Department of Revenue*, 530 U.S. 15, 26 (2000). In the case of a taxpayer's challenge to the taxing authority's determination, the burden of proof rests with the taxpayer. *See Consolidated Accessories Corp. v. Franchise Tax Board*, 161 Cal.App.3d 1036, 1039 (1984). As stated by the United States Supreme Court, placing the burden of proof on the taxpayer

> reflects . . . the vital interest of the government in acquiring its lifeblood, revenue, . . . the taxpayer's readier access to the relevant information, . . . and the importance of encouraging voluntary compliance by giving taxpayers incentives to self-report and to keep adequate records in case of dispute . . . .

(*Raleigh*, 530 U.S. at 21.)

As set forth fully in FTB's Opposition to the Tax Motion, Debtor has not demonstrated that the Payments are not compensation, consideration for the Otto Acquisition, or a contingent liability concerning the Otto Acquisition, each of which constitutes taxable gross income. Nor has Debtor met his burden to demonstrate that the Payments are insurance payments, that he did not receive a "tax benefit"—such as an exclusion, deduction or credit—in a prior tax year, that the Payments are a working condition fringe, or that the Payments are deductible reimbursements, each of which might exclude the Payments from Debtor's taxable gross income.

Because the Tax Motion and Plan lack information regarding the allocation of the Payments between various purposes, and because the amount of the settlement payment to Uber is redacted, the best estimation of the upper limit of Debtor's state tax liabilities concerning the Payments is $21,984,739.06. This amount represents Debtor's tax rate applied to the published amount of the California Supreme Court judgment against Debtor of $179,047,998.64, which is presumably more than the amount of the Payments. The Plan does not provide a means for payment to FTB

1  of an administrative expense in this amount, much less payment to the IRS for the same tax year.

2  Accordingly, the Plan is not feasible.

3  Given the problems with Debtor's Tax Motion and the subsequent infeasibility of the Plan,

4  Debtor's Plan also seeks an improper injunction that could prevent FTB from recovering the

5  disputed taxes under California law.  The Plan provides that:

6
> [A]ll Entities who have held, hold or may hold Claims against or interests in the Bankruptcy Estate shall be permanently enjoined from taking any of the following actions against the Debtor, the Debtor in Possession, the Bankruptcy Estate, the Residual Trust, or any of their property on account of any such claims or interests: . . . (4) asserting a setoff, right of subrogation, or recoupment of any kind against any debt, liability, or obligation due to the Debtor, except as part of the claims resolution process set forth in Section X of this Combined Plan and Disclosure Statement.

11  Plan at 42:13-22 [Section XII.B.]

12  In light of the dispute concerning whether the Payments constitute taxable income, and in

13  the face of unknown tax effects that could spread across multiple tax years, depriving FTB of

14  basic tax collection tools such as a setoff[7] should not be permitted.

15  ## CONCLUSION

16  For the foregoing reasons, FTB respectfully requests that this Court enter an order denying

17  confirmation of Debtor's Combined Disclosure Statement and Chapter 11 Plan Dated March 29,

18  2022, and grant such other further relief as the Court deems proper

19  Dated:  April 14, 2022                              Respectfully submitted,

20                                                      ROB BONTA
                                                        Attorney General of California
21                                                      MICHAEL D. GOWE
                                                        Supervising Deputy Attorney General
22

23                                                       */s/ Cara M. Porter*
24                                                      CARA M. PORTER
                                                        Deputy Attorney General
25                                                      *Attorneys for Creditor*
                                                        *California Franchise Tax Board*

26

27

28
---
[7] See, e.g. Cal. Rev. & Tax Code §§ 19108, 19314 permitting setoffs and recoupments. See also 11 U.S.C §§ 362(b)(26), 553 permitting setoffs related to pre-petition debts.

7

# CERTIFICATE OF SERVICE

Case Name: **In re Anthony Scott Levandowski** No. **20-30242 HLB**

I hereby certify that on <u>April 14, 2022</u>, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

➢ **OBJECTION OF CALIFORNIA FRANCHISE TAX BOARD TO CONFIRMATION OF DEBTOR'S COMBINED DISCLOSURE STATEMENT AND CHAPTER 11 PLAN DATED MARCH 29, 2022**

➢ **DECLARATION OF SHEILA NAVARETTE IN SUPPORT OF OBJECTION OF CALIFORNIA FRANCHISE TAX BOARD TO CONFIRMATION OF DEBTOR'S COMBINED DISCLOSURE STATEMENT AND CHAPTER 11 PLAN DATED MARCH 29, 2022**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on <u>April 14, 2022</u>, at San Francisco, California.

_____
Rachel Patu
Declarant

_____
Signature

SF2022400607
43157359 DOCX