1  ROB BONTA
   Attorney General of California
2  LISA W. CHAO
   Supervising Deputy Attorney General
3  JOHN C. KEITH
   Deputy Attorney General
4  State Bar No. 229755
     300 South Spring Street, Suite 1702
5     Los Angeles, CA  90013-1230
     Telephone:  (213) 269-6251
6     Fax:  (916) 731-2144
     E-mail:  John.Keith@doj.ca.gov
7  *Attorneys for Creditor*
   *Franchise Tax Board*

8

IN THE UNITED STATES BANKRUPTCY COURT

9

FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

SAN FRANCISCO DIVISION

11

12

| | |
|---|---|
| **In re:** | CASE NO. 20-30242 HLB |
| **ANTHONY SCOTT LEVANDOWSKI,** | Ch. 11 |
| Debtor. | **FRANCHISE TAX BOARD'S RESPONSE BRIEF ON REMAND** |
| | Hearing:    TBD<br>Courtroom: 19<br>Judge       Hon. Hannah L. Blumenstiel |

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

Page

INTRODUCTION ...................................................................................................... 1

BACKGROUND .......................................................................................................... 3

ARGUMENT ............................................................................................................... 3

    I.     On Remand, All Issues Not Decided by the District Court Remain Open ............ 3

    II.    The Settlement Payment Comes Within the Statutory Definition of Gross Income .......................................................................................................... 4

    III.   Levandowski's Argument that He Already Paid Taxes on His Income Is Unsubstantiated, He Cannot Have Paid Taxes on the $52 Million of the Judgment that Was Not a Clawback, and His Footnoted Argument Under the Claim of Right Doctrine Is Not Properly Before the Court ............................. 7

    IV.   The Settlement Payment Was Not Insurance At All................................................ 8

        A.    Both California and Other Authorities Are Relevant to this Inquiry .......... 8

        B.    The Indemnity Agreement and Settlement Payment Do Not Meet Commonly Accepted Notions of Insurance Under California or Other Law ...................................................................................................... 9

        C.    There Was Insufficient Risk Distribution for There To Be Insurance ...... 11

    V.    The Settlement Payment Was Not Akin to Types of Insurance Excluded from Gross Income, and Levandowski's Authorities Are All Inapposite............. 12

    VI.   The Tax Benefit Rule Does Not Apply ................................................................. 14

    VII.   The Settlement Payment Was Not a Working Condition Fringe ......................... 17

        A.    Levandowski Was Not Employed by Uber as Required at the Relevant Time .................................................................................................. 17

        B.    The Settlement Payment Would Not Have Been Deductible Under Section 162 .................................................................................................. 18

    VIII.  The Settlement Payment Was Not a Deductible Reimbursement......................... 19

CONCLUSION ......................................................................................................... 20

# TABLE OF AUTHORITIES

Page

CASES

*Actavis Lab'ys, FL, Inc. v. United States*
161 Fed. Cl. 334 (2022) .......................................................................... 18

*Agric. Lab. Rels. Bd. v. Ruline Nursery Co.*
115 Cal. App. 3d 1005 (1981)................................................................. 14

*Am. Mut. Life Ins. Co. & Subsidiaries v. United States*
267 F.3d 1344 (Fed. Cir. 2001).......................................................... 16, 17

*AMERCO & Subsidiaries v. Comm'r*
96 T.C. 18 (1991) ............................................................................ 11, 12

*Avrahami v. Comm'r of Internal Revenue*
149 T.C. 144 (2017) ............................................................... 8, 9, 11, 12

*Bank of the West v. Super. Ct.*
2 Cal. 4th 1254 (1992) ........................................................................... 9

*Biehl v. Comm'r*
351 F.3d 982 (9th Cir. 2003)................................................................ 20

*Biehl v. Comm'r of Internal Revenue Serv.*
118 T.C. 467 (2002)......................................................................... 17, 20

*Bos. Mut. Ins. v. Murphree*
242 F.3d 899 (9th Cir. 2001)................................................................. 13

*California Shoppers, Inc. v. Royal Globe Ins. Co.*
175 Cal. App. 3d 1 (1985)..................................................................... 10

*Caylor Land & Dev., Inc. v. Comm'r of Internal Revenue*
121 T.C.M. (CCH) 1205 (T.C. 2021) .................................................... 12

*Certain Underwriters at Lloyd's London v. ConAgra Grocery Prod. Co., LLC*
77 Cal. App. 5th 729 (2022).................................................................. 10

*Chu v. Canadian Indem. Co.*
224 Cal. App. 3d 86 (1990).................................................................. 10

*Clark v. Comm'r*
40 B.T.A. 333 (1939) ........................................................................... 13

ii

FTB Response Br. on Remand 20-30242 HLB

*Clougherty Packing Co. v. Commissioner*
  811 F.2d 1297 (9th Cir. 1987) ................................................. 11

*Comm'r v. Glenshaw Glass Co.*
  348 U.S. 426 (1955) ................................................................. 5

*Cung v. Comm'r*
  105 T.C.M. (CCH) 1508 (T.C. 2013) ................................... 13

*Dollinger DeAnza Assocs. v. Chicago Title Ins. Co.*
  199 Cal. App. 4th 1132 (2011) ............................................ 13

*Est. of Backemeyer v. Comm'r of Internal Revenue*
  147 T.C. 526 (2016) ............................................................... 15

*F.T.C. v. Am. Nat. Cellular*
  868 F.2d 315 (9th Cir. 1989) ................................................ 14

*Far W. Fed. Bank, S.B. v. Off. of Thrift Supervision-Dir.*
  119 F.3d 1358 (9th Cir. 1997) .............................................. 14

*Garvey v. State Farm Fire & Cas. Co.*
  48 Cal. 3d 395 (1989) ........................................................... 13

*Getty v. Comm'r*
  913 F.2d 1486 (9th Cir. 1990) ......................................... 7, 13

*Gulf Oil Corp. v. Comm'r of Internal Revenue*
  89 T.C. 1010 (1987) ............................................................... 12

*Hall v. City of Los Angeles*
  697 F.3d 1059 (9th Cir. 2012) ................................................ 4

*Harper Group v. Comm'r*
  96 T.C. 45 (1991) ................................................................... 12

*Henry v. Comm'r of Internal Revenue*
  62 T.C. 605 (1974) ................................................................. 14

*Hillsboro Nat. Bank v. Comm'r*
  460 U.S. 370 (1983) .......................................................... 16, 17

*Holliday v. Comm'r of Internal Revenue*
  121 T.C.M. (CCH) 1528 (T.C. 2021) ................................... 13

Case: 20-30242    Doc# 1297    Filed: 12/04/23    Entered: 12/04/23 14:26:48    Page 4 of
27

FTB Response Br. on Remand 20-30242 HLB

*Hudspeth v. Comm'r*
914 F.2d 1207 (9th Cir. 1990)........................................................... 15, 17

*Huff v. Comm'r of Internal Revenue*
80 T.C. 804 (1983) ................................................................. 5, 6, 7, 14

*Huff*
80 T.C. at 817–18 .............................................................................. 6

*In re Liuzzo*
204 B.R. 235 (Bankr. N.D. Fla. 1996) ............................................... 8

*INDOPCO, Inc. v. Comm'r*
503 U.S. 79 (1992) .......................................................................... 19

*J.C. Penney Cas. Ins. Co. v. M. K.*
52 Cal. 3d 1009 (1991) .................................................................. 10

*John Hancock Fin. Servs., Inc. v. United States*
57 Fed. Cl. 643 (2003) ................................................................... 16

*Matula v. Comm'r*
40 T.C. 914 (1963) .......................................................................... 5

*Matula*
914 T.C. at 919-21 .......................................................................... 5

*Milenbach v. Comm'r*
318 F.3d 924 (9th Cir. 2003)........................................................... 13

*Nguyen v. United States*
792 F.2d 1500 (9th Cir. 1986)......................................................... 4

*O'Gilvie v. United States*
519 U.S. 79 (1996) ..................................................................... 12, 13

*O'Malley v. Comm'r*
91 T.C. 352 (1988) .......................................................................... 5

*Off. Depot, Inc. v. AIG Specialty Ins. Co.*
722 F. App'x 745 (9th Cir. 2018) .................................................... 10

*Ogden Martin Sys., Inc. v. San Bernardino Cnty., Cal.*
932 F.2d 1284 (9th Cir. 1991).......................................................... 14

Case: 20-30242    Doc# 1297    Filed: 12/04/23    Entered: 12/04/23 14:26:48    Page 5 of
27

FTB Response Br. on Remand 20-30242 HLB

*Pineda v. Bank of Am., N.A.*
   50 Cal. 4th 1389 (2010) .......................................................................... 14

*R.V.I. Guar. Co. & Subsidiaries v. Comm'r*
   145 T.C. 209 (2015) ................................................................................ 12

*Reese v. United States*
   28 Fed. Cl. 702 (1993) ...................................................................... 12, 13

*Sachs v. Comm'r*
   32 T.C. 815 (1959) .................................................................................... 5

*Sager Glove Corp. v. Comm'r*
   36 T.C. 1173 (1961) ................................................................................ 13

*Schwartz Rojas v. Comm'r*
   901 F.2d 810 (9th Cir. 1990).............................................................. 16, 17

*Trailer Marine Transp. Corp. v. Chicago Ins. Co.*
   791 F. Supp. 809 (N.D. Cal. 1992) ......................................................... 10

*United States v. Cliatt*
   338 F.3d 1089 (9th Cir. 2003).................................................................. 13

*United States v. Hilton Hotels Corp.*
   397 U.S. 580 (1970).................................................................................. 19

*Upper Deck Co. v. Endurance Am. Specialty Ins. Co.*
   2011 WL 6396413 (S.D. Cal. Dec. 15, 2011).......................................... 10

*Washington Capitols Basketball Club, Inc. v. Barry*
   419 F.2d 472 (9th Cir. 1969).................................................................... 14

*Woodward v. Comm'r*
   397 U.S. 572 (1970).................................................................................. 19

**STATUTES**

26 U.S.C.

§ 132(a)(3)............................................................................................ 17, 18

§ 132(d) ...................................................................................................... 17

§ 62(a)(2)(A) ........................................................................................ 18, 20

FTB Response Br. on Remand 20-30242 HLB

# TABLE OF AUTHORITIES
## (continued)

Page

§ 67(a)(11), (1) ............................................................................................. 4

§ 67(g) ........................................................................................................ 15

§ 111(a) ................................................................................................ 15, 16

§ 162(a) ................................................................................................ 18, 19

§ 263(a)(1) .................................................................................................. 18

Cal. Rev. & Tax. Code

§§ 17071-17073 ............................................................................................ 4

California Insurance Code

§ 22 .......................................................................................................... 10

§ 533 ................................................................................................... 8, 10

**COURT RULES**

Fed. R. Evid. 801-802 ................................................................................... 7

**OTHER AUTHORITIES**

26 C.F.R. § 1.62-2(b), (d) ............................................................................ 20

26 C.F.R. § 1.132-1(b)(2)(i) .......................................................................... 17

26 C.F.R. § 1.263(a)-4, ¶¶ (b)(1)(i) .............................................................. 19

26 C.F.R. § 601.601(d)(2)(v) ........................................................................ 18

FTB Response Br. on Remand 20-30242 HLB

# INTRODUCTION

This matter is back before the Court on remand following the District Court's reversal of this Court's order granting the "Tax Motion" (Doc #946) of debtor Anthony Levandowski ("Levandowski"), which sought a determination that the settlement payment from Uber Technologies, Inc. ("Uber") to Google LLC ("Google") for Levandowski's benefit ("Settlement Payment") did not result in gross income to him. This Court had ruled that the Settlement Payment and the indemnification agreement from which it arose ("Indemnification Agreement") were akin to insurance and so not taxable. The District Court disagreed with this Court's base premise that all insurance is non-taxable and indicated that remand should address the underlying question whether Levandowski received gross income under that term's statutory definition.

He did. That follows from Levandowski's own admissions and assertions, including that:

- He received from his former employer Google more than $127 million in compensation;
- an arbitration award and resulting judgment (collectively, the "Judgment") required Levandowski to disgorge that compensation to Google and also pay about $52 million in interest, attorney's fees and costs, based on his breaches of duty in aiding Google's competitor Uber; and
- the Settlement Payment relieved Levandowski from his obligations under the Judgment.

Those facts easily bring the Settlement Payment under the sweeping definition the Internal Revenue Code (the "Code" [26 U.S.C. § 1, *et seq.*]) gives to gross income, including as income from the discharge of indebtedness and as compensation in connection with Uber's acquisition of Levandowski's self-driving vehicle company "Otto" (and of Levandowski and other key Google employees as part of the deal) (the "Acquisition"). Levandowski's argument that he is no richer after the Judgment and ensuing Settlement Payment than before relies on a cramped conception of gross income that ignores specific examples of it in the Code's definition, and that the United States Tax Court ("Tax Court") has explicitly rejected in cases similar to this one.

The District Court also expressly left open the other underlying question of whether the Indemnification Agreement was properly considered insurance in the first place. It was not. Both in California and generally, due to standard insurance policy exclusions and/or public policy limitations on what is insurable, the Settlement Payment fell well outside commonly accepted

1

1

ETB Response Br. on Remand 20-30242 HLB

notions of insurance, by indemnifying Levandowski against disgorgement of ill-gotten gains and misconduct that the arbitrators' findings reflect was willful and intentionally injurious.  The indemnification arrangement here also lacked sufficient risk distribution to be insurance, and, in general, the cases and contentions Levandowski raises on remand are inapposite and unavailing.

Also unavailing are the three alternative theories Levandowski again raises on remand.  The tax benefit rule requires a prior tax year deduction without tax benefit to exclude a later recovery from income.  But Levandowski admits he did not and could not take a deduction *at all* for the Judgment, due to the amendment of Section 67 of the Code[1] to disallow miscellaneous itemized deductions.  In what would render that amendment a nullity, Levandowski seeks to convert what the Supreme Court has emphasized is a limited rule into a boundless equitable mechanism to make transactions a wash for tax purposes whenever taxpayers claimed to be no richer from them.

Levandowski also argues the Settlement Payment was excludable from gross income as a working condition fringe benefit of, or a deductible reimbursed expense of, his employment with Uber.  Those arguments fail for similar reasons.  Both doctrines require the expense be deductible under another section of the Code.  Even putting aside Section 67's amendment to temporarily disallow miscellaneous itemized deductions, in Levandowski's own words, the "Settlement Payment [wa]s made in connection with Uber's acquisition of Otto" (Doc #946 18:10-11), and as such it is a non-deductible capital expenditure.  Both doctrines also require a current employment relationship, while Levandowski admits he was not employed by Uber either when the Indemnification Agreement was entered into or when the Settlement Payment was made.

Finally, Levandowski relegates to a footnote his argument that, if the Court does find the Settlement Payment gave rise to gross income, then his taxes therefrom should be reduced under the claim of right doctrine because he previously paid taxes on his compensation from Google.  That argument is not properly before the Court.  Levandowski provides no admissible evidence that he previously paid all taxes due on his compensation from Google – much less *what* he paid and would claim as a reduction – and he could not have previously paid taxes on the $52 million of the Judgment that was not a clawback of his compensation from Google.

---

[1] Hereafter, all statutory citations in the form of "Section __" are to the Code.

2

Case: 20-30242    Doc# 1297    Filed: 12/04/23    Entered: 12/04/23 14:26:48    Page 9 of 27

ETB Response Br. on Remand 20-30242 HLB

**BACKGROUND**

As Levandowski did in his opening brief on remand ("OBR," at 3 n.2), Franchise Tax Board ("FTB") refers the Court to the factual background set forth in the Tax Motion, as well as FTB's opposition thereto (Doc #953), concerning the facts underlying this matter and its procedural history leading up to the Court's order granting the Tax Motion (the "Tax Order").

Following appeals by FTB and the U.S. from the Tax Order, the District Court reversed and remanded. ("D. Ct. Order" [Doc #1271].) The District Court held that this Court "erred in excluding the [Settlement] Payment from taxable gross income as a form of insurance as a matter of law" and stated the following concerning Section 61(a)'s general definition of "gross income" as "all income from whatever source derived, including (but not limited to) [various] items:"

> The United States Supreme Court has characterized this definition as "broad" with a "sweeping scope." *Comm'r v. Schleier*, 515 U.S. 323, 327 (1995). It has long since been established that "[t]he broad sweep of this language indicates the purpose of Congress to use the full measure of its taxing power[.]" *Helvering v. Clifford*, 309 U.S. 331, 334 (1940). Similarly to its broad inclusive scope, "exclusions from income must be narrowly construed." *Schleier*, 515 U.S. at 328 (citation omitted).

(D. Ct. Order 14:10-11, 15:15-20.) The District Court further held that "it appears … the bankruptcy court began an analysis untethered from the code" and that "framing the issue in the context of 'insurance' under federal common law … ignores the statutory definition of 'gross income' in the first place." (*Id.* at 16:1-2, 17:10-12.) The District Court expressly stated that its opinion "does not address whether the indemnity agreement was properly considered insurance" (*id.* at 18, n.17), and it provided the following direction concerning remand:

> Having chosen to exercise statutory discretion to make a tax determination under section 505, and since this is not a court of first review, the bankruptcy court may consider the statutory definition of gross income and alternative theories in the first instance upon remand.

(*Id.* at 18:11-14.)

**ARGUMENT**

**I.    ON REMAND, ALL ISSUES NOT DECIDED BY THE DISTRICT COURT REMAIN OPEN**

Levandowski argues that "[t]he District Court's remand direction is narrow and questions only the 'base premise' of this Court's prior finding, namely, that *all* insurance is excludable from taxable gross income." (OBR 1:8-10.) He also argues in various places that this Court agreed

3

FTB Response Br. on Remand 20-30242 HLB

with him that the Indemnification Agreement and Settlement Payment were akin to insurance and that the District Court "identified nothing incorrect about" that, and did not "challenge[]" or "disturb" that conclusion. (OBR 4:15-19, 6:13-15, 8:15-17.)

It is not entirely clear whether Levandowski means that, on remand: (A) he can still argue the Indemnification Agreement and Settlement Payment were akin to insurance because the District Court did not reverse that aspect of this Court's ruling; or (B) FTB is foreclosed from disputing as much for the same reason. If the latter, then Levandowski is wrong.

"[T]he rule of mandate allows a lower court to decide anything not foreclosed by the mandate." *Hall v. City of Los Angeles*, 697 F.3d 1059, 1067 (9th Cir. 2012). "Moreover, when a court is confronted with issues that the remanding court never considered, the mandate require[s] respect for what the higher court decided, not for what it did *not* decide." *Id.* (emphasis in original).[2] Under this standard, the question whether the Indemnification Agreement was akin to insurance in the first place remains open because the District Court expressly left it so. (D. Ct. Order 18, n.17.) Moreover, in general and as discussed above, the District Court's order indicates that remand should involve a broader reexamination of the fundamental question whether the Settlement Payment was gross income under that term's statutory definition.

## II. THE SETTLEMENT PAYMENT COMES WITHIN THE STATUTORY DEFINITION OF GROSS INCOME

The Settlement Payment easily comes within the sweeping scope of Section 61(a)'s general definition of gross income, as well as the specifically listed examples of "Income from discharge of indebtedness" and "Compensation for services." 26 U.S.C. § 67(a)(11), (1).[3] Citing *Comm'r v. Glenshaw Glass Co.,* 348 U.S. 426 (1955), Levandowski argues "the Supreme Court has defined 'income' for tax purpose as 'accession[] to wealth, clearly realized, and over which [the

---

[2] Indeed: "Absent a mandate which explicitly directs to the contrary, a district court upon remand can permit the plaintiff to 'file additional pleadings, vary or expand the issues' (citation). 'While a mandate is controlling as to matters within its compass, on the remand a lower court is free as to other issues,'" and the mandate "leaves to the [lower] court any issue not expressly or impliedly disposed of on appeal." *Nguyen v. United States*, 792 F.2d 1500, 1502 (9th Cir. 1986).

[3] California law provides that Internal Revenue Code sections 61, 62, and 63, relating, respectively, to gross income defined, adjusted gross income defined, and taxable income defined, "shall apply, except as otherwise provided." Cal. Rev. & Tax. Code §§ 17071-17073.

4

owner] have complete dominion'" and that the facts here do not meet that standard.  (OBR 6:24-7:1.)  Levandowski cites no legal authority that what he posits as the standard is not met here, and Section 61(a)(11)'s express inclusion of "discharge from indebtedness" on its face undermines his purely lay reading of *Glenshaw Glass*.  "It is well established that a third person's payment of an obligation of the taxpayer, is equivalent to the receipt of the amount of the obligation by the taxpayer." *O'Malley v. Comm'r*, 91 T.C. 352, 358 (1988) (citing *Old Colony Trust Co. v. Comm'r*, 279 U.S. 716, 729 (1929)).  If deemed initially received by Levandowski and then paid over to Google, the Settlement Payment would easily satisfy Levandowski's proffered standard.[4]

Indeed, however characterized, "[g]enerally, payments by another on behalf of the taxpayer constitute the realization by the taxpayer of gross income of one sort or another." *Huff v. Comm'r of Internal Revenue*, 80 T.C. 804, 814 (1983) (company's payment of civil penalties imposed on employees for acts in ordinary course and scope of employment was gross income to employees).  Accordingly, where entities pay the legal expenses of their officers or employees, and the entities were not parties to the litigation or were not directly liable for the specific amounts at issue, the Tax Court has regularly held that to be income to the individuals. *Id.* at 813-817; *O'Malley*, 91 T.C. at 358-361; *Matula v. Comm'r*, 40 T.C. 914, 916–17, 921 (1963); *Sachs v. Comm'r*, 32 T.C. 815, 819–20, 822 (1959), *aff'd*, 277 F.2d 879 (8th Cir. 1960).

In doing so, the Tax Court has explicitly rejected arguments like Levandowski's that the "Settlement Payment did not represent any accession to wealth" for him.  (OBR 6:27-28.)  *Sachs*, 32 T.C. at 820 (rejecting president and stockholder's argument "that he was not enriched by the payment by the corporation, that he was merely indemnified against the loss to which he was subjected by his conduct of the corporate affairs," and "that his net worth was not increased"); *Matula,* 914 T.C. at 919-21 (quoting extensively from *Sachs* and further finding that, "[i]f the

---

[4] In any event, Levandowski makes too much of *Glenshaw Glass*.  That case merely holds that money received by plaintiffs on account of claims for punitive damages is taxable income, with the Supreme Court stating: "Here we have instances of undeniable accessions to wealth, clearly realized, and over which the taxpayers have complete dominion."  348 U.S. at 431.  The case has nothing to do with whether a third party's payment of a taxpayer's obligation is gross income, as Section 61(a)(11) clearly indicates it may be.  That the Supreme Court found *Glenshaw Glass's* fact pattern *sufficient* to show gross income does not mean it held that that *precise* fact pattern is *essential* to showing gross income.

5

1  union had not retained lawyers for petitioner and then paid their fees and costs, he would have

2  been compelled to retain and pay his own lawyers and expenses," and that "the result was the

3  same as if the union had paid the amounts involved to the petitioner and he had, in turn, made

4  payments to his lawyers for their fees and expenses").

5       Levandowski may argue that the Settlement Payment discharged Uber's own obligation,

6  *i.e.*, to him, under the Indemnification Agreement.  That argument would fail for two reasons.

7       *First*, whether the Indemnification Agreement obligated Uber to indemnify Levandowski

8  for the Judgment was a point: (1) hotly contested by Uber in the proceeding Levandowski brought

9  against it in this Court (the "AVP"); (2) on which this Court denied Levandowski summary

10  judgment; and (3) never decided in the AVP, which the Settlement Payment helped resolve.[5]

11      *Second*, even if one accepted Levandowski's premise, the Tax Court in *Huff* specifically

12  rejected precisely this sort of argument:

13          Petitioners also cite *Ingalls, Ruben,* and *Parker* for the proposition that "when an
          employer makes a payment in order to satisfy and extinguish its own legal obligation
14          the payment by the employer does not result in taxable income to the Petitioners,
          even though they also derive an incidental benefit from such payment."  Surely, such
15          a rule of law would eliminate much of the income tax, since it applies literally to
          virtually all payments of compensation, dividends, interest, rent, royalties, and the
16          items catalogued in section 61(a).  The Internal Revenue Code does not—neither in
          terms nor in necessary implication—direct such a result.
17

18  *Huff*, 80 T.C. at 817–18.  The *Huff* court further stated: "even if we were to assume that Products

19  had successfully managed … to become liable for the civil penalties imposed on petitioner-

20  husbands, then we would conclude that Products incurred the obligation to pay petitioner-

21  husbands' civil penalties as compensation for their services as employees."  80 T.C. at 824 n.14.

22  Likewise here, if the Court assumes Uber incurred the obligation to make the Settlement Payment

23  under the Indemnification Agreement, then it should conclude the Indemnification Agreement

24  was compensation to Levandowski that gave rise to gross income in the form of the Settlement

25  Payment.  Indeed, the Tax Motion is replete with Levandowski's assertions that the

26  ---
[5] (Doc #946 3:13-16; AVP (Adv. Proc. No. 20-03050) Doc #s 1 [Complaint], 34 [Answer to
Complaint], 45 [Amended Answer], 49 [Amended Complaint], 50 [Amended Answer], 63
27  [Answer to Amended Complaint], 118 [Levandowski MSJ as to certain Uber counterclaims and
defenses], 149 [Uber Opp. to MSJ], 254 [Uber Amended Opp. to MSJ], 344 [Order re MSJ], 404
28  [Uber Trial Br. – although Doc #344 not publicly available, explains that Court denied MSJ], 408
[Levandowski Trial Br.], 457 [Stip. To Dismiss], 458 [Order granting Stip. To Dismiss].)

1    Indemnification Agreement was an essential condition of his agreement to become Uber's

2    employee.  (Doc #946 1:23-28, 16:17-18, 18:14-17, 21:16-17.)

3        For that reason, Levandowski gets no help from citing *Milenbach v. Comm'r*, 318 F.3d 924

4    (9th Cir. 2003), and *Getty v. Comm'r*, 913 F.2d 1486 (9th Cir. 1990), to argue that, "[t]o

5    determine whether a settlement payment is taxable as gross income, the Ninth Circuit first asks

6    'in lieu of what were the damages awarded?'."  (OBR 4:8-12.)  As *Getty* states, "the nature of the

7    underlying action determines the tax consequences of the resolution of the claim," 913 F.2d at

8    1490, and the Settlement Payment was made "in settlement of Levandowski's litigation to

9    enforce Uber's indemnity obligation to him."  (OBR 4:14-16.)  Under this approach, despite the

10   lack of any prior adjudication to that effect, the Court treats the Indemnification Agreement as

11   enforceable and requiring Uber to cover the Judgment against Levandowski, *i.e.*, it "engage[s] in

12   the fiction of treating the settlement proceeds … as if they had been received from [Uber] in satis-

13   faction of [its] alleged promise" to indemnify Levandowski. *Getty*, 913 F.2d at 1491.  Thus,

14   under this approach, the Settlement Payment is taxable compensation.  *Huff*, 80 T.C. at 824 n.14.

15   **III.   LEVANDOWSKI'S ARGUMENT THAT HE ALREADY PAID TAXES ON HIS INCOME IS
16        UNSUBSTANTIATED, HE CANNOT HAVE PAID TAXES ON THE $52 MILLION OF THE
           JUDGMENT THAT WAS NOT A CLAWBACK, AND HIS FOOTNOTED ARGUMENT
17        UNDER THE CLAIM OF RIGHT DOCTRINE IS NOT PROPERLY BEFORE THE COURT**

18       Levandowksi argues:

19       Google successfully won an arbitral award clawing back Levandowski's salary, com-
         pensation, and bonuses. Dkt. 918, Ex. B ("Award") at 89-90. Levandowski previously
20       paid taxes on that salary, compensation, and bonuses, and the award was not adjusted
         to account for that tax payment. Award at 121-122. The Uber Settlement Payment did
21       not result in income gained by Levandowski, and if Levandowski were again taxed,
         he would be taxed for the second time on the same underlying compensation.

22   (OBR 7:4-10.)  The only "evidence" Levandowski cites to show he previously paid his taxes on

23   his compensation from Google is a portion of the arbitration award in which the arbitrators

24   discuss Levandowski's own argument that he previously paid those taxes and his liability should

25   be reduced accordingly.  (*Id.*)  This is inadmissible hearsay. Fed. R. Evid. 801-802.

26       Levandowski also ignores that, out of the roughly $179 million of the Judgment against

27   him, only about $127 million was disgorgement of his compensation from Google, while about

28   $52 million was for interest, attorney's fees, and costs.  (Doc #946 2:20-25; Claim 9-1 Part 2

7

[Google Proof of Claim Addendum].)  Levandowski cannot have previously paid taxes on the non-clawback portion of the Judgment because that was not money he previously received from Google.  In a footnote, he seems to concede this, stating: "*if* the Uber Settlement Payment were to result in gross income, the Debtor *would* take the position that his taxes arising from such gross income would be *reduced* under the 'claim of right' doctrine."  (OBR 7 n.5) (emphasis added).

As the conditional nature ("if" and "would") of Levandowski's footnoted argument under the claim of right doctrine reflects, it is not now properly before the Court.  Furthermore, the Tax Motion merely sought a determination that the Settlement Payment "does not give rise to gross income for the Debtor," *i.e.*, *at all*.  (Doc #946 1:6-7.)  Levandowski did not request an alternative ruling that his gross income should be *reduced* based on his alleged prior payment of taxes, and he has not presented any evidence of what he previously paid and would claim as a reduction.

## IV.    THE SETTLEMENT PAYMENT WAS NOT INSURANCE AT ALL

### A.    Both California and Other Authorities Are Relevant to this Inquiry

Citing *AMERCO & Subsidiaries v. Comm'r*, 96 T.C. 18, 38 (1991), Levandowski argues that there are "four 'guiding principles' for identifying insurance" for tax purposes: "(1) the existence of 'insurance risk,' (2) risk-shifting and distributing, (3) where not statutorily defined, 'insurance' is to be defined in its 'commonly accepted sense,' and (4) that matters of 'Federal income taxation must be resolved with principles of Federal income taxation borne in mind.'" (OBR 5:7-11.)  As to the third and fourth of these "guiding principles," California provides a statutory definition of insurance (Cal. Ins. Code § 22), and FTB assesses California state, not federal, taxes.  In addition, the Indemnification Agreement has a California choice of law clause. (Doc #918-1, Ex. G at 11.)  Therefore, California law is relevant here.  *See, e.g., In re Liuzzo*, 204 B.R. 235, 237 (Bankr. N.D. Fla. 1996).  Moreover, Levandowski cites California cases to argue that "indemnity agreements are generally interpreted in the same way insurance agreements are" (OBR 4 n.3; Doc #946 7 n.3), and, at the hearing, his counsel explicitly invoked California Insurance Code section 533 to argue the Judgment was insurable.  (Doc #1024 32:11-14.)

That said, FTB acknowledges this dispute involves federal as well as California taxes, and also that, in its opposition to the Tax Motion, FTB cited *Amerco* and *Avrahami v. Comm'r of*

8

*Internal Revenue*, 149 T.C. 144, 181 (2017), to argue that, "[t]o be 'insurance,' an arrangement must (1) involve insurance risk, (2) involve risk shifting, (3) involve risk distribution, and (4) meet the commonly accepted notions of insurance." (Doc #953 15:6-9.) Therefore, both California and non-California authorities are relevant to this inquiry.

### B. The Indemnity Agreement and Settlement Payment Do Not Meet Commonly Accepted Notions of Insurance Under California or Other Law

To analyze whether an arrangement meets commonly accepted notions of insurance, federal courts "look at numerous factors, including whether … the policies were valid and binding" and "whether the policies covered typical insurance risks." *Avrahami*, 149 T.C. at 191. The Indemnification Agreement cannot have been valid and binding as insurance, and it and the Settlement Payment did not cover typical insurance risks, whether under California law or more generally. In fact, Levandowski himself has described the Indemnification Agreement as "extraordinary." (AVP Doc #408 2:1.) Moreover, per Levandowski, the Judgment was in principal part for disgorgement of his compensation from Google, based on his breaches of duty to Google in aiding its competitor Uber. (OBR 7:2-5, 9:12-13, 10:4-6; Doc #946 17:5-8, 20:14-17.) Under California law, it is "well established that one may not insure against the risk of being ordered to return money or property that has been wrongfully acquired." *Bank of the West v. Super. Ct.*, 2 Cal. 4th 1254, 1266 (1992).

Furthermore, that rule is not limited to California. Levandowski has argued that the Indemnification Agreement provided something analogous to "directors and officers" ("D&O") insurance (Doc #946 9:16-10:8; OBR 5:23-23, 18:11-12), and, if it were analogous to any type of insurance policy, that would be the one. However, "[t]he D&O policy is not intended to protect directors and officers from liability for their receipt of personal profits, or improper gains or advantages to which they are not legally entitled. Almost all D&O policies exclude coverage for such claims." Chapter 8: Policy Exclusions, Directors & Officers Liability Ins. Deskbook Ch. 8.

The Indemnification Agreement and Settlement Payment also did not cover typical insurance risks for another reason: the willful, intentional misconduct at issue. As the arbitrators found in their award against Levandowski and his co-respondent that resulted in the Judgment:

9

FTB Response Br. on Remand 20-30242 HLB

- "The breach of loyalty claim is based on [Respondents'] proposal not only to sell the company to Uber but to do so in a way that would harm Google."

- "Respondents were fully aware and intended that the sale of Otto's technology to Uber would give Uber a significant competitive advantage over Google."

- "Levandowski told Uber that taking a team of Google employees to Uber would damage Google because they were going right across the street to the competitor."

- "Respondents believed that the loss of this Google team to Uber could have a 'distressing hit on the valuation' and that [Google] Chauffeur's 'valuation would be much lower.'"

- "Respondents wanted their plan to have added effectiveness by having the solicited employees stage a mass walk-out." And

- "[I]n anticipation of the devastating damages that their plan was expected to inflict on Google, and the consequent risk that Google would seek to recoup those damages from them, Respondents sought and obtained an agreement from Uber to indemnify them for their 'Bad Acts.'" (AVP Doc #16-1 at 58-59 of 71.)

Such conduct falls well outside California Insurance Code section 22's definition of insurance as "a contract whereby one undertakes to indemnify another against loss, damage, or liability arising from a contingent or unknown event." That code section has been cited as prohibiting insurance against nonaccidental harm inflicted by the insured. *Chu v. Canadian Indem. Co.*, 224 Cal. App. 3d 86, 94–95 (1990); *Upper Deck Co. v. Endurance Am. Specialty Ins. Co.*, 2011 WL 6396413, at *7 (S.D. Cal. Dec. 15, 2011). Insuring such conduct would also be specifically prohibited by California Insurance Code section 533, which prohibits coverage of "deliberate conduct that the insured expected or intended to cause damage." *Certain Underwriters at Lloyd's London v. ConAgra Grocery Prod. Co., LLC*, 77 Cal. App. 5th 729, 740 (2022). "The appropriate test for 'expected' damage is whether the insured knew or believed its conduct was substantially certain or highly likely to result in that kind of damage." *Id.* That test is easily met by the arbitrators' foregoing findings.[6]

---

[6] In the District Court, Levandowski cited *Off. Depot, Inc. v. AIG Specialty Ins. Co.*, 722 F. App'x 745 (9th Cir. 2018), which holds that Section 533 requires more than recklessness (*id.* at 746), and *California Shoppers, Inc. v. Royal Globe Ins. Co.*, 175 Cal. App. 3d 1 (1985), which holds that Section 533 requires "a 'preconceived design to inflict injury.'" *Id.* at 32. The first of those cases is a nonbinding unpublished decision. The second has been abrogated, as recognized by this District. *Trailer Marine Transp. Corp. v. Chicago Ins. Co.*, 791 F. Supp. 809, 811 (N.D. Cal. 1992) ("the *California Shoppers* case was based upon *Clemmer* [*v. Hartford Ins. Co.*, 22 Cal. 3d 865 [1978]], and was before the California Supreme Court revisited *Clemmer* in *J.C. Penney*"); *J.C. Penney Cas. Ins. Co. v. M. K.*, 52 Cal. 3d 1009, 1025 (1991) ("*Clemmer* does not require a showing … of [an] insured's 'preconceived design to inflict harm' when the insured seeks

Again, this is not limited to California. "Most liability policies contain an exclusion of liability for injury intentionally caused by the insured." 20 A.L.R.3d 320. More specifically:

> Contemporary liability insurance policies generally provide coverage on an 'occurrence' basis, which is most often defined to mean, in pertinent part, an accident which results in bodily injury or property damage neither expected or intended from the standpoint of the insured.

31 A.L.R.4th 957. "[T]he courts have generally rejected the view that the insured must have had the specific intent to cause the type of injury suffered in order to render applicable an intentional injury exclusion clause in a liability insurance policy," and, "[w]here the courts have explicitly construed the term 'expected' for purposes of the intentional injury exclusion clause, they have generally stated that the term means a high degree of certainty or probability, or some variation of this language." *Id.* Thus, the general exclusion is either the same as or broader than California's.

## C. There Was Insufficient Risk Distribution for There To Be Insurance

Levandowksi's argument as to the requirement of risk distribution amounts to no more than that "the record remains unchanged and this Court previously agreed" with Levandowski. (OBR 5:17.) But one thing has changed. The District Court has observed that, while this "court noted that much of the authority provided by the FTB was not persuasive because it concerned captive insurance … *AMERCO & Subsidiaries*, the only case cited in the oral ruling, is also a captive insurance case." (D. Ct. Order 5 n.5.) Accordingly, FTB's argument warrants a second look.

Risk distribution "is based on the law of large numbers—a statistical concept that theorizes that the average of a large number of independent losses will be close to the expected loss." *Avrahami*, 149 T.C. at 181. "By assuming numerous relatively small, independent risks that occur randomly over time, the insurer smoothes out losses to match more closely its receipt of premiums." *Clougherty Packing Co. v. Commissioner*, 811 F.2d 1297, 1300 (9th Cir. 1987). Here, the risks subject to the Indemnification Agreement were not "numerous" or "independent." *Id.* There was a pool of no more than six potential insureds: Otto, Levandowski, and four other employees. (Doc #946 15:6-9.) Their risks would all arise from the same transaction – the Acquisition – and occur not randomly over time but in the period following the Acquisition.

coverage for an intentional and wrongful act if the harm is inherent in the act itself."). In any event, the arbitrators' findings would satisfy even the standards of Levandowski's cases.

11

FTB examined numerous cases, which uniformly indicated that adequate risk distribution requires a much larger pool of risks or a large percentage of business revenue.[7] Uber spreading risk over six insureds based on one transaction would set new low bar and is contrary to all relevant authority. Moreover, to the extent risk distribution is measured by a percentage of a business's revenue, Levandowski offered no evidence of Uber's revenue. The chances are quite low the Settlement Payment amounts to more than a rounding error on Uber's annual revenue.

## V. THE SETTLEMENT PAYMENT WAS NOT AKIN TO TYPES OF INSURANCE EXCLUDED FROM GROSS INCOME, AND LEVANDOWSKI'S AUTHORITIES ARE ALL INAPPOSITE

Levandowski cites *O'Gilvie v. United States*, 519 U.S. 79 (1996), and *Reese v. United States*, 28 Fed. Cl. 702 (1993), to argue that accident and health insurance payments are excluded from gross income. (OBR 8:5-13.) Those cases are inapposite. Neither is an insurance case or involves facts that remotely resemble those here. More fundamentally, neither accident nor health insurance resembles what happened here. The District Court already recognized that with respect to accident insurance, rejecting Levandowski's citation to a treatise for the following:

> When damages resulting from a taxpayer's tortious behavior are paid by an insurance company, as in the case of an automobile accident caused by the taxpayer's negligence, the payment is not taxed, even though the taxpayer's liability to the victim is thereby discharged.

(D. Ct. Order 16 n.13.) As the District Court held:

> [T]hat quote contemplates accident claims, which again are expressly addressed by the tax code, and fails to refer to judgments as exists here. It lends no primary authority to exempt a settlement payment made during a bankruptcy proceeding concerning various rights and obligations under an indemnity agreement.

(*Id.*) For that reason and others that are apparent on the face of things, Levandowski gets nowhere from his continued attempts to analogize the facts here to accident insurance, or from his

---

[7] *See, e.g., R.V.I. Guar. Co. & Subsidiaries v. Comm'r*, 145 T.C. 209, 228 (2015) (adequate risk distribution where annual policies covered 754,532 vehicles, 2,097 properties, and 1,387,281 commercial equipment assets); *Caylor Land & Dev., Inc. v. Comm'r of Internal Revenue*, 121 T.C.M. (CCH) 1205 (T.C. 2021) (captive's 34 independent risks not sufficient, and consolidated group's risks heavily tied to group's central entity; strong risk correlation between smaller entities and central entity prevented group from having adequate distribution); *Harper Group v. Comm'r*, 96 T.C. 45, 59 (1991) (30% of business insuring unrelated customers sufficient); *Gulf Oil Corp. v. Comm'r of Internal Revenue*, 89 T.C. 1010, 1019 (1987) (net premium income from insurance of 2% of total annual net premium income insufficient); *AMERCO & Subsidiaries v. Comm'r*, 96 T.C. at 35, 44-45 (unrelated insureds comprising over 50% of captive's business sufficient); *Avrahami*, 149 T.C. at 181-190.

12

1 renewed citation on remand to the treatise excerpt the District Court rejected. (OBR 10:6-13.)

2 It should require no extended discussion to distinguish health insurance, but FTB notes that

3 health insurance is a first-party coverage. *See, e.g.*, *United States v. Cliatt*, 338 F.3d 1089, 1093

4 (9th Cir. 2003); *Bos. Mut. Ins. v. Murphree*, 242 F.3d 899, 903 (9th Cir. 2001); *Dollinger DeAnza*

5 *Assocs. v. Chicago Title Ins. Co.*, 199 Cal. App. 4th 1132, 1154 (2011). By contrast, if it did not

6 fail to constitute insurance as explained above, the Indemnification Agreement would have been

7 liability insurance, which is a third-party coverage. "[I]f the insured is seeking coverage against

8 *loss or damage sustained by the insured,* the claim is first party in nature. If the insured is

9 seeking coverage against *liability of the insured to another,* the claim is third party in nature."

10 *Garvey v. State Farm Fire & Cas. Co.*, 48 Cal. 3d 395, 399 n.2 (1989) (emphasis in original).

11 Levandowski cites several cases[8] for the proposition that litigation settlements or recoveries

12 that merely replace lost value or capital are not taxable. Those cases are all inapposite. Like

13 *O'Gilvie* and *Reese*, none of them is an insurance case or involves facts that resemble those here.

14 Far more on point are cases involving settlements or recoveries on claims for breach of an

15 employment contract. As stated above, the Tax Motion is replete with Levandowski's assertions

16 that the Indemnification Agreement was an essential condition of his agreement to become Uber's

17 employee, and the Settlement Payment was made "in settlement of Levandowski's litigation to

18 enforce Uber's indemnity obligation to him." (OBR 4:14-16.) In other words, per Levandowski,

19 Uber's agreement to indemnify him was part of the compensation Uber promised to provide him

20 as an employee, he sued Uber because it failed to provide that compensation, and the Settlement

21 Payment was made in lieu of that compensation. *See Getty*, 913 F.2d at 1490. Thus, the

22 Settlement Payment was taxable as ordinary income:

23 [W]hat petitioner in the present case received in compromise or settlement of his
claims for breach of his employment contract must be held to be compensatory, and
24 fully taxable as ordinary income. What he was suing for was commissions, upon
which he would have been fully taxable as compensation for services; what he
25 received when he compromised his suit must be held to have been impressed with
that same compensatory, taxable character.
26

27 ---
[8] *Milenbach v. Comm'r*, 318 F.3d 924 (9th Cir. 2003); *Cung v. Comm'r*, 105 T.C.M. (CCH) 1508
(T.C. 2013); *Sager Glove Corp. v. Comm'r*, 36 T.C. 1173 (1961); *Holliday v. Comm'r of Internal*
28 *Revenue*, 121 T.C.M. (CCH) 1528 (T.C. 2021); *Clark v. Comm'r*, 40 B.T.A. 333, 335 (1939).

13

*Henry v. Comm'r of Internal Revenue*, 62 T.C. 605, 606 (1974); *see also Putchat v. Comm'r*, 425 F.2d 737, 737 (3d Cir. 1970); *Huff*, 80 T.C. at 824 n.14 (if enforceable, employer's alleged agreement to pay employees' civil penalties would be taxable "as compensation for their services as employees"); 8P1 Nichols Cyc. Legal Forms § 184:84 ("Contract damages for breach of an employment contract are taxed to the employee as ordinary income.").

## VI.   THE TAX BENEFIT RULE DOES NOT APPLY

The gist of Levandowski's tax benefit rule argument is that "[i]t would not be appropriate to tax a person on a payment that merely reverts him to the *status quo ante*." (OBR 11:7-9.) He claims the Settlement Payment does this because, due to the amendment of Section 67 to disallow miscellaneous itemized deductions, "Levandowski receives no tax Benefit" from the Judgment "despite the fact that the money returned was already taxed to Levandowski when received from Google." (OBR 12:7-13.) This argument rests on three faulty premises.

First, Levandowski misconceives the *status quo ante* by ignoring his receipt of over $127 million in compensation from Google. As discussed above, the Settlement Payment enabled him to keep that compensation despite a Judgment that, per Levandowski, required him to disgorge and provide restitution of it to Google. "The status quo is the last, uncontested status preceding the commencement of the controversy." *Washington Capitols Basketball Club, Inc. v. Barry*, 419 F.2d 472, 476 (9th Cir. 1969); *Agric. Lab. Rels. Bd. v. Ruline Nursery Co.*, 115 Cal. App. 3d 1005, 1015 (1981) (same). Levandowski cannot describe as "uncontested" the state of affairs after he received all those ill-gotten gains subject to restitution. Rather, "[w]ith regard to restitution, the goal is to restore plaintiff to the status quo ante." *Pineda v. Bank of Am., N.A.*, 50 Cal. 4th 1389, 1401 (2010).[9] Thus, compared to the *status quo ante*, Levandowski has gained both tens of millions of dollars in compensation and a release from a Judgment that would have required him to pay that *and even more* to Google.

Second, as set forth above, the assertion that the money encompassed by the Judgment "was already taxed to Levandowski when received from Google" (OBR 12:12-13) is both unsupported

---

[9] *See also Far W. Fed. Bank, S.B. v. Off. of Thrift Supervision-Dir.*, 119 F.3d 1358, 1367 (9th Cir. 1997); *Ogden Martin Sys., Inc. v. San Bernardino Cnty., Cal.*, 932 F.2d 1284, 1287 (9th Cir. 1991); *F.T.C. v. Am. Nat. Cellular*, 868 F.2d 315, 322 (9th Cir. 1989).

14

by admissible evidence and, at least to the tune of about $52 million, incapable of being supported by any evidence, as it is simply wrong. Levandowski cannot have already been taxed on the $52 million of the Judgment constituting interest, attorney's fees, and costs, because that was not money he received from Google as compensation.

Third, the assertion that, but for the amendment of IRC section 67, Levandowksi would have been entitled to a deduction under Section 162 or 165, is both conclusory and wrong.[10] As discussed further below, among other things, the Settlement Payment was instead a non-deductible capital expenditure of Uber in connection with the Acquisition.

Levandowski's argument also fails because he seeks to take what the Supreme Court has emphasized is a limited doctrine and convert into a catchall, a panacea for taxpayers unhappy with the amendment of Section 67 to disallow miscellaneous itemized deductions beginning in 2018. 26 U.S.C. § 67(g) ("no miscellaneous itemized deduction shall be allowed for any taxable year beginning after December 31, 2017, and before January 1, 2026"). Generally speaking, the tax benefit rule is as follows:

> The tax benefit rule is a judicially developed doctrine designed to ameliorate some of the effects of the year-end accounting system that the tax system utilizes. The tax benefit rule has two components, a rule of inclusion and a rule of exclusion. The inclusionary component of the rule requires the taxpayer to recognize income when an event occurs that is fundamentally inconsistent with the premise on which a deduction previously had been based. (Citation.) The exclusionary aspect of the tax benefit rule requires a taxpayer to include income only to the extent that a deduction gave rise to a tax benefit.

*Hudspeth v. Comm'r*, 914 F.2d 1207, 1212 (9th Cir. 1990). "The exclusionary component [] is partially codified in [IRC] section 111(a)," *Est. of Backemeyer v. Comm'r of Internal Revenue*, 147 T.C. 526, 538–39 (2016), which provides:

> Gross income does not include income attributable to the recovery during the taxable year of any amount deducted in any prior taxable year to the extent such amount did

---

[10] This is hardly the only conclusory legal assertion Levandowski makes in arguing the tax benefit rule. In addition to the foregoing, Levandowski's assertions that are not followed by citation to any legal authority include the following: "The purpose of the tax benefit rule is to provide an equitable mechanism to avoid absurd tax consequences that may result from a mechanical interpretation of tax laws" (OBR 11:3-4); "In simple terms, the tax benefit rule provides that if a taxpayer makes a payment or suffers a loss (here, the disgorgement liability) that does not reduce his *taxes*, the recoupment of the loss (here, the Uber Settlement Payment) is not included in gross income and is not taxable" (OBR 11:5-7); "The tax benefit rule essentially backstops the tax law's general concepts of what constitutes taxable gross income" (OBR 12:16-17).

15

not reduce the amount of tax imposed by this chapter.

26 U.S.C. § 111(a).

Thus, both the codified exclusionary component of the tax benefit rule, and the rule more generally, apply only where the taxpayer has taken a deduction in a prior tax year. Levandowski admits he could not take a deduction in connection with the Judgment *at all*, much less in a prior tax year, since the amendment of Section 67 precluded as much. (OBR 11:7-10.) A deduction not claimed because it is not allowed is not a deduction under the tax benefit rule just because the taxpayer thinks there ought to be a deduction. (*Cf. John Hancock Fin. Servs., Inc. v. United States*, 57 Fed. Cl. 643, 646 (2003), *aff'd*, 378 F.3d 1302 (Fed. Cir. 2004) (rejecting taxpayer's argument for applying tax benefit rule and finding that "[n]one of the cases cited by [taxpayer] support its conclusion that a deduction claimed, but disallowed, may nevertheless be considered a 'deduction' under the tax benefit rule").[11]

Ultimately, Levandowski's complaint is with the very fact that Section 67 was amended to preclude a deduction he believes he could have taken beforehand. Levandowski's beef is with Congress. He cannot leverage it into a demand that the tax benefit rule be applied as a purely "equitable mechanism." (OBR 11:3; *see Am. Mut. Life Ins. Co. & Subsidiaries v. United States*, 267 F.3d 1344, 1350 (Fed. Cir. 2001) (rejecting taxpayer's argument for applying tax benefit rule and stating that taxpayer's "beef is with Congress' 1984 amendments to the Code, which required full recognition of the [insurance] reserve releases as taxable income, as opposed to partial recognition before 1984"). Rather, the Supreme Court in *Hillsboro Nat. Bank v. Comm'r*, 460 U.S. 370 (1983), stated: "The limited nature of the [tax benefit] rule and its effect on the annual accounting principle bears repetition." *Id.* at 389.[12] The Court also recognized that in many cases

---

[11] Even if Levandowski could have and did take a deduction, the tax benefit rule does not always entitle a taxpayer to have a deduction and a recovery come out a total wash. *Am. Mut. Life Ins. Co. & Subsidiaries v. United States*, 267 F.3d 1344, 1350 (Fed. Cir. 2001) ("The tax benefit rule does not guarantee dollar-for-dollar reductions of taxable income for every dollar of deduction.").

[12] The Supreme Court's decision in *Hillsboro* was issued in two consolidated cases, one called *Hillsboro* and the other *Bliss Dairy*. Courts sometimes refer to the case as *Bliss Dairy*, as did the Ninth Circuit in *Schwartz Rojas v. Comm'r*, 901 F.2d 810 (9th Cir. 1990), wherein the court declined to apply the tax benefit rule and stated: "We decline to extend *Bliss Dairy* in this manner. To do so would extend the tax benefit rule well beyond the parameters outlined in *Bliss Dairy*. We share the Tax Court's reluctance to go beyond the facts of *Bliss Dairy*." *Id.* at 813.

16

"there will be an inherent tension between the tax benefit rule and the [competing] provision" of the Code that would dictate a different result. *Id.* at 385. The Court stated that it "cannot resolve that tension with a blanket rule that the tax benefit rule will always prevail." *Id.*[13]

Consistent therewith, the Ninth Circuit has refused to apply the tax benefit rule as urged by taxpayers where "application of the tax benefit rule … would render the [competing] provisions of [the] I.R.C. … a nullity." *Hudspeth*, 914 F.2d at 1212. It is hard to see how applying the tax benefit rule based merely on an argument like Levandowki's, that something "would ordinarily be deductible under either Section 162 … or Section 165" (OBR 12:3-5), but for the amendment of Section 67, does not render that amendment a nullity. As the Ninth Circuit has observed in declining to apply the tax benefit rule:

> Courts should be hesitant to create sweeping rules which are addressed to the numerous variations of a problem and which, because of their breadth and the absence of sharply defined limits, inevitably must be modified by Congress to fix more precisely their reach.

*Schwartz Rojas v. Comm'r*, 901 F.2d 810, 813 (9th Cir. 1990). That observation also applies here.

## VII. THE SETTLEMENT PAYMENT WAS NOT A WORKING CONDITION FRINGE

"Gross income shall not include any fringe benefit which qualifies as a … (3) working condition fringe." 26 U.S.C.A. § 132(a)(3). "[T]he term 'working condition fringe' means any property or services provided to *an employee of the employer* to the extent that, if the employee paid for such property or services, such payment would be allowable as a deduction under section 162 or 167." 26 U.S.C.A. § 132(d) (emphasis added).

### A. Levandowski Was Not Employed by Uber as Required at the Relevant Time

"For purposes of section 132(a)(3) … the term 'employee' means—(i) Any individual who is currently employed by the employer." 26 C.F.R. § 1.132-1(b)(2)(i); *see also Biehl v. Comm'r of Internal Revenue Serv.*, 118 T.C. 467, 482 (2002), *aff'd sub nom. Biehl v. Comm'r*, 351 F.3d 982 (9th Cir. 2003) ("The regulations under sec. 132 explicitly give 'employee' the meaning we

---

[13] *Am. Mut. Life Ins. Co.*, 267 F.3d at 1349-50 (citing *Hillsboro* to state: "[W]here … the events giving rise to the tax benefit question are governed by provisions of the Code, there may be an inherent tension between the tax benefit rule and these provisions. (Citation.) The Supreme Court also recognized that there is no blanket rule that the tax benefit rule prevails over the particular provisions of the Code at issue.").

find implicit in sec. 62(a)(2)(A) [governing deductions for reimbursed employee expenses]: an employee' for purposes of sec. 132(a)(3) … is 'Any individual who is currently employed by the employer.'"). Levandowski admits he "was not employed by Uber at the time he entered into the Indemnification Agreement, or at the time the Uber Settlement Payment was made." (OBR 13 n.12.) Therefore, the payment cannot be a working condition fringe.

That conclusion is not affected by Levandowski's citation to the I.R.S.'s revenue ruling Rev. Rul. 92-69, 1992-2 C.B. 51 (1992). That revenue ruling involved outplacement services provided to employees who were to be terminated. The ruling merely provides:

> For purposes of *this revenue ruling*, if the ruling's requirements are otherwise satisfied concerning outplacement services, the requirement that an individual be currently employed when the individual receives the services will be treated as continuing to be satisfied with respect to the outplacement services during the period the services are provided."

(*Id.*) (emphasis added). In addition, "Revenue Rulings do not have the force and effect of Treasury Department Regulations," their "conclusions … will be directly responsive to and limited in scope by the pivotal facts stated in the revenue ruling," and all "concerned are cautioned against reaching the same conclusion in other cases unless the facts and circumstances are substantially the same." 26 C.F.R. § 601.601(d)(2)(v). Obviously, the facts here are not even remotely the same, and so this ruling cannot trump the regulation's plain text.

**B.    The Settlement Payment Would Not Have Been Deductible Under Section 162**

Levandowski is wrong to argue that, but for the amendment of Section 67, the Settlement Payment would have been deductible under Section 162, which applies to "the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business." 26 U.S.C. § 162(a). The payment was instead a capital expenditure by Uber in acquiring Otto, and, as such, governed by Section 263, which precludes deductions. 26 U.S.C. § 263(a)(1).

"Where an expenditure fits within both Section 162 and Section 263, the capitalization requirement controls and bars the deduction." *Actavis Lab'ys, FL, Inc. v. United States*, 161 Fed. Cl. 334, 353 (2022).[14]   On a number of occasions, the Supreme Court has held legal expenses

---

[14] "In exploring the relationship between deductions and capital expenditures, th[e] [Supreme] Court has noted the 'familiar rule' that 'an income tax deduction is a matter of legislative grace

18

incurred in connection with a merger/acquisition to be capital expenditures instead of deductible business expenses. *INDOPCO*, 503 U.S. at 88 ("National Starch has not demonstrated that the investment banking, legal, and other costs it incurred in connection with Unilever's acquisition of its shares are deductible as ordinary and necessary business expenses under § 162(a)."); *Woodward v. Comm'r*, 397 U.S. 572, 575 (1970) ("It has long been recognized, as a general matter, that costs incurred in the acquisition or disposition of a capital asset are to be treated as capital expenditures," and "the courts have held that legal, brokerage, accounting, and similar costs incurred in the acquisition or disposition of such property are capital expenditures."); *United States v. Hilton Hotels Corp.,* 397 U.S. 580, 583–85 (1970).[15]

Applying the relevant standard "to litigation expenses involves the simple[] inquiry whether the origin of the claim litigated is in the process of acquisition itself." *Woodward*, 397 U.S. at 577. The answer here is clearly yes. Levandowski himself asserts in the Tax Motion that the "Settlement Payment is made in connection with Uber's acquisition of Otto and the Debtor's employment at Uber" and that the "Settlement Payment is payment of the arbitral award, which in claim's 'origin and character' is linked to Uber's acquisition and operation of Otto and the Debtor's role as an employee of Uber." (Doc #946 18:10-11, 19:3-5.)[16]

**VIII. THE SETTLEMENT PAYMENT WAS NOT A DEDUCTIBLE REIMBURSEMENT**

The Settlement Payment was not a deductible reimbursement for three reasons:

First, as Levandowski acknowledges, the reimbursement "arrangement must provide

---

and that the burden of clearly showing the right to the claimed deduction is on the taxpayer.'" *INDOPCO, Inc. v. Comm'r,* 503 U.S. 79, 84 (1992) ("deductions are exceptions to the norm of capitalization … strictly construed and allowed only 'as there is a clear provision therefor.'")

[15] The governing regulation is in accord. 26 C.F.R. § 1.263(a)-4. ¶¶ (b)(1)(i) ("Except as otherwise provided in this section, a taxpayer must capitalize—(i) An amount paid to acquire an intangible (see paragraph (c) of this section); (c)(1) ("A taxpayer must capitalize amounts paid to another party to acquire any intangible from that party in a purchase or similar transaction. Examples of intangibles within the scope of this paragraph (c) include, but are not limited to, the following (if acquired from another party in a purchase or similar transaction): (i) An ownership interest in a corporation, partnership, trust, estate, limited liability company, or other entity.").

[16] In addition, Uber made the Settlement Payment to resolve litigation Levandowski brought against it under the Indemnification Agreement, and the Tax Motion is pervaded by assertions that the Indemnification Agreement was a critical component of the Acquisition, as was the very conduct Levandowski was held liable for and that he claimed the agreement indemnified him against (*e.g.*, soliciting Google employees). (Doc #946 1:17-19; 1:23-28; 10:11-13; 16:17-18; 17:4-10; 18:14-17; 20:14-21; 21:16-17.)

19

reimbursements only for business expenses allowable as deductions by … Code []Section 161 and following." (OBR 17:18-20.)  The Settlement Payment does not qualify because it was instead a non-deductible capital expenditure as explained above.

Second, Section 62 requires that the taxpayer's expense be paid or incurred "in connection with the performance by him of services *as an employee*" (26 U.S.C. § 62(a)(2)(A) (emphasis added)), and the implementing regulations clarify that this means "in connection with the performance of services *as an employee **of the employer***." 26 C.F.R. § 1.62-2(b), (d) (emphasis added).  But Levandowski admits he "was not employed by Uber at the time he entered into the Indemnification Agreement, or at the time the Uber Settlement Payment was made." (OBR 13 n.12.)  "Congress's use of the words 'performance' and 'employee' dictates that, in order to be deductible, the reimbursed expenses must be incurred during the course of employment." *Biehl v. Comm'r*, 351 F.3d 982, 986 (9th Cir. 2003).  The implementing "regulations add that the performance of services must be 'as an employee *of the employer*'," and "[t]hese three additional words reconfirm that the expenses must have been incurred on behalf of the employer within a current employment relationship." *Id.* (emphasis in original).

Third, as Levandowski further acknowledges, the expense must be paid pursuant to an "accountable plan." (OBR 17:2, 17:14.)  However, the terms "arrangement" and "plan" "encompass a continuing relationship, rather than a one-shot payment of the type at issue in the case at hand," with "dictionary definitions of 'plan' (citation) as 'a scheme for making, doing, or arranging something; a project; a program; a schedule', encompass[ing] or imply[ing] multiple elements for accomplishing something over a period of time." *Biehl*, 118 T.C. at 474.

## CONCLUSION

For the foregoing reasons, the Tax Motion should be denied in its entirety.

Dated:  December 1, 2023

ROB BONTA
Attorney General of California
LISA W. CHAO
Supervising Deputy Attorney General

/s/John C. Keith

JOHN C. KEITH
Deputy Attorney General
Attorneys for Creditor Franchise Tax Board

20

FTB Response Br. on Remand 20-30242 HLB