**KELLER BENVENUTTI KIM LLP**
TOBIAS S. KELLER (Cal. Bar No. 151445)
(tkeller@kbkllp.com)
DARA L. SILVEIRA (Cal. Bar No. 274923)
(dsilveira@kbkllp.com)
425 Market Street, 26th Floor
San Francisco, CA 94105
Telephone: (415) 364-6793
Facsimile: (650) 636-9251

BRETT M. SCHUMAN (SBN 189247)
*bschuman@goodwinlaw.com*
JENNIFER BRIGGS FISHER (SBN 241321)
*JFisher@goodwinlaw.com*
**GOODWIN PROCTER LLP**
Three Embarcadero Center
San Francisco, California 94111
Tel.: +1 415 733 6000
Fax.: +1 415 677 9041

*Attorneys for Peter Kravitz, in his Capacity as Trustee of the Levandowski Residual Liquidation Trust and Anthony S. Levandowski, Reorganized Debtor*

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br><br>ANTHONY SCOTT LEVANDOWSKI,<br><br>Reorganized Debtor. | Bankruptcy Case No. 20-30242 (HLB)<br>Chapter 11<br><br>**REORGANIZED DEBTOR'S REPLY BRIEF ON ISSUES ON REMAND** |

# TABLE OF CONTENTS

| | | PAGE |
|---|---|---|
| I. | INTRODUCTION. | 1 |
| II. | THE UBER SETTLEMENT PAYMENT IS NOT GROSS INCOME | 2 |
| | A. The Court Correctly Determined That The Uber Settlement Payment Is Akin To A Non-Taxable Insurance Payment. | 2 |
| |    1. The Characteristics of the Settlement Demonstrate the Uber Settlement Payment is not Gross Income. | 2 |
| |    2. The Uber Settlement Payment is Akin to a Nontaxable Insurance Payment and the Taxing Authorities' Arguments to the Contrary are Unavailing. | 4 |
| | B. The Uber Settlement Payment Is Not Taxable Gross Income Under The "Tax Benefit" Rule. | 7 |
| | C. The Uber Settlement Payment Is A Working Condition Fringe. | 8 |
| | D. The Uber Settlement Payment Is A Deductible Reimbursement. | 9 |
| III. | CONCLUSION. | 10 |

# TABLE OF AUTHORITIES

Page(s)

**Cases**

AMERCO v. Comm'r,
  96 T.C. 18 (1991), *aff'd* 979 F.2d 162 (9th Cir. 1992) ................................................. 4, 5, 6, 7

Biehl v. Comm'r,
  351 F.3d 982 (9th Cir. 2003) ........................................................................................... 10

Biehl v. Comm'r of Internal Revenue Serv.,
  No. 422-00, 2002 WL 1150743 (T.C. May 30, 2002) ..................................................... 10

Carolco Television Inc. v. National Broadcasting Co. (In re DeLaurentiis
  Entertainment Group Inc.),
  963 F.2d 1269 (9th Cir. 1992) ......................................................................................... 10

Clark v. Comm'r,
  40 B.T.A. 333 (1939) ......................................................................................................... 3

Flynn v. Comm'r,
  1981 WL 10910 (T.C. Sept. 9, 1981) ................................................................................ 9

Grecian Magnste. Mining, Ind. & Shpng. Co., S.A. v. Comm'r,
  926 F.3d 819 (D.C. Cir. 2019) ........................................................................................... 5

Harper Group & Subsidiaries v. Comm'r,
  96 T.C. 45 (1991) ............................................................................................................... 5

Helvering v. Le Gierse,
  312 U.S. 531 (1941) ........................................................................................................... 4

HIE Holdings, Inc. v. Comm'r,
  521 F. App'x 602 (9th Cir. 2013) ....................................................................................... 9

Huff v. Comm'r,
  80 T.C. 804 (1983) ............................................................................................................. 3

INDOPCO, Inc. v. Comm'r,
  503 U.S. 79 (1992) ............................................................................................................. 9

In re Liuzzo,
  204 B.R. 235 (Bankr. N.D. Fla. 1996) ............................................................................... 6

Mannette v. Comm'r,
  69 T.C. 990 (1978) ............................................................................................................. 9

Sinyard v. Comm'r,
  268 F.3d 756 (9th Cir. 2001) ............................................................................................. 3

Title Ins. Co. v. State Bd. of Equalization,
  4 Cal. 4th 715, 842 P.2d 121 (1992) ......................................................................... 1, 4, 5

**Statutes**

Bankruptcy Code section 553 ......................................................................................................10

Cal. Ins. Code § 533..................................................................................................................... 6

Tax Code Section 105(b) ..............................................................................................................3

Tax Code Section 61 .....................................................................................................................1

Tax Code Section 108 ...................................................................................................................1

**Other Authorities**

Rev. Rul. 92-69, 1992-2 C.B. 51 (1992)........................................................................................8

Rev. Rul. 2007-47, 2007-2 C.B. 127 (2007).................................................................................5

Rev. Rul. 89-96 .............................................................................................................................5

Rev. Rul. 2005-40 .........................................................................................................................5

T.C. Memo 2007-144.....................................................................................................................1

Treasury Regulation Section 1.62-2(d), (e), and (f)....................................................................10

Treasury Regulation Section 1.62-2(h)(1) ..................................................................................10
-iii-

Case: 20-30242    Doc# 1301    Filed: 01/19/24    Entered: 01/19/24 17:58:25    Page 4 of 15

## I. INTRODUCTION.

The IRS and FTB (the "Taxing Authorities") provide this Court with no grounds to reverse its finding that the Uber Settlement Payment[1] is not gross income to Levandowski.

*First*, following the District Court's directive to analyze Section 61 of the Tax Code, it is clear that the Tax Code does not directly address the treatment of the settlement that led to Uber's direct payment to Google in either the definition of "gross income" under Section 61(a) or the exceptions to that definition referenced in Section 61(b). Moreover, the Taxing Authorities cite no regulation, judicial case, or administrative ruling addressing the tax treatment for such a settlement payment. Accordingly, this Court was correct to use analogy to determine that the Uber Settlement Payment is not gross income to Levandowski because it is most akin to a nontaxable insurance payment on behalf of an insured to an injured third party.

*Second*, the Taxing Authorities' argument that *any* payment of *any* liability gives rise to taxable gross income to Levandowski must be rejected. The argument is not supported by the cases they cite,[2] the Tax Code,[3] or the circumstances of this particular case. The FTB's reliance on Section 61(a)(11)'s identification of "discharge of indebtedness" (FTB Br. at 5) is also misguided.[4] In fact, it is the underlying characteristics of the transaction that determine whether a payment is "gross income" generally or under Section 61(a)(11). *See, e.g., Title Ins. Co. v. State Bd. of Equalization*, 4 Cal.4th 715, 724, 842 P.2d 121, 126 (1992) (explaining that "we must look to the substance of the transaction to determine whether the taxpayer actually realizes

---

[1] Undefined capitalized terms have the meaning identified in the Opening Brief (ECF No. 1292).

[2] IRS Br. at 4-5 (citing *Old Colony Trust Co. v. Comm'r*, 279 U.S. 716 (1929); *Reading & Bates Corp. v. United States*, 40 Fed. Cl. 737 (1998); *United States v. Hendler*, 303 U.S. 564 (1938); *Huff v. Comm'r*, 80 T.C. 804 (1983); *Wall v. United States*, 164 F.2d 462 (4th Cir. 1947)).

[3] *See, e.g.*, Section 105(b) of the Tax Code, excluding from gross income certain health insurance payments that are paid directly *or indirectly* to the taxpayer. *See also* Darwin J. Albers et ux., T.C. Memo 2007-144 ("There is no provision in I.R.C. § 105 . . . that prohibits [an] employer from paying the medical expense directly . . . rather than reimbursing the employee.").

[4] The FTB suggests that the Uber Settlement Payment is income to Levandowski because it constitutes discharge of indebtedness. FTB Br. at 1. However, Section 108 of the Tax Code has a specific exception for discharges of indebtedness in a bankruptcy proceeding. Section 108(a)(1)(A). Even if the settlement gave rise to a discharge of debt it would not be income to Levandowski because the payment was made as part of Levandowski's bankruptcy proceeding.

gain when the third party fulfills its obligations under the contract"). Here, the underlying transaction was not income to Levandowski; rather, it was payment of a judgment that largely required Levandowski to disgorge a bonus on which he already was taxed.

*Third*, in the event the Court is inclined to look beyond the insurance analogy, a determination can be made that the Uber Settlement Payment is not gross income because it falls under the tax benefit rule, or is a working condition fringe or deductible expense.

## II. THE UBER SETTLEMENT PAYMENT IS NOT GROSS INCOME.

### A. The Court Correctly Determined That The Uber Settlement Payment Is Akin To A Non-Taxable Insurance Payment.

#### 1. The Characteristics of the Settlement Demonstrate the Uber Settlement Payment is not Gross Income.

The Taxing Authorities argue that the Uber Settlement Payment is not *akin* to an insurance payment because it was not made pursuant to an actual insurance policy, citing cases pertaining to actual insurance. This argument does not resolve the issue before the Court.

Indeed, both Taxing Authorities ignore the unique circumstances giving rise to the settlement. The core dispute in the adversary proceeding was whether Uber was required to pay the Google judgment against Levandowski under the Indemnification Agreement; Uber also sought recovery of the attorneys' fees and costs that it paid to fund Levandowski's defense of the Arbitration that led to that judgment. The settlement was reached between Google, Levandowski, and Uber in the adversary proceeding (in which Google intervened, Adv. Pro. ECF No. 15 ("Motion to Intervene")) to avoid further litigation and mitigate the risks Google faced if Levandowski was unable to pay the judgment (*id.* at ¶ 3 (pointing out the total of $35 million in assets in the estate came nowhere close to Google's $179 million judgment)). Uber also benefitted from the settlement, as it eliminated Uber's uncertainty about its exposure to the full indemnity obligation and contained a release of claims against it by Google. Accordingly, treating it as a deemed payment for Levandowski is wrong in the first place.

Contrary to the Taxing Authorities' assertions that the Uber Settlement Payment represents compensation to Levandowski, the Uber Settlement Payment was an indemnity payment that partially returned to Google the compensation Google had paid Levandowski and

that Levandowski was not allowed to keep under the Google judgment. The benefit of the Uber Settlement Payment inured to Levandowski's creditors, including Google—not to Levandowski himself, who would have received a discharge regardless of how much Uber paid Google. Even Google understood that an outcome favorable to Levandowski in the adversary proceeding was "ultimately . . . for the benefit of Google." Mot. to Intervene at ¶ 38.

The IRS's argument that Levandowski must identify a specific statutory exclusion that matches the circumstances here is simply wrong (*see* Opening Br. at 2-3 (identifying exclusions outside statutes and regulations)), and its attempt to distinguish *Clark v. Comm'r*, 40 B.T.A. 333, 335 (1939) to support that proposition should be rejected. It is not correct that the taxpayers in *Clark* ultimately ended up "paying the correct amount of tax" (IRS Br. at 10). Even after the return preparer paid the taxpayers, the government retained the full amount of the initial overpayment. Accordingly, the *Clark* court determined that the "make whole" payment was not taxable as it made up for a loss and was not income despite finding no specific statutory exclusion in the Tax Code. Likewise here, the Court is permitted to evaluate the characteristics of the Uber Settlement Payment, the underlying dispute, and nature of the settlement to determine that the Uber Settlement Payment should not be deemed income to Levandowski because it was made directly to Google and did not result in an ascension to wealth for him.

*Huff v. Comm'r*, 80 T.C. 804 at 806-12 (1983), cited by the Taxing Authorities, is also distinguishable. *Huff* was not a bankruptcy case, and there the payment on Huff's behalf would have the effect of maintaining Huff's assets when they were to be depleted as a punishment. Here, given the operation of the bankruptcy discharge, the primary beneficiary of the Uber Settlement Payment was Google and Levandowski's other creditors.

It is also incorrect that *any* third-party payment of *any* liability gives rise to taxable gross income. There is no such sweeping rule;[5] details matter. For example, Section 105(b) of the Tax Code excludes from gross income certain health insurance payments paid *indirectly* to the taxpayer. The California Supreme Court found another exception to gross income for payment

---

[5] The IRS's citation to *Sinyard v. Comm'r*, 268 F.3d 756, 758 (9th Cir. 2001) is misleadingly simplistic; what the 9th Circuit stated is not a universal rule, but a general principle.

of claims by third-party underwriting title companies on behalf of title insurers pursuant to an agreement between the underwriters and the title insurers. *Title Ins. Co.*, 4 Cal. 4th at 724.

## 2. **The Uber Settlement Payment is Akin to a Nontaxable Insurance Payment and the Taxing Authorities' Arguments to the Contrary are Unavailing.**

The District Court did not disrupt this Court's finding that the Uber Settlement Payment is analogous to an insurance payment under the general principles of insurance set forth in *AMERCO v. Comm'r*, 96 T.C. 18, 42 (1991), *aff'd* 979 F.2d 162 (9th Cir. 1992),[6] and the Taxing Authorities present no valid argument to depart from that finding.

On the issue of insurance risk, the IRS's primary case is distinguishable. In *Helvering v. Le Gierse*, 312 U.S. 531, 542 (1941) the Court evaluated a combination of an annuity contract and an insurance contract that were sold as a package and determined that because both relate to the timing of an event certain to happen (the death of the insured) there was no insurance risk. The insured was an 80-year old woman who purchased both agreements shortly before she expired. The court explained that life insurance is supposed to "shift to a group of individuals the risk of premature death of the one upon whom the beneficiaries are dependent for support." *Id.* However, because the annuity contract and insurance contract were "opposites," the combination "neutraliz[ed] the risk." *Id.* In other words, the combined transaction was a straight bet on when the woman would expire with the "insurer" benefiting if she died quickly.

As Levandowski previously explained (Tax Mot. at 9), the Court previously agreed (Apr. 21, 2022 Hr'g Tr. at 53:15-56:23), and the IRS did not dispute on appeal, the transaction here involved "the risk that Levandowski would be sued for stealing technology." IRS Appeal Br. at 21. No one knew whether the Diligenced Employees would be sued at the time Uber agreed to the Indemnification Agreement; and no one knew whether such hypothetical litigation would be successful or result in large damages. Thus, the Indemnification Agreement presents similar insurance risk as a traditional D&O insurance policy. The Taxing Authorities are also wrong

---

[6] The District Court did not hold that insurance payments, or payments akin to an insurance payment, could never be excluded from gross income as a matter of law. *See, e.g.*, IRS Br. at 4. Rather, the District Court only held that this Court's finding was based on a "defective premise" "that all insurance is excludable from tax gross income." Remand Or. at 14, 18.

that the Indemnification Agreement cannot relate to insurance risk because it insured an event in the past. Rather, the Indemnification Agreement insured an uncertain to occur *future* risk, *i.e.* the chance that some party would sue and win a judgment against Levandowski.[7]

With regard to risk distribution, the Taxing Authorities again advance an argument that the Court previously rejected—that the pool of insureds was too small. The IRS relies on Revenue Ruling 2005-40, 2005-2 C.B. 4, but that does not support the IRS's argument because there one policy holder represented 90% of the risk. Here, the risk distribution was spread among six individuals (*i.e.* 1/6th of the risk or 16.6%), which has been determined to be sufficient risk distribution. *See AMERCO*, 96 T.C. 18 (risk distribution exists when unrelated insureds comprise more than 50% of the insurer's risk); *Harper Group & Subsidiaries v. Comm'r*, 96 T.C. 45 (1991) (up to 70% of insurer's risk can be attributable to a single insured).

The Taxing Authorities spend a lot of time arguing about whether the Settlement Agreement is actually an insurance contract. IRS Br. at 6-11; FTB Br. at 8-12. This is contradicted by Uber's own views on the underlying Indemnification Agreement,[8] and, more importantly, is undermined by the rationale of this Court in its original ruling, and the California Supreme Court in an analogous tax case. Unlike the cases cited by the FTB, in *Title Ins. Co.*, 4 Cal. 4th 715, the California Supreme Court applied the federal definition of gross income to determine whether certain third-party payments were gross income. There, seven title insurers challenged the State Board of Equalization's findings that claims paid by underwritten title companies to the insured claimants should have been reported as income to the title insurers.

---

[7] The IRS cites Rev. Rul. 2007-47, 2007-2 C.B. 127 (2007) to argue that the Indemnification Agreement relates only to investment or timing risks; not insurance risk. First, Revenue Ruling, when cited by the IRS against a taxpayer, are entitled to no more weight than an assertion in a brief. They are not regulations and have not gone through the notice and comment procedure set forth in the Administrative Procedures Act; they represent only an agency's interpretation of the law. Accordingly, the Court need not give it any credit. *See Grecian Magnste. Mining, Ind. & Shpng. Co., S.A. v. Commissioner*, 926 F.3d 819, 823-24 (D.C. Cir. 2019) (applying "Skidmore" deference to a Revenue Ruling, i.e. deferring to the ruling only to the extent it has power to persuade). Second, it was certain that once the "insured" engaged in the business in question there would be some amount owed on the policy, which is not the case here. Likewise in Revenue Ruling 89-96, the event giving rise to the insurance payment had already happened.

[8] *See* ECF No. 948, Ex. D, 6/19/2017 Poetzcher Tr. at 310:20-311:13 (describing agreement as fire insurance for a house). *See also id.* 229:6-24 (Uber was acting as an insurance company).

The California Supreme Court held that the underwriting agreements did not appear to be insurance contracts (which both the FTB and IRS incorrectly claim is required to escape taxation). Nonetheless, when the underwriting title companies performed their obligations pursuant to the agreements (by paying the insured on behalf of the title insurers), the court found that the title insurers had no gain and could not be taxed. Likewise, Levandowski had no taxable gain from Uber's payment of the Uber Settlement Payment to Google. Levandowski was already taxed on the compensation that he was ordered to disgorge in the Google judgment, and that Uber partially paid on his behalf pursuant to the Indemnification Agreement.

Further, the Taxing Authorities' reliance on California insurance law and California's purported exclusion of bad acts insurance coverage is also beside the point. FTB Br. at 9-11; IRS Br. at n.6. The question here is not whether the Indemnification Agreement is valid or enforceable under California insurance law; that issue was resolved in the settlement. Rather, the question now is whether the Uber Settlement Payment is taxable gross income to the Debtor. Here, Uber agreed as a settlement of a dispute (in which Google alleges it was harmed) to make a direct payment to Google in the context of a bankruptcy proceeding. Not only do the Taxing Authorities identify no cases determining the tax liability of an indemnified party in the context of such a settlement, the Taxing Authorities identify no federal tax cases or other authorities finding that a payment purportedly relating to insuring a "bad act" is *per se* taxable. The IRS cites Cal. Ins. Code § 533, which permits an insurer to avoid *liability* for a willfully caused loss, but cites nothing identifying the tax treatment of a payment for the settlement of a claim paid by an indemnifying party to a third-party even where the loss was found to be willfully caused.

Similarly, the FTB identifies only California cases about the insurability of intentional bad acts. None of those cases are *federal* income tax cases and there is no dispute that California has incorporated the federal definition of gross income. *In re Liuzzo*, 204 B.R. 235, 237 (Bankr. N.D. Fla. 1996), cited by the FTB, pertains to a bankruptcy court's determination of property taxes due pursuant to Florida state law. Florida state law set out valuation principles by statute, and Florida did not use federal law as the basis for valuation. Further, while *AMERCO* includes one factor stating that courts should look to insurance defined in its commonly accepted sense, it

does not hold that state law (and certainly not that any particular state's law) is controlling for identifying insurance (and, in fact, says that federal taxation principals must be borne in mind). *See AMERCO*, 96 T.C. at 38. *See also* IRS Br. at 8.

Given that the Uber Settlement Payment is akin to the types of insurance payments intended to replace lost capital, and given that the Indemnification Agreement reflects insurance risk adequately distributed, it is not gross income to Levandowski.

### B. The Uber Settlement Payment Is Not Taxable Gross Income Under The "Tax Benefit" Rule.

Both Taxing Authorities misstate why the tax benefit rule applies to the Court's determination of the tax consequences of the Uber Settlement Payment. As explained in the Opening Brief, "the tax benefit rule essentially backstops the tax law's general concepts of what constitutes taxable gross income." *Id.* at 12. According to the rule, because Levandowski suffered a loss due to the disgorgement liability,[9] the recoupment of the loss is not to be included as gross income. For example, if that loss had occurred in 2022, and the recoupment of the loss had occurred in 2023, the rule provides that there is no need to report the recoupment as income. *See* Opening Br. at 11 (identifying broad scope of the rule). The result should be the same if the two events took place in 2022. The IRS appears to agree with this result, even if it disagrees with whether it falls under the tax benefit rule: "[I]f the events that give rise to the canceling out of the deduction took place in the same year as that deduction or loss, there would be no need for a tax benefit rule – taxpayers would simply report the proper tax treatment on their annual return by not claiming that deduction or loss." IRS Br. at 12. Here, the events giving rise to the canceling out of the deduction (the deemed payment from Uber to Levandowski) took place the same year as the loss (the deemed payment from Levandowski to Google), and therefore

---

[9] The FTB (at 14-15) misleadingly suggests that the $52 million in interest, fees, and costs is relevant as that portion was not previously taxed. While true that the judgment against Levandowski included a disgorgement component and a portion that was not disgorgement, the combined total of the settlement payments are less than just the disgorgement portion. The Settlement Agreement does not specify whether the payments are in lieu of the disgorgement portion, the non-disgorgement portion, or something else. However, in light of Google's agreement to structure the deal in the most tax efficient manner (ECF No. 831-1 at Section IX(e)), it can be inferred that the payments are directed to the disgorgement portion and Google released the non-disgorgement portion (and part of the disgorgement portion) in the settlement.

Levandowski need only report the proper tax treatment by not claiming a deduction or loss.

The FTB is incorrect that the Uber Settlement Payment "enabled [Levandowski] to keep that compensation despite a Judgment that, per Levandowski, required him to disgorge and provide restitution of it to Google" because the FTB ignores the fundamental premise of the settlement between Levandowski, Uber, and Google. By virtue of his bankruptcy proceeding, Levandowski was not entitled to "keep" non-exempt assets; the only question was how his assets would be divided amongst his creditors. A potential outcome of the adversary proceeding could have been that Uber was victorious. Then, at the completion of the bankruptcy proceeding, all of Levandowski's debts to Uber and Google would have been discharged and only some small amount of his $35 million in assets would have been available to satisfy Google's $179 million claim and Uber's additional claim. The Uber Settlement Payment and subsequent settlement did not thereby operate to allow Levandowski retain any compensation; it allowed Google (the *de facto* beneficiary of the Indemnification Agreement (*see* Mot. to Intervene at ¶ 1 (Google is the "ultimate beneficiary of the Uber indemnity")) to have more of its claim satisfied. In light of Google's discharge of its claim, and even if the payment were deemed to have been from Uber to Levandowski, and then from Levandowski to Google, Levandowski ultimately ends up at the same *status quo ante* because he does not receive any tax benefit from the payment to Google. Therefore, it should not be treated as gross income under the tax benefit rule.

### C. The Uber Settlement Payment Is A Working Condition Fringe.

Uber's obligation to pay arose while Levandowski was employed by Uber. Neither Taxing Authority grapples with the indisputable fact that Levandowski provided Uber notice of his claim for the Google arbitration while employed by Uber, and that Uber began reimbursing Levandowski's expenses for that arbitration while he was employed by Uber. *See, e.g.*, Adv. Pro. ECF No. 251-31 (MSJ Ex. 38). Accordingly, the obligation to pay arose during employment, which is identical to the scenarios described in Rev. Rul. 92-69, 1992-2 C.B. 51 (1992), where the benefit began while the individuals were employees.

The Uber Settlement Payment would have been deductible under Section 162. The IRS incorrectly argues that Section 162 is not applicable because "Levandowski's trade or business

Case: 20-30242    Doc# 1301    Filed: 01/19/24    Entered: 01/19/24 17:58:25    Page 12 of 15

8

as a Google employee [did not include] stealing from his employer," IRS Br. at 15. As an initial matter, the Uber Settlement Payment would have been deductible as a working condition fringe because the payment was related to Levandowski's work for *Uber*. Further, Google's judgment was not based on any finding that Levandowski engaged in "stealing." The Arbitration Panel found Levandowski liable for breach of his employment contract and duty of loyalty. Award at 53. The Panel made no finding that Levandowski stole trade secrets. Rather, the Panel found him liable for recruiting Google employees to join Uber, which violated his duty of loyalty to Google. *Id.* Recruitment is a part of the trade or business of an executive such as Levandowski.

Contrary to supporting the IRS's position, *Flynn v. Comm'r*, 1981 WL 10910 (T.C. Sept. 9, 1981) actually demonstrates just how broad Section 162 can be. The court explained that "[e]ven the legitimate expenses of an illegitimate business are deductible if those expenses are ordinary and necessary." *Id.* Both that case, and the case *Flynn* cites—*Mannette v. Comm'r*, 69 T.C. 990 (1978)—relate to expenses for embezzlement; not recruiting. Similarly, *HIE Holdings, Inc. v. Comm'r*, 521 F. App'x 602, 603 (9th Cir. 2013) pertained to "fraud and tax evasion." Embezzlement, fraud, and tax evasion are crimes; not legitimate business activities. Recruiting is a legitimate business activity even if it violates a contractual restriction or duty to an employer.

In addition, the FTB cannot identify any portion of Section 263 under which the Uber Settlement Payment could be a capital expenditure. The expenses in *INDOPCO, Inc. v. Comm'r*, 503 U.S. 79, 82 (1992) specifically pertained to fees expended to consummate a merger and acquisition by obtaining a fairness opinion. Here, Uber incurred an obligation to indemnify Levandowski as a condition of Levandowski's employment. Put differently, Uber could have acquired the assets of Levandowski's company, Otto, without the Indemnification Agreement. It was required to enter into the Indemnification Agreement as a condition of getting Levandowski to agree to become an Uber employee. *See* Award at 52 (noting that Levandowski insisted on it).

### D. The Uber Settlement Payment Is A Deductible Reimbursement.

Assuming Levandowski is deemed to have made a payment to satisfy the Award, the expense of that award was incurred on behalf of Uber and is a deductible reimbursement. The Panel found that Levandowski breached his duty of loyalty by engaging in competitive conduct

on behalf of Uber, including by recruiting Google employees. *Biehl v. Comm'r*, 351 F.3d 982, 986 (9th Cir. 2003) is not applicable given that Google filed its demand for arbitration while Levandowski was employed by Uber, and while the arbitration itself extended past his employment, the award—as an expense—arose in connection with Levandowski's current employment relationship with Uber at the time the dispute started. Indeed, it was after Uber announced that Levandowski joined Uber that Google initiated the arbitration. Award at 42.

In addition, the IRS does not dispute that the three requirements of Treasury Regulation Section 1.62-2(d), (e), and (f) are met, which means that, under Treasury Regulation Section 1.62-2(h)(1), it must be treated as an accountable plan. While the FTB disputes that Uber paid the expense pursuant to an "accountable plan," it does not find fault in Levandowski's analysis that the reimbursement arrangement meets the requirements of Treasury Regulation Section 1.62-2(d), (e), and (f). Rather, it asserts, without reference to Treasury Regulation Section 1.62-2(h)(1), that the payment here is not paid according to a plan because it was a "one-shot payment." The regulation is clear, and *Biehl v. Comm'r of Internal Revenue Serv.*, No. 422-00, 2002 WL 1150743 (T.C. May 30, 2002) does not address circumstances where a reimbursement arrangement meets the requirements of Treasury Regulation Section 1.62-2(h)(1).[10]

### III. CONCLUSION.

The Court should maintain its determination that the Uber Settlement Payment may be excluded from income, and should maintain its approval of the Plan, including the injunction.[11]

---

[10] The IRS's complaint about Levandowski not having reflected this in his tax returns is irrelevant. The Uber Settlement Payment is not gross income to Levandowski because it is akin to a nontaxable insurance payment in settlement of a dispute and therefore there is no reason to include it in his tax returns.

[11] The IRS's challenge to the validity of the discharge injunction fails because setoff rights were incorporated in the claims resolution process. The Plan preserves setoff rights because it provides that entities holding claims against the estate are prohibited from asserting a setoff "except as part of the claims resolution process." ECF No. 861 at Section XII(B). This comports with section 553 of the Bankruptcy Code, which authorizes setoff only as to prepetition claims. The IRS states that setoff rights must be preserved "not simply within the confines of the proposed claims resolution process" but does not explain how this does not preserve prepetition claims. IRS Br. at 20 (*citing Carolco Television Inc. v. National Broadcasting Co. (In re DeLaurentiis Entertainment Group Inc.)*, 963 F.2d 1269 (9th Cir. 1992)). As explained in the Opening Brief, *DeLaurentiis* is inapposite because there the debtor sought to wash away creditors' prepetition setoff rights entirely, which the Plan does not do.

| | | |
|---|---|---|
| 1 | Dated: January 19, 2024 | **GOODWIN PROCTER LLP** |
| 2 | | By: */s/ Jennifer Briggs Fisher* |
| 3 | | Jennifer Briggs Fisher |
| 4 | | *Attorneys for Peter Kravitz, in his Capacity as Trustee of the Levandowski Residual Liquidation Trust and Anthony S. Levandowski, Reorganized Debtor* |